# *EXHIBIT A*

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| Christopher John Worrell ) | Case No.   21-mj-296-GMH |
| ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:
  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
    ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
    ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
    ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
    ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
    ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
      **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
  ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
  ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
  ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

❏ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

❏ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

❏ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

❏ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

❏ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

❏ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

❏ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

❏ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis, with the evidence or argument presented by the defendant summarized in Part III.C.

❏ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

**OR**

❏ The defendant has not presented sufficient evidence to rebut the presumption. Moreover, after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

## Part III - Analysis and Statement of the Reasons for Detention

A. After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

❏ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

B. In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☑ Weight of evidence against the defendant is strong
☑ Subject to lengthy period of incarceration if convicted
☑ Prior criminal history
❏ Participation in criminal activity while on probation, parole, or supervision

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

- ❏ History of violence or use of weapons
- ❏ History of alcohol or substance abuse
- ❏ Lack of stable employment
- ❏ Lack of stable residence
- ❏ Lack of financially responsible sureties
- ❏ Lack of significant community or family ties to this district
- ❏ Significant family or other ties outside the United States
- ❏ Lack of legal status in the United States
- ❏ Subject to removal or deportation after serving any period of incarceration
- ❏ Prior failure to appear in court as ordered
- ❏ Prior attempt(s) to evade law enforcement
- ❏ Use of alias(es) or false documents
- ❏ Background information unknown or unverified
- ❏ Prior violations of probation, parole, or supervised release

**C. OTHER REASONS OR FURTHER EXPLANATION:**

The defendant's evidence/arguments for release:

See Attachment.

Nature and circumstances of offense:

See Attachment.

The strength of the government's evidence:

See Attachment.

The defendant's history and characteristics, including criminal history:

See Attachment.

The defendant's dangerousness/risk of flight:

See Attachment.

### Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: 03/19/2021

*Beryl A. Howell*

BERYL A. HOWELL
Chief Judge

*United States v. Worrell*, 21-MJ-296

## ATTACHMENT TO ORDER OF DETENTION PENDING TRIAL, PART III. C:
### Consideration of Defendant's evidence/arguments for release and
### 18 U.S.C. § 3142(g) Factors

(1) The Nature and Circumstances of the Offense:

The nature and circumstances of the offense weigh heavily in favor of detention. Defendant is charged with four felonies, plus a misdemeanor offense, Criminal Compl., ECF No. 1, based on his alleged offense conduct of enthusiastically participating in the assault on the Capitol on January 6, 2021, to stop the constitutionally mandated process of counting electoral votes. Rather than being discouraged by the presence of law enforcement and police activity to block entry into the Capitol building, defendant was among the first wave of individuals to breach the Capitol grounds, Gov't's Mem. Supp. Mot. Review Release Order ("Gov't's Mem.") at 8, ECF No. 9.

Defendant's participation in the mob was planned, calculated and intentional. Before the assault, defendant gathered a number of items in preparation and anticipation of potential confrontations at the Capitol, including a "desert/tan-colored tactical vest," a radio earpiece, and a can of pepper spray gel. Criminal Compl, Aff. ¶ 13, ECF No. 1-1. In addition, as an unapologetic member of the Proud Boys gang, Aff. ¶¶ 11, 28, he travelled to Washington, D.C. with his live-in girlfriend and number of other Proud Boys in transportation paid for by another individual. Gov't's Mem. at 7. Defendant assembled with a larger group of Proud Boys on the morning of the assault and marched with them, first, to the east side and then to the west side of the Capitol building, where the thin police line was overcome and the mob entered the building. Gov't's Mem. at 8–10, 19. The government proffers a report from a tipster describing a video of the defendant "issuing commands to other rioters," but law enforcement has been unable to access this video. Gov't's Mem. at 12.

Undeterred by the ongoing efforts of law enforcement to secure the Capitol against an increasingly unwieldy mob, defendant discharged pepper spray gel directed at a thin police line keeping the rioters from entering the Capitol via the West Plaza. Gov't's Mem. at 1. Defendant's assertion that he was directing the pepper spray gel at another member of the mob to help the police seems to be a re-writing of history. As the government responded, this story strains credulity, given (1) defendant's affinity for the mob's goal—and that of his group of

Proud Boys—of stopping the count of electoral votes, (2) the photo of defendant shows him focusing his attention on pointing the pepper spray in the precise direction where other photos taken close in time show the line of police officers, and (3) an eyewitness photographer both captured defendant spraying pepper spray and described him as targeting law enforcement officers. Gov't's Mem. at 21. The officers in that police line were subjected to so much pepper and other harmful sprays they had to take turns rotating to wash their eyes and faces with water from the front of the line.

