IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Case No: 21-MJ-296 (GMH) |
| | : | |
| CHRISTOPHER WORRELL, | : | |
| | : | |
| Defendant. | : | |

OPPOSITION TO
EMERGENCY MOTION FOR RECONSIDERATION

The government respectfully opposes defendant Christopher Worrell's emergency motion for reconsideration of this Court's March 19, 2021 order detaining Worrell prior to trial.

Worrell chiefly contends that he is being denied prescription medication aimed at treating his non-Hodgkin's lymphoma, and that his 2007 lymphoma diagnosis renders him more vulnerable to COVID-19 should he be infected. The government's understanding, as explained below, is that Worrell's prescription for that medication does not authorize refills, and so his prescribing physician must simply authorize the detention facility to dispense that medication to Worrell. The Jail's staff has notified Worrell of that, and has repeatedly tried to contact Worrell's physician. But the physician has not responded. Upon learning on March 30, 2021 that the issue was simply that Worrell's physician needs to authorize the medication, undersigned counsel forwarded that information to Worrell's counsel immediately to attempt to expedite a resolution. There is no reason the medication cannot be approved today (or could not have been approved any day the past two weeks) if the physician authorizes it.

With respect to the risk Worrell faces from COVID-19, the government understands Worrell's concern given his medical history. But the government believes the current level of risk (given the latest COVID-19 case counts) does not warrant pretrial release. The government

1

is willing to reconsider that position if case counts at Worrell's detention facility increase.

Worrell's other arguments largely mirror those this Court has already considered and rejected, and thus do not merit reconsideration.

I.    **BACKGROUND**

The government incorporates its procedural history and statement of facts from the Government's memorandum in support of its motion for review of the magistrate judge's release order. *See* Dkt. 9 at 2-14. In addition, the government proffers the following facts that are responsive to issues raised by the defendant's emergency motion for pretrial release. Where noted, these facts are supported by the attached Affidavit of Charlotte County Jail Health Services Administrator Bonnie Gould-Hanlon.

Worrell informed pretrial services that he has been diagnosed with non-Hodgkin's lymphoma since 2007, and receives medication for it. *See* Dkt. 16-4 (declaration of defendant's treating physician); Dkt. 16-5 at 2 (pretrial services report). Worrell is currently detained at the Charlotte County Jail, a local jail that houses federal pretrial inmates under the custody of the United States Marshals Service. *See* Exhibit 1, Aff. of Bonnie Gould-Hanlon, at ¶ 2. Mr. Worrell was admitted to the Jail on March 12, 2021. He requested several prescription medications, all but one of which was provided to him within a few days. *Id.* ¶ 4.

The one prescription medication that has not yet been provided to him is a prescription prescribed by a Dr. Bino Rucker, who is the affiant in an affidavit in support of Worrell's motion. *Id.* ¶ 5. That prescription states that it cannot be refilled. *Id.* Accordingly, the Jail's medical staff have repeatedly attempted to reach Dr. Rucker to determine whether he authorizes Mr. Worrell to continue receiving that particular medication. *Id.* Staff attempted to reach Dr. Rucker the week of March 15, the week of March 22, and on March 29 and 30. *Id.* Staff have tried both phone

numbers listed on the prescription as being associated with Dr. Rucker, and have also located two other phone numbers for Dr. Rucker and tried those phone numbers as well. *Id.* Staff have also left voicemail messages. Staff have, to date, received no response from Dr. Rucker. *Id.* If Dr. Rucker confirms that Mr. Worrell can safely continue to take the prescription medication in question, Jail staff will immediately attempt to procure it for Mr. Worrell. *Id.* Worrell was informed by the Jail's medical staff that his physician simply needs to call the Jail to confirm that he can safely receive the medication in question. *Id.* ¶ 6.

