UNITED STATES DISTRICT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
|   v.           ) | Case No. 21-MJ-296 (GMH) |
|               ) | |
| CHRISTOPHER WORRELL,  ) | |
|               ) | |
| Defendant.         ) | |

**REPLY TO GOVERNMENT'S MEMORANDUM IN OPPOSITION TO EMERGENCY MOTION FOR RECONSIDERATION**

John M. Pierce (*PHV* admitted)
**PIERCE BAINBRIDGE P.C.**
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725

*Attorneys for Defendant Christopher Worrell*

1

Defendant Christopher Worrell, by and through his counsel, tenders this Reply to Government's Memorandum in Opposition to the Emergency Motion for Reconsideration at the Court's direction.

It is critical that resident inmates have rapid access to responsive medical treatment, yet resident inmates like Mr. Worrell continue to have had difficulties accessing prompt medical care. This is particularly concerning for Mr. Worrell because it shows these facilities cannot adequately manage his medical needs to treat a life-threatening condition.

In this case, Charlotte County Jail (the "Jail") is incapable of managing Mr. Worrell's medical needs. Mr. Worrell is a pretrial detainee which is considerably different to a post-conviction detainee. The rights of pre-trial detainees are different than the rights of post-conviction detainees because pre-trial detainees are presumed innocent and are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982); *see also Hardy v. Dist. of Columbia*, 601 F. Supp. 2d 182, 188 (D.D.C. 2009) (quoting *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992)) ("While a convicted prisoner is entitled to protection only against 'cruel and unusual' punishment [under the Eighth Amendment], a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description.").

*First*, Mr. Worrell, through his counsel, has taken substantial steps in coordination with Mr. Worrell's oncologist, Dr. Bino Rucker, to attempt to obtain the necessary authorization for the Charlotte County Jail (the Jail) to provide Mr. Worrell with all medications he requires to treat his non-Hodgkin's lymphoma.

*Second*, Dr. Rucker has been unable to return calls to the Jail because Jail staff failed to provide him with adequate contact information. Dr. Rucker was only able to reach the Jail's

medical center and speak to the Jail's medical staff after Mr. Worrell's counsel and family members provided Dr. Rucker with a direct number the Jail failed to supply.

*Third*, even if Mr. Worrell were to receive the medication—an outcome that is far from guaranteed, despite aforementioned efforts—the Jail still lacks the facilities and specialists necessary to provide the diagnostic and ongoing care essential for the health of Mr. Worrell. Mr. Worrell's medical condition compounded with the current Covid-19 environment poses and elevated risk due to Mr. Worrell's medical history and past treatments. As long as Mr. Worrell remains incarcerated, he faces irreparable harm with his health in imminent danger.

### I. Defense Counsel has Made Substantial Attempts to Coordinate the Authorization of the Release of Medication with Dr. Bino Rucker and Charlotte County Jail.

Mr. Worrell's defense counsel learned of his lack of access to medication and worsening condition on or about March 22, 2021. During a phone call with Mr. Worrell, he advised that he was developing lymphomas on the face and neck and was unable to access medical care. Throughout his detention, Mr. Worrell had made numerous requests to access medical care but failed to receive any, beyond examination, from the Jail. (*See* Exhibit A, Declaration of Christopher Worrell Regarding Medical Treatment, April 3, 2021.)

Mr. Worrell's counsel first contacted Dr. Bino Rucker on March 24, 2021 via email regarding the level of care Mr. Worrell needed and the treatment his Non-Hodgkin's lymphoma required. Dr. Rucker responded promptly in less than two hours for our requests for information. Dr. Rucker advised that home confinement would "significantly reduce the risk to Mr. Worrell's health." (See Exhibit C Affidavit of Dr. Bino Rucker) Counsel has continued to speak with Dr. Rucker regarding medical care for Mr. Worrell and attempted to coordinate the necessary contacts with Dr. Rucker.

After more than a week, Mr. Worrell's repeated requests for medical care were finally answered; however, he did not see a doctor but a nurse, Mr. Worrell was finally seen by a doctor on March 29th. (Ex. A.) The nurse informed Mr. Worrell that the facilities at the Jail were inadequate to provide the level of care necessary, especially while coping with the ongoing COVID-19 pandemic. (*Id.*) Mr. Worrell was not told that his medication could not be refilled until March 26, 2021, and even then, he was not told how to remedy this problem. (*Id.*)

Mr. Worrell's counsel reached out to the Jail's doctor five times and left messages requesting a return call on March 31, 2021, April 1, 2021, and April 2, 2021, to facilitate the communication between Dr. Rucker and the Jail. The Jail has thus far not returned these calls.

