UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | )  Case No. 21-MJ-296 (GMH) |
| v. | ) |
| | ) |
| | ) |
| CHRISTOPHER WORRELL, | ) |
| | ) |
| Defendant. | ) |

**OPPOSITION TO THE GOVERNMENT'S MOTION TO CONTINUE AND
TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

Defendant, Christopher Worrell, by and through his counsel, urges the District Court to deny the Government's Motion to Continue and Exclude Time under the Speedy Trial Act. The Supreme Court has held a defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining if the defendant is being deprived of the right. *Barker v. Wingo*, 407 U.S. 514, 531–32 (1972). Mr. Worrell emphatically opposes any waiver of his speedy trial right while he remains incarnated by the Government with no offer of bail.

Further, both the best interests of the public and the best interests of Mr. Worrell, particularly regarding safety, due to his Non-Hodgkin's lymphoma, weigh in favor of upholding Mr. Worrell's speedy trial right. Allowing the Government to detain Mr. Worrell any longer than necessary poses a far greater harm than any benefit gained from servicing the Government's desire to investigate further undefined sources of evidence, which lack relevance to Mr. Worrell's case.

The Government would gain little from their requested 60-day delay, other than continuing to detain Mr. Worrell without any finding of guilt. The interests in Mr. Worrell's health and safety are particularly weighty as the Government continues to fight to keep him detained despite his

worsening symptoms of Non-Hodgkin's lymphoma, and the increased risks he faces from COVID-19. Mr. Worrell experiences severely elevated risks from COVID-19 because his comorbid conditions significantly weakening his immune system. Mr. Worrell asks the Court not infringe on his right to a speedy trial for the following reasons.

## I. FACTUAL BACKGROUND

On January 6, 2021, Mr. Worrell, along with his live-in girlfriend, traveled to Washington D.C. to listen to then-President Donald Trump speak and to exercise their First Amendment Rights to protest the 2020 Presidential Election. Mr. Worrell attended the rally on the National Mall and, given the violence that had been committed against other people lawfully asserting their First Amendment Rights in Washington D.C. over the prior year, wore a tactical vest and legally carried pepper spray for protection.

Following the Stop the Steal Rally, Mr. Worrell, along with thousands of other people, walked from the Mall to Capitol Hill, to continue to protest. The situation devolved from peaceful to violent, when individuals in the group of protestors began pushing up against barricades and breaking into the Capitol Building. Mr. Worrell, as shown by video clips he recorded on that day repeatedly yelled for peace and backed away as officers began to fire tear gas into the crowd. Another clip from Mr. Worrell's phone captures him saying to an officer, "I'm not coming through," when he bumped into a barricade while trying to back away from the chaos.

At some point, Mr. Worrell observed individuals, who he believed to be Antifa, pushing up a short set of stairs towards a thin line of police officers and discharged his pepper spray towards these individuals. The Government contends that Mr. Worrell was discharging his pepper spray towards the officers; however, they have offered no clear evidence to support this contention and concedes they "do not currently know with certainty the target at which WORRELL was

spraying." The Government bases its allegations on a number of photographs they have already discovered and which provide little clarity about the intended or actual target of Mr. Worrell's pepper spray use.

While many protestors eventually broke through the police officers' lines and entered the Capital Building, Mr. Worrell backed away and did not enter the building. Mr. Worrell soon returned home to Florida. These facts are not contested.

Within a week, the FBI received tips about Mr. Worrell's alleged conduct on January 6, 2021, and the FBI spoke to him on January 18, where he admitted to being in D.C. but denied wrongdoing. When Mr. Worrell eventually learned that an arrest warrant was issued, he coordinated with the FBI to voluntarily turn himself in.

Mr. Worrell was granted pretrial release subject to strict conditions by a Florida Magistrate Judge, however, when the Government requested an emergency stay and review of that order, it was granted, and Mr. Worrell has since been detained without bond. Upon detention, Mr. Worrell lost access to his cancer medication due to jail policy, and he has developed lesions, nodes, and painful, itchy patches that have spread across his body. When Mr. Worrell had finally surpassed the hurdles to get his medication, the Government transferred him to a new facility, resetting the process to get him the medication.

Mr. Worrell requested an emergency rehearing of his detention order based on his worsening cancer symptoms and the accompanying risk to COVID-19. The Government opposed this motion, arguing, in part, that COVID-19 was an insubstantial risk based on the effective policies of the Department of Corrections. Mr. Worrell continues to dispute the order of detention pending trial, and the Government continues to oppose these steps. Now the Government seeks to

delay the proceedings at a substantial risk to Mr. Worrell's health and constitutional right to a speedy trial.