(2) <u>The Weight of the Evidence Against the Person</u>:

The weight of the evidence against the defendant strongly favors detention. The government has nearly a dozen photos and video clips showing defendant's presence at the Capitol, with his fellow Proud Boys, near the front of the line standing off against the police. Aff. ¶¶ 14, 17–19, 21, 25. Most notably, the government has submitted a clear photograph of defendant aiming and firing pepper spray gel toward the police line guarding the Capitol. Aff. ¶ 21.

(3) <u>The History and Characteristics of the Person</u>:

The history and characteristics of the defendant also weigh in favor of detention. While defendant's criminal history includes a number of old charges, namely reckless endangerment of property and criminal mischief with the intent to damage property in New York in 1991, criminal possession of stolen property in New York in 1996, malicious damage to personal property in South Carolina in 2000, *see* Pretrial Services Report ("PSR") at 3, *United States v. Worrell*, Case No. 21-mj-1025-MRM (M.D. Fla. Mar. 12, 2021), ECF No. 4, only the latest charge, in 2009, for impersonating a law enforcement officer raises particular concerns about the risk of danger to others and the community posed by defendant. According to the police report from the incident, defendant observed a woman speed through a yellow light and ran a red light himself to catch up with her. Gov't's Mem., Ex. 1, Collier Cty. Sheriff's Office Police Report, No. 0900016745 (Jun. 15, 2009) at 3, ECF No. 9-1. Defendant, who is not and never has been a law enforcement officer, then pulled alongside the woman, "displayed a gold colored badge," and signaled to her that she needed to roll down her car window. *Id.* Once her window was down, defendant yelled at the woman about running a red light, and then proceeded to position his vehicle aggressively behind hers, as if attempting to pull her over. *Id.* Though tailed by defendant, the woman was able to turn into a parking lot, at which point defendant stopped following her. *Id.* The woman

reported defendant to the police, and law enforcement subsequently arrested defendant for impersonating an officer. *Id.* Upon his arrest, defendant initially denied displaying a badge, *id.*, a claim that defendant later recanted when police recovered a "gold colored concealed weapon badge" underneath the passenger seat of his car, along with two pairs of handcuffs with keys, a Glock 22, two knives, a can of pepper spray, assorted ammo and a flashlight, *id.* at 4. This prior intimidating conduct towards a total stranger in service of taking the law into his own hands, is a significant backdrop to evaluating the government's proffer as to the risk defendant poses of danger, obstruction and intimidating witnesses if released.

Defendant's offense conduct on January 6, 2021, in failing to comply with restrictions at the Capitol during the Joint Session of Congress, and instead confronting police and spraying pepper spray gel at them, contributed to the police's failure to keep the mob from entering Capitol building. This demonstrates a lack of respect by defendant not only for the constitutional process of the peaceful transition of power, but, more importantly for purposes of assessing the necessity of pretrial detention, for the law and lawful orders, which undermines confidence that he would respect and abide by conditions of release. This concern is compounded by two additional factual proffers by the government: first, on the date of his arrest, defendant refused to turn himself in, as directed by the FBI, to the nearest FBI office when he was three hours away from his home heading to a Proud Boys camping trip. Gov't's Mem. at 4, 16. To effectuate a peaceful surrender, the FBI permitted defendant to return to his residence where he was taken into custody. *Id.* at 16. Second, while being arrested, defendant commented to the FBI agents that he knew the name of the tipster and stated a name, as if seeking confirmation, and further, stated that if he were to find out the name of the Twitter user who exposed his identity online, the FBI "would be coming for [him] again." *Id.* at 14. These comments raise serious and troubling signals about defendant's willingness to comply with release conditions to not intimidate or threaten any prospective witness.

(4) <u>The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Person's Release</u>**:**

The nature and seriousness of the danger to the community posed by the defendant's release also weighs in favor of detention. Defendant was part of the mob assault on the Capitol in which people lost their lives and Congress's constitutional task of counting electoral college

*United States v. Worrell*, 21-MJ-296

votes was disrupted. Moreover, defendant's 2009 charge and the circumstances surrounding that incident, his willingness to confront and spray pepper spray gel at police officers, as on January 6, 2021, his refusal to comply with an FBI request to surrender as directed, and his statements at this arrest seeking confirmation of the identity of the tipster, who identified defendant to the FBI, and of a Twitter user, taken together amplify concern that defendant will not adhere to a court orders and that no condition or conditions will assure the safety of the community, potential witnesses, and, in particular, those who aided the government in identifying defendant, if he were to be released.

       This Court has determined that the factors outlined in *United States v. Chrestman*, Case No. 21-mj-218 (ZMF), 2021 LEXIS 36117, at *20–25 (D.D.C. Feb. 26, 2021), are probative of a defendant's determination to persevere in committing acts of political violence, and all but one of those factors is present here.