There are currently two confirmed cases of the Coronavirus Disease 2019 (COVID-19) at the Charlotte County Jail. *Id.* ¶ 7. The individuals who tested positive are inmates who are housed in a pod that does not house federal pretrial detainees, and so is a different pod than the pod housing Mr. Worrell. *Id.* Those individuals are currently quarantined. *Id.*

## II.     ARGUMENT

### A.     Standard of Review.

Worrell styles his motion a "motion for reconsideration" and argues that his motion should be "assessed under the 'as justice requires' standard." Dkt. 16-1 at 1, 2-3. This Court "regularly entertain[s] motions for reconsideration in a criminal context, applying the analogous Federal Rules of Civil Procedure." *In Matter of Extradition of Liuksila*, 133 F. Supp. 3d 249, 255 (D.D.C. 2016). In general, a court will grant a motion for reconsideration of an interlocutory order like a detention order only when the movant demonstrates: "'(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008)); *United States v. Gamble*, No. CR 19-348 (CKK), 2020 WL 588323, at *3 (D.D.C. Feb. 6, 2020) (applying this standard to detention reconsideration motion), *vacated and remanded on other grounds*, 810 F. App'x 7

(D.C. Cir. 2020); *see also* Dkt. 16-1 at 2-3 (agreeing with this standard of review).

The corollary of that narrow standard of review is that motions for reconsideration "cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010))); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 48 (D.D.C. 2013) (applying similar standard in detention context).

Worrell does not argue that there has been any intervening change in law. Instead, he rests his argument on actual or purported new evidence and the claim that this Court committed clear error in its detention analysis.

### B. Worrell Does Not Identify New Evidence or Clear Error Requiring Pretrial Release.

1. Although the fact of his 2007 cancer diagnosis is not new evidence, Worrell raises one piece of "new evidence not previously available": the claim that he has been denied medication for his non-Hodgkin's lymphoma. Dkt. 16-1 at 3-4.

The government agrees with Worrell that he should receive quality medical care while in confinement. As explained above, the medication issue Worrell raises can be quickly rectified, and the Jail does not appear to have acted unreasonably in waiting for Worrell's own prescribing physician, who listed it as a "no refills" prescription, to authorize them to provide him the medication. *See* Ex. 1 at ¶ 5. (The government's understanding is that the jail does not allow defendants to bring what they assert is their own medication into the Jail; instead, they provide each required medication for which there is a valid prescription that can be filled.) The Jail has made reasonable efforts to contact Dr. Rucker. *Id.* They have informed Worrell, too, of their need to communicate with his doctor. *Id.* ¶ 6. Dr. Rucker's affidavit indicates that he has spoken

with Worrell since his confinement.  *See* Dkt. 16-4 ¶ 8.  But Jail staff have not heard back from Dr. Rucker to authorize the prescription in question, and his affidavit does not specifically address the prescription in question.  *See* Ex. 1 at ¶ 5; Dkt. 16-4.

After learning yesterday that Dr. Rucker's approval was the only obstacle to Worrell receiving this prescription medication, undersigned counsel promptly relayed that to defense counsel.  Absent some further complication, the government respectfully contends that a medical issue that can be resolved by having the affiant supporting Worrell's motion simply call the Jail does not require Worrell's pretrial release.  The government is happy to facilitate the immediate resolution of this issue in any way that it can.

2. Worrell also argues that his non-Hodgkin's lymphoma "also makes him among those most at risk for contracting and suffering severe symptoms of COVID-19." Dkt. 16-1 at 4-6.  That fact is not new, but the government does not object to the Court's consideration of Worrell's argument, given the importance of a pretrial detainee's health and safety and the risk of COVID-19.  Worrell contends that this risk from COVID-19 should only lead to his release if it "outweigh[s] th[e] traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *Id.* at 13 (quoting *United States v. Hernandez*, No. PX-19-158-9, slip op. at 5-6 (D. Md. Apr. 29, 2020)).

In terms of the risk of COVID-19, the government understands that there are currently two confirmed cases of COVID-19 at the Charlotte County Jail, in an inmate unit that does not house federal pretrial detainees like Worrell.  Pursuant to this Court's transport order, *see* Dkt. 12, Worrell will soon be transferred into D.C. Department of Corrections' (DOC) custody.  According to the updates provided to this Court, DOC facilities currently have one COVID-19 positive resident (out of more than 1,000), who is in isolation.  There have been no new positive

COVID-19 test results at DOC facilities in the last several days. Given the increased rate of public vaccination and those case counts, the risk of COVID-19 transmission appears, at this time, lower than at earlier points in the pandemic. The government has asked the U.S. Marshals Service to transport Worrell as soon as possible to D.C.