On April 1, 2021, Counsel obtained the number for the Jail pharmacy and communicated this number to Dr. Rucker via email and phone. Also on April 1, Counsel called the Jail nurse's number obtained from the Jail's desk clerk. This call has thus far not been returned. On this same day, Mr. Worrell's counsel communicated with Dr. Rucker and confirmed that he had spoken with Jail staff regarding Mr. Worrell's medication. (*See* Exhibit B, Declaration of Dr. Bino Rucker Regarding Medical Treatment of Christopher Worrell.)

Despite these attempts by Dr. Rucker, Mr. Worrell, and his Counsel to facilitate the release of his medication at the Jail, Mr. Worrell remains untreated as of today. While Dr. Rucker has authorized Mr. Worrell's pharmacy to distribute refills to the Jail, Dr. Rucker estimates that there will still be a significant delay in these medications reaching Mr. Worrell, even if the Jail were to request the refills today. (Ex. B.) Meanwhile, Mr. Worrell has these critical cancer medications ready for use in his own home, however, the Jail will not allow these medications to enter the facility because they are previously opened. (Ex. A.) This difficulty in obtaining lifesaving cancer medication—which the Government characterizes as a "simple" task—demonstrates the

inadequacy of the care available at the Jail, and supports Mr. Worrell's contention that only home-confinement and ready access to his treating physician will allow him to receive quality care.

## II. Mr. Worrell's Physician was Unable to Contact the Jail Because They Have Not Left Contact Information During the Calls to his Office.

The government makes much of the fact that "[t]he Jail's staff has repeatedly tried to contact Worrell's physician. But the physician has not responded nor has the facility" (Plaintiff's Opposition to Defendant's Emergency Motion for Reconsideration, page 1). However, the Government conveniently elides that Dr. Rucker was unable to respond to these calls *because* Jail staff failed to provide Dr. Rucker with adequate contact information—specifically, they failed to provide any phone number or extension at which Dr. Rucker could contact the Jail's medical staff directly. (Ex. B.) This failure is especially damning because there is, in fact, a direct line to the Jail's medical staff. *See supra* at 2 ("on April 1, Counsel called the Jail nurse's number obtained from the Jail's desk clerk."). Moreover, when Dr. Rucker called the number that Jail staff did give him, the Jail's confusing and convoluted robotic directory system thwarted his attempt to contact the Jail's medical staff. (Ex. B.)

The Jail claims they did not reach out via email because they could not make out the email in the voicemail but did not attempt to find his email through alternative means, such as reaching out to Mr. Worrell or Counsel.

Mr. Worrell's counsel has attempted to facilitate communication since being made aware of this issue and was immediately successful in reaching Dr. Rucker. On the other hand, the Jail's medical staff has remained elusive, leaving Mr. Worrell in the dark as to whether the Jail has even begun the request process with Mr. Worrell's pharmacy. On April 1, 2021, Dr. Rucker was finally able to speak with the Jail's medical staff. (Ex. B.) Yet Mr. Worrell has still not received his necessary medication days later. (Ex. A.)

Now, Mr. Worrell has been removed from the Charlotte County Jail, resetting the coordination between Counsel and that detention facility and further delaying the ability of Mr. Worrell to receive his medication. Counsel has been in contact with the U.S. Marshalls but the Marshalls were elusive in informing Counsel where Mr. Worrell was being transferred to, and when he would arrive there. Transporting Mr. Worrell nearly 1,000 miles to a new facility just after the Jail had communicated with Dr. Rucker has immediately set back the progress made over the last week. More importantly, it will undoubtedly delay Mr. Worrell in receiving lifesaving medication when his condition continues to worsen by the day.

### III. Even if Mr. Worrell has Access to The Medication at Issue, The Charlotte County Jail is Still Inadequate for the Treatment Required for Non-Hodgkin's Lymphoma.

Prior to detention, while Mr. Worrell has been maintaining his cancer through regular treatment, he is not in remission. (Ex. A.) Since his detention, Mr. Worrell has suffered increasingly severe symptoms due to his Non-Hodgkin's Lymphoma. His skin has been burning and itching, as well as nodes appearing behind his ears. (*Id.*) He is visibly in worse condition since the Emergency Bail Hearing two weeks ago. The itching and sores have spread over his face, neck, chest, back, arms, and legs. (*Id.*) While his medication may alleviate the pain associated with his worsening condition, there is no guarantee it will restore him to his pre-detention condition because he has not been evaluated by a cancer specialist in more than three weeks; and it would not alleviate the risks posed by his Non-Hodgkin's Lymphoma, nor the compounding factor of COVID-19. (Ex. B.)