## II. STANDARD OF REVIEW

The right to a speedy trial is a fundamental right. *Kloper v. North Carolina*, 386 U.S. 213 (1967). While the court may grant some exceptions, these exceptions are limited by both Constitutional and statutory limits. See *Barker v. Wingo*, 407 U.S. 514, 530 (1972); 18 U.S.C. 3161(h).

Constitutionally, a balancing test requires consideration of the following factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker,* 407 U.S. at 530. In deciding whether to grant a continuance and excluding the continued time from the Speedy Trial Act, the Court may only allow the exclusion of time if the judge finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" and records those findings. *Bloate v. United States*, 559 U.S. 196, 210 (2010), *See United States v. Rivera Const. Co.*, 863 F.2d 293, 295–96 (3d Cir. 1988).

Congress wanted to ensure that "a district judge considering burdening the right to a speedy trial would give careful consideration when balancing the need for delay against "the interest of the defendant and of society in achieving speedy trial." S.Rep. No. 1021, 93d Cong., 2d Sess. 39 (1974). This requires an individualized factual finding by the Court analyzing the case-specific facts pertaining to the defendant. *See Bloate*, 559 U.S. at 205–06.

Notably, the Court may not grant a motion to stay proceedings and exclude time where "general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. 3161 (h)(7)(C).

This prevents the Government from prematurely bringing charges against defendants and then moving to confine those individuals without any finding of guilt.

### III. ARGUMENT

Mr. Worrell is entitled to his speedy trial right as both the interests of the public and Mr. Worrell weigh in favor of a speedy trial. Section 3161 of Title 18, United States Code, requires that the trial must commence within seventy (70) days from the filing date of the information or indictment, or from the date the defendant first appears before a judicial officer of the court in which the charge is pending, whichever is later. 18 U.S.C. § 3161(c)(1). "A criminal defendant's right to a speedy trial is 'one of the most basic rights preserved by our Constitution.'" *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S. Ct. 988, 995, 18 L. Ed. 2d 1 (1967). Congress chose to safeguard this important right through the rigid procedural requirements of the Speedy Trial Act." *United States v. Ammar*, 842 F.3d 1203, 1212-13 (2016).

The Speedy Trial Act excludes certain periods of time for purposes of computing the time within which trial must commence. Among those exclusions is an exclusion for time periods in which the court makes a finding that the ends of justice outweigh the defendants' and the public's interest in a speedy trial. *Id.* at § 3161(h)(7)(A). The following statutory factors are to be considered in determining whether the ends of justice served by granting the continuance sought by the Government outweigh Mr. Worrell's and the public's best interests in a speedy trial:

i.  Whether the failure to grant such a continuance in the proceeding would likely make a continuation of such proceeding impossible, or result in a miscarriage of justice.

ii. Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable

        to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

   iii.    Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b) [18 USCS § 3161(b)] or because the facts upon which the grand jury must base its determination are unusual or complex. (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B). This list of factors is not exhaustive. *Id*. When these factors are considered and weighed against Mr. Worrell's and the public's interest in a speedy trial, the balance falls in favor of denying the Government's motion to continue and to exclude time under the Speedy Trial Act.

        The Government argues a continuance is warranted pursuant to sections (i), (ii), and (iv) of 18 U.S.C. § 3161(h)(7)(B). In doing so, it focuses upon pretrial preparation time; specifically, the volume of discovery it must process in this case. Dkt. No. 25, pp. 5-6. The Government has enormous resources available to it as it processes the investigative materials, analyzes the materials for production purposes, and produces them. The Government states that "multiple law enforcement agencies" were involved in the events of January 6, 2021, and that even more local, state, and federal agencies and field offices have been involved in investigations related to the

events. *Id.* at pp. 2-3. Each of these agencies has staff of their own who will assist the Government with preparing investigative materials for production in discovery. With the exercise of due diligence and the efficient use of the enormous resources which the Government has at its disposal, the Government will have adequate time to prepare the case for trial effectively.

This case (as opposed to the collective entirety of all of the cases the Government is presently handling relating to the events of January 6, 2021) is not so complex that it is unreasonable to expect adequate preparation for pretrial proceedings or trial itself within the limits prescribed by the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(ii), (iv). Nor is the case so complex that failure to grant the Government's request for a continuance would result in a miscarriage of justice. *Id.* at § 3161(h)(7)(B)(i). Adequate time remains for the Government and for Mr. Worrell to prepare for trial. The Government's motion for excludable delay on the basis of needing additional time for pre-trial preparation is at the best premature – Mr. Worrell has not been arraigned prior to the Government filing its motion requesting a continuance.