Nonetheless, given Worrell's serious underlying condition, the government is willing to reconsider the risk to Worrell if the number of COVID-19 cases increases at the facility where he is housed, either in Florida or in D.C.[1]

3. Worrell spends a significant portion of his motion contending that the Court should reweigh the Section 3142(g) factors and order his release. *See* Dkt. 16-1 at 8-14. The Court already considered these arguments, and the evidence Worrell cites, prior to issuing its detention order in this case. Thus, for example, Worrell marches through some of the factors this Court identified in *United States v. Chrestman*, No. 21-MJ-218 (ZMF), 2021 WL 765662 (D.D.C. Feb. 26, 2021), in relation to Worrell's conduct on January 6, 2021. *Id.* at 8-10. But this Court already applied the *Chrestman* factors to Worrell's conduct in its March 19, 2021 detention order. *See* Dkt. 13, Att. A, at 4 (concluding that "all but one of those factors is present here"). The government responds to only a few new points below.[2]

Worrell argues that the government's proffered facts "show only that Mr. Worrell was

---

[1] Of course, Worrell has demonstrated that, despite his serious underlying medical condition, prior to his arrest he affirmatively sought out public confrontations while ignoring the D.C. Mayor's local mask mandate and engaging in violent conduct. *See* Mayor's Order 2020-080: Wearing of Masks in the District of Columbia to Prevent the Spread of COVID-19 (May 22, 2020), *available at* https://coronavirus.dc.gov/maskorder. In every photograph of Worrell that the government has reviewed, he is not wearing a mask; most of these were in Washington, D.C., while Worrell was near other unmasked individuals. *See* Dkt. 9 at 4, 6, 8-10, 12 (including several photographs). And this Court has also determined that there is strong evidence Worrell traveled to commit several crimes during the pandemic. Still, regardless of Worrell's own regard for his health prior to arrest, the government obviously desires to protect him from COVID-19 now.

[2] Worrell also contends that he did not "pre-plan or coordinate with other participants before, during, or after the event." Dkt. 16-1 at 12. This Court already found to the contrary. *See* Dkt. 13, Att. A, at 1 (finding that "Defendant's participation in the mob was planned, calculated, and intentional," and that Worrell

6

engaging in First Amendment protected activity." Dkt. 16-1 at 14.  Worrell cites to an Exhibit D that he claims shows that he did not "make any attempt to interfere with" law enforcement on January 6, 2021.  *Id.* at 13.  The government does not yet have, and so cannot comment on, Exhibit D to Worrell's motion.  But as the government previously noted, regardless of Worrell's intended target—and the government believes the context makes clear who that was—Worrell was, at the very least, discharging pepper spray gel into a crowd and within feet of law enforcement, for no discernible or reasonable purpose.

Worrell also contends that Worrell "volunteered to be interviewed by law enforcement, and . . . was forthright about his alleged presence at the U.S. Capitol." Dkt. 16-1 at 15.  Hardly.  Worrell did not volunteer to be interviewed; he agreed to an interview only when law enforcement arrived at his home.  He admitted his presence at the Capitol, but was not forthright about his conduct, instead claiming he had engaged in no wrongdoing.  He did not surrender immediately as he was directed, but instead said that he would turn himself in at home.  Dkt. 13, Att. A, at 3.  Upon surrender, "while being arrested, defendant commented to the FBI agents that he knew the name of the tipster and stated a name, as if seeking confirmation, and further, stated that if he were to find out the name of the Twitter user who exposed his identity online, the FBI 'would be coming for [him] again.'"  *Id.*  "These comments raise serious and troubling signals about defendant's willingness to comply with release conditions to not intimidate or threaten any prospective witness."  *Id.*  There is no reason to reconsider the Court's earlier conclusions on these points.

---

"travelled to Washington, D.C. with . . . other Proud Boys . . . and marched with" other Proud Boys prior to the riot at the Capitol).

7

### III. <u>CONCLUSION</u>

The Court should deny Worrell's motion for reconsideration.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        Acting United States Attorney
        D.C. Bar No. 415793


        */s/ William Dreher*
        WILLIAM DREHER
        D.C. Bar No. 1033828
        Assistant United States Attorney (Detailed)
        700 Stewart Street, Suite 5220
        Seattle, WA 98101
        (206) 553-4579
        william.dreher@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2021, I served a copy of this pleading on defendant's counsel through the Court's electronic filing system.

*/s/ William Dreher*
William Dreher
Assistant United States Attorney