Patients with Non-Hodgkin's Lymphoma, like Mr. Worrell, need regular visits with an Oncologist, which the Jail does not have. *See* "*Treating Non-Hodgkin's Lymphoma*", American Cancer Society, https://www.cancer.org/cancer/non-hodgkin-lymphoma/treating.html. Mr.

Worrell does have an oncologist, but said oncologist cannot provide for Mr. Worrell's ongoing care without having direct access to Mr. Worrell's person in his medical office. (Ex. B.) His treatment requires regular blood tests, which the Jail cannot do. His treatment also requires regular biopsies, which the Jail cannot do. Regular re-evaluation and adjustment of treatment and medication are required to treat Mr. Worrell, which the Jail cannot do. Mr. Worrell's treating physician has advised that Mr. Worrell needs six to eight servings of vegetables daily, as well as numerous multivitamins due to his immunocompromised condition, which the Jail cannot or will not provide. All of these statements similarly apply to the detention facility in Washington D.C. where the Government appears to be transferring Mr. Worrell now.

The risks due to COVID-19 further compound this issue. The Government's contention that due to current case counts in the Jail and "the increased rate of public vaccination and those case counts, the risk of COVID-19 transmission appears, at this time, lower than at earlier points in the pandemic" is a misconception regarding outbreaks and current case counts in the United States, generally, and Charlotte County in particular. Over the last three weeks, cases have been steadily rising across the country, in either Charlotte County or Washington D.C.. In fact, the case count is currently trending upward and the New York Times has characterized Wsahington D.C. as having a "very high risk" of COVID-19 exposure. (*See Florida Coronavirus Map and Case Count*, New York Times. Updated April 4, 2021. https://www.nytimes.com/interactive/2020/us/florida-coronavirus-cases.html; *Tracking Coronavirus in Washington D.C.*, New York Times. https://www.nytimes.com/interactive/2021/us/washington-district-of-columbia-covid-cases.html).

For Mr. Worrell, who is at heightened risk of serious COVID-19 complications, by the time the Jail had identified an outbreak of cases within the facility, it would be too late. (*See* Ex. B.) The Government tries to minimize this risk by suggesting that the inmates who tested positive are in a different pod. Plaintiff's Opposition to Defendant's Emergency Motion for Reconsideration, at 3. Yet Mr. Worrell has come in close contact with prisoners from different pods in hallways, near visitations and phone calls, and while waiting for medical care. (Ex. A.) The pods that have had COVID-19 cases, where state inmates are housed, are also the same housing units where kitchen staff and other inmate work forces live. Accordingly, it is irrelevant that Mr. Worrell is housed in a unit where COVID-19 cases have not yet been reported: he regularly has contact with people who may have been exposed to the virus, and are capable of spreading it.

None of these risks would be any lower at the facility in Washington, D.C., where the Government has initiated a transfer of Mr. Worrell. The conditions in Washington, D.C., are similarly concerning, if not more so. According to a complaint filed against the D.C. facility, the leadership in D.C. are "guaranteeing and accelerating the rampant spread of COVID-19." (*See Edward Banks v. Quincy Booth*, No. 1:20-cv-849, complaint filed March 30, 2021, https://www.acludc.org/en/cases/banks-v-booth-challenging-life-threatening-lack-covid-19-precautions-dc-jail). Given these alarming allegations about the risk of spread of COVID-19 in the D.C. Jail, transfer to this facility would do little to alleviate the risk posed from COVID-19, Mr. Worrell's cancer, or a combination of the two – but rather exacerbate these risks.

For the forgoing reasons, Mr. Worrell requests his immediate release pending trial, pursuant to the conditions and order entered by the Middle District of Florida Magistrate Judge on March 12, 2021.

Dated: April 5, 2021						Respectfully Submitted,

								/s/ John M. Pierce
								John M. Pierce (*PHV* admitted)
								**PIERCE BAINBRIDGE P.C.**
								355 S. Grand Avenue, 44th Floor
								Los Angeles, CA 90071
								Tel: (213) 400-0725

								*Attorneys for Defendant Christopher Worrell*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 18, 2021, this motion and the accompany declaration was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

/s/ John M. Pierce.
John M. Pierce