Additionally, Mr. Worrell also has an interest which must be acknowledged, weighed, and protected. This Court must determine whether the interests served by granting the Government's requested continuance outweigh Mr. Worrell's and the public's, right to a speedy trial. Part of Mr. Worrell's interest in a speedy trial in this regard is directly tied to the fact that he is subject to pre-trial detention without bond.

Being detained and held without bond has caused significant emotional distress to Mr. Worrell, and will continue to do so. Mr. Worrell has a right to a speedy trial, and that right recognizes that pre-trial detention and a lengthy period of delay leading up to trial only magnifies the stress, uncertainty, psychological pressure and damage to which a defendant in custody is subject. *See Strunk v. United States*, 412 U.S. 434, 439 (1973). This psychological pressure can

ultimately cause an impairment in Mr. Worrell's defense due to "dimming memories and loss of exculpatory evidence" as a result of "oppressive pretrial incarceration". *See Doggett v. United States*, 505 U.S. 647, 654 (1992).

The statutory factors outlined in 18 U.S.C. §§ 3161(h)(7)(A) and (B)(i)(ii), and (iv) weigh in favor of denying the Government's Motion to Continue and to Exclude Time Under the Speedy Trial Act. Mr. Worrell's right to a speedy trial outweighs the factors set forth by the Government in its motion, and the motion should therefore be denied.

> **A.     Mr. Worrell's case is not overly complex due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings.**

The Government spends a substantial portion of their motion discussing the total number of defendants the United States is currently prosecuting for actions on January 6, and the extensive discovery necessary to prosecute those cases even though these other cases are, legally speaking, unrelated. *See* United States' Motion to Continue and to Exclude Time Under the Speedy Trial Act, *1-3. The fact that the Government is currently involved in prosecuting thousands of cases, including hundreds of protestors from January 6, has no bearing on the factors the Court should consider. *See* 18 U.S.C. 3161(7)(b)(ii).

When considering the factors in the Speedy Trial Act, the Court must make factual findings based on the individual circumstances of each proceeding. *See Bloate*, 559 U.S. at 203–04. Mr. Worrell's case must be considered in light of his case, and his case alone. *See id.* The Government spends little time informing the Court of the facts specific to Mr. Worrell's case that would make it overly complex. *See* United States' Motion to Continue and to Exclude Time Under the Speedy Trial Act. There is a single defendant, Mr. Worrell, in this case before the Court. While the

Government listed a number of cases supporting the contention that Courts have granted these motions where there is voluminous discovery or complex cases, all the cases cited by the Government involve at least one co-defendant. *See* United States' Motion to Continue and to Exclude Time Under the Speedy Trial Act, *6-8. Here, there are none, and as such, all the cases cited by the Government do not support a waiver of the speedy trial right in this case.

The nature of the prosecution is likewise not overly complex when considering only Mr. Worrell's alleged conduct. He is charged with trespass, obstruction of official proceedings, and assault, not the complex wire fraud, security fraud, or conspiracy charges the Government attempts to analogize this case to. *See United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010). The thousands of documents or financial records of discovery required for those cases are not present in this case. Nor have there been substantial last-minute changes to the charges alleged. *See United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (Where only five days before trial thousands of pages of additional discovery and eight hours of video were entered, as well as new previously unforeseen counts). Mr. Worrell is not charged with entering the Capitol building nor is he charged with planning or coordinating the incident, in those cases perhaps discovery would be voluminous enough to warrant excluding time under the Speedy Trial Act.

As it stands, Government has made no factual statements, regarding Mr. Worrell's particular case, about the amount of evidence it still needs to parse through, what the Government expects to gain from this evidence, when the Government expects to be finished with this task, or if they intend to ask for further extensions. *See* United States' Motion to Continue and to Exclude Time Under the Speedy Trial Act. This generic motion for a waiver of the right to a speedy trial

creates a situation ripe for abuse. *See United States v. Piontek*, 861 F.2d 152, 154 (7th Cir. 1988) (The is potential for abuse of may be particularly acute where the district court routinely allows time for filing motions frustrating the defendant's speedy trial rights).

Similarly, the Government does not contend, nor is it true that this case involves novel questions of fact or law. In sum, none of the factors that make a case unduly complex, justifying a stay of proceedings and exclusion of time under the Speedy Trial Act are present in this case. The Government fails to describe how Mr. Worrell's particular case warrants granting this motion. In fact, Mr. Worrell's name only appears once in the entire body of the Government's motion, and factual references to him and his alleged conduct are few and far between. *See* United States' Motion to Continue and to Exclude Time Under the Speedy Trial Act.

It's unclear how the Government expects the Court to make sufficient particularized findings of fact or law regarding Mr. Worrell's particular proceeding with such general statements about the January 6 prosecutions. *See Bloate*, 559 U.S. at 205–06 (finding that the factors apply to "proceedings concerning the defendant"). In light of these deficiencies in the Government's motion, it should be denied.

Finally, the Government has failed to cite any case law analogous to Mr. Worrell's case. The only precedent the government has cited to in support of a court granting a waiver of the speedy trial right over defense counsel's objection is that of *United States v. Bell*. 925 F.3d at 374 (7th Cir. 2019). However, the facts in *Bell* are entirely distinguished from the facts of this case. In *Bell* the court only overruled the defendant's objection when an unexpected and sudden development manifested in the case, a mere five days before trial. *Id.* In *Bell* one thousand pages of new discovery material and eight hours of recordings along with newly added counts all unexpectedly arose just five days before trial, justifying a *sua sponte* delay of the speedy trial. *Id.*

In Mr. Worrell's case the Government has not alleged any new and unexpected discovery material has come to light. The Government likewise has not alleged they need additional time to file any new charges not already included in their complaint. Further, Mr. Worrell has not even been indicted as of this date, leaving the government with more than their full seventy-day window to prepare for trial, far from the meager five days in *Bell*. 18 U.S.C.A. § 3161 (West), *Bell,* 925 F.3d at 374.

As previously stated, the Court may not grant a motion to stay proceedings and exclude time where "general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. 3161 (h)(7)(C). Mr. Worrell should not be deprived of his speedy trial right simply because the Government lunged into this case prematurely and now feels unprepared when reflecting on their caseload.

### B. The Public Interest in a Speedy Trial is Not Outweighed by the Ends of Justice Served in Delay.

The interests of the public must be considered when making a determination regarding continuances and exclusion of time under the Speedy Trial Act. *Bloate*, 559 U.S. at 210. The public has an interest in promoting speedy trials because "lengthy pretrial detention is costly. The cost of maintaining a prisoner in jail varies from $3 to $9 per day, and this amounts to millions across the Nation. In addition, society loses wages which might have been earned, and it must often support families of incarcerated breadwinners." *Barker v. Wingo*, 407 U.S. 514, 520–21, (1972). In Mr. Worrell's case this concern is elevated as he requires expensive cancer treatment and previously was gainfully employed supporting his family and child.

Furthermore, "If an accused cannot make bail, he is generally confined....in a local jail. This contributes to the overcrowding and generally deplorable state of those institutions. Lengthy

exposure to these conditions 'has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult." *Id*. With continued overcrowding in jails across the nation and given that Mr. Worrell even if convicted will likely one day be rereleased into society these public concerns are also weighty.

The Government's motion lacks any explanation regarding these interests or discussion of how or what ends of justice outweigh these factors. *See* United States' Motion to Continue and to Exclude Time Under the Speedy Trial Act. Rather than explain how this factor is outweighed, the Government merely states it is so. *Id*. Accordingly, the Government's motion should be denied.

    **C.    The Interest of Defendant in a Speedy Trial is Not Outweighed by the Ends of Justice Served in Delay.**

In making the motion to stay proceedings and exclude time under the Speedy Trial Act, the Government failed to instruct the Court on any facts it should consider when weighing the factors required by statute. *See* 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv). The Government, tellingly, failed to describe the interests Mr. Worrell has in maintaining his right to a speedy trial, particularly as the Government refuses to release him on any bail conditions.

The Supreme Court has identified three interests that defendants, like Mr. Worrell, have in the right to a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532. Noting that the most serious of these interests is the impairment of the defense "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

The Court also emphasized that pretrial detainees suffer even harsher penalties in delay of their trials stating,

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious.

*Id.* at 33. The Government failed to address any of these considerations in their motion.

The Court has also recognized that when a defendant is placed in jail prior to a trial without bail, a significant emotional burden placed upon a detained defendant by a looming trial. *Strunk*, 412 U.S. at 439 (citing *Smith v. Hooey*, 393 U.S. 374, 379 (1969); *United States v. Ewell*, 383 U.S. 116, 120 (1966)).

In *Strunk*, the Court analyzed the defendant's Sixth Amendment right to a speedy trial, rather than his statutory speedy trial rights set forth in 18 U.S.C. § 3161 et seq. However, because this Court must balance the interests served by the continuance the Government seeks against Mr. Worrell's interest in a speedy trial, the case is instructive on the nature of Mr. Worrell's interest in a speedy trial. The anxiety and psychological burden placed upon a defendant by lengthy pretrial incarceration threatens to produce "oppressive pretrial incarceration", "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence. *Doggett v. United States*, 505 U.S. 647, 654 (1992) (citing references omitted).

The pre-trial incarceration Mr. Worrell faces as he continues to be detained has created the anxiety and oppression recognized by *Doggett*. 505 U.S. at 654. Already, the threat and uncertainty surrounding a lengthy period of pre-trial incarceration is placing a significant and damaging psychological burden on Mr. Worrell. *Doggett* also recognized that excessive pre-trial delays can actually impair a defendant's ability to defend at trial due to dimming memories and

loss of exculpatory evidence. *Id.* Consequently, Mr. Worrell's defense may also be prejudiced due to dimming memories and the loss of exculpatory evidence due to his lengthy pretrial detention hampering his efforts to contribute to his own defense. If delays are granted, the anxiety, concern, and burden on Mr. Worrell is expected to be enormous – so enormous that it may ultimately impair his ability to assist in his defense meaningfully.

These factors are particularly relevant for Mr. Worrell, who is at risk not only of impairing his right to a fair trial, but also of contracting COVID-19 while awaiting trial. Mr. Worrell is particularly vulnerable to the deadly disease because of his Non-Hodgkin's lymphoma diagnosis. This cancer attacks the white blood cells in the body and impairs the immune response, making it much more likely that Mr. Worrell would suffer extremely severe symptoms, or even death from COVID-19.

This risk is not attenuated either, Mr. Worrell has already begun to suffer as a result of his pretrial detention. Due to his inability to access his medication at the Charlotte County Jail, Mr. Worrell began to develop nodes, lesions, and itchy patches that began on his face and neck and have since spread across his body. While Counsel and the Government were in the final stages of coordinating Mr. Worrell's receipt of medication for his cancer, the Government transferred Mr. Worrell, first to Grady County Jail in Oklahoma, and then presumably, to Washington D.C. where he is expected to arrive by April 9. During this travel he will not receive his medication and upon arrival at the DC Jail, substantial coordination will once again take place before he gets his treatment.

Furthermore, while incarcerated pretrial, Mr. Worrell is at a far greater risk of contracting COVID-19, than if he were released. *See "A State-by-State Look at Coronavirus in Prisons",* The Marshall Project, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-

coronavirus-in-prisons. This risk is especially great when he is being transferred between multiple states, over nearly half the country, over the course of a few days. Despite low case counts currently reported in the DC Jail, close contact with even one positive person could mean incapacitation or death for Mr. Worrell.

During pretrial detention hearings, the Government had argued that the risk of COVID-19 is not substantial, and that the outbreaks had largely been contained. Now, only two days later, the Government has reversed course and is asking the Court to allow it more time because of COVID-19. The coronavirus pandemic should be considered by the Court in its determination regarding the Government's request for a continuance, however, it properly weighs against the Government's position. A continuance substantially increases the risk to Mr. Worrell in light of his pretrial detention and the COVID-19 pandemic. As a result of these factors, the interests of the Defendant, Mr. Worrell, substantially outweigh the unspecified benefits the government would receive in granting their continuance.

## IV. CONCLUSION

The Government has failed to articulate precisely what benefits the Government would receive in regard to Mr. Worrell's particular case if its continuance and exclusion of time were granted. The Government misconstrues case law concerning multiple co-defendants or overly complex cases in an attempt to apply it to all cases arising out of January 6 despite no codefendants being charged in this case. The Government failed to articulate any facts specific to Mr. Worrell's case that apply to the Speedy Trial Act factors. The Government also failed to adequately address the interests of either the public or Mr. Worrell when it argued that the balancing test weighed in favor of the ends of justice. Given Mr. Worrell's pretrial detention, elevated risk in relation to COVID-19, and the relative simplicity of this case considering the charges brought against Mr.

Worrell, no waiver of the Speedy Trial Act should be granted. For these reasons, Mr. Worrell strongly opposes the loss of his rights to a speedy trial and requests the Court deny the Government's motion.

Dated: April 9, 2021                                  Respectfully Submitted,

/s/ James F. Kelly
John M. Pierce (*PHV* admitted)
James F. Kelly (*PHV* admitted)
**PIERCE BAINBRIDGE P.C.**
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725

*Attorneys for Defendant Christopher Worrell*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 9, 2021, this motion and the accompany declaration was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

/s/ James F. Kelly
James F. Kelly