## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-292 RCL** |
| | : | |
| **CHRISTOPHER WORRELL,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' REPLY IN SUPPORT OF ITS MOTION
### TO CONTINUE AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

Defendant Christopher Worrell contends that the Court should decline to grant the government's requested 60-day continuance and exclusion of time under the Speedy Trial Act, *see* 18 U.S.C. § 3161(h)(7), for two reasons.   First, Worrell argues that his "case (as opposed to the collective entirety of all of the cases the Government is presently handling relating to the events of January 6, 2021) is not so complex that it is unreasonable to expect adequate preparation for . . . trial within the limits prescribed by the Speedy Trial Act."   Dkt. 30 at 7; *see id.* at 8-11.   Second, Worrell contends that his interest and the public's interest in a speedy trial outweigh the interests of justice favoring a continuance.   *Id.* at 11-15

Worrell is wrong on both counts.   Worrell's case is one of the Capitol Attack prosecutions, which share common features regarding overlapping discovery, discovery processing, and other considerations that render them unusually complex and novel due to the nature of the prosecution and number of related defendants involved.   *See* 18 U.S.C. § 3161(h)(7)(B)(ii).   Moreover, for the same reasons, a failure to continue the case would "deny counsel for the defendant [and] the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."   *Id.* § 3161(h)(7)(B)(iv). Finally, due to the COVID-19 pandemic, the closure of the courthouse for jury trials for

approximately one year, and the health measures required to conduct a jury trial at this time, extraordinary circumstances exist that will prevent Worrell from being able to safely go to trial within 70 days, for the reasons outlined in the Government's opening memorandum and this District's Standing Order 21-10.   *See* Dkt. 25 at 8-9.   Neither the public's nor the defendant's interest in a speedy trial outweighs these considerations, contra Worrell's arguments.   Therefore, the Court should grant the requested 60-day continuance and exclude time under the Speedy Trial Act, on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendants in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

## FACTUAL BACKGROUND

The government disputes most of the Worrell's "Factual Background" section, which contains characterizations of Worrell's conduct that are inaccurate and, in some cases, have been found to be implausible by Chief Judge Howell in detention hearings.   *See* Dkts. 27 and 29 (transcripts of said hearings).   Those disputes of fact are not, however, relevant to the Speedy Trial Act issues addressed by this motion, and so the government does not focus on them here.

## ARGUMENT

**A.**     **Worrell's Case is Unusual and Complex Due to the Number of Related Defendants and the Nature of the Prosecution.**

Worrell first argues that his particular case is not (in his view) overly complex, and that it is irrelevant whether the Capitol Attack prosecutions are, in their entirety, complex, unusual, or indeed entirely novel.   According to Worrell, that hundreds of others who participated in criminal

misconduct near and around Worrell on January 6 are also being investigated and prosecuted "has no bearing" on the continuance question.  *Id.* at 8.   Not so.

As an initial matter, as the government outlined in its opening motion, the Capitol Attack prosecution will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence.   Over 300 individuals have been charged, and many more are under investigation.   The investigation has involved: (a) more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies; (b) approximately 1,600 electronic devices; (c) the results of hundreds of searches of electronic communication providers; (d) over 210,000 tips, of which a substantial portion include video, photo and social media; and (e) over 80,000 reports and 93,000 attachments related to law enforcement interviews of suspects and witnesses and other investigative steps.   These numbers will only continue to grow.   And all of the evidence in these separate investigations must be received, processed, and ultimately reviewed, either manually or via new software processes.

Worrell claims that all of these complexities are irrelevant to his case because it involves only a "single defendant."   Dkt. 30 at 8.   But the hundreds of defendants who committed crimes on January 6, 2021, did so at one location: the U.S. Capitol building and its grounds.   They acted together, in a crowd.   The same surveillance and bodycam footage is thus likely to capture multiple different defendants.   A single defendant's cell phone or camera could likewise contain evidence relevant to multiple defendants.   And so on.   The mountain of evidence described above is overlapping across many different cases, and so the time required to process, review, and produce that evidence is relevant to the time necessary to prepare for trial in any single defendant's case.

3

For the same reason, Worrell is wrong to contend that the government did not "inform[] the Court of the facts specific to Mr. Worrell's case that would make it overly complex."   Dkt. 30 at 8.   The facts provided by the government regarding the unique and unprecedented nature of the Capitol Attack investigations and prosecutions *are* "facts specific to Mr. Worrell's case," because Worrell is a Capitol Attack defendant whose case will be impacted by the investigations' and prosecutions' size and unique complexity.   That those same facts are *also* relevant to the cases of other Capitol Attack defendants does not make them any less relevant to Worrell's case. Worrell's case is complex because he committed acts of violence and unlawfulness in combination with hundreds of other rioters, and as a result discovery that is potentially relevant to him may be scattered amongst dozens of different criminal investigations.

In any event, the facts of Worrell's particular case demonstrate the ways in which the evidence in these investigations will overlap and the reason why even a seemingly simple investigation often is not.   In Worrell's case, one key video that captures Worrell's assault on law enforcement officers—a still photograph from which was provided to Chief Judge Howell in support of the government's opposition to Worrell's request for pretrial release, *see* Dkt. 24 at 5— did not come from evidence in Worrell's immediate case, nor from the FBI field office in Tampa, Florida investigating it.   Instead, an FBI agent reviewing materials linked to *other* cases found a video that had been voluntarily provided by a bystander in the crowd on January 6, 2021 to the FBI's Detroit, Michigan field office.   But for the happenstance of this FBI agent manually reviewing materials from other cases that could have been relevant, this video of Worrell's assault may never have been located.   That is unlikely to be a unique occurrence.   Indeed, several other charged defendants were present in Worrell's immediate vicinity, and evidence from their cases

(their phones; their cameras; bodycam footage displaying them; etc.) may have to be reviewed for connections to Worrell.   Thus, the process of manually reviewing other cases' evidence for evidence potentially relevant to Worrell will have to be repeated several more times, and will be repeated thousands of times for other defendants across the entire Capitol Attack investigation. Finally, and in addition, Worrell's digital devices are currently going through a filter review for potentially privileged information, a process set up to protect defendants' privileged materials. That filter review has added weeks to the government's timeframe for reviewing relevant discovery, due to the massive quantity of digital devices seized from Capitol Attack defendants that also need a filter review.

Worrell concedes that in cases in which defendants are "charged with planning or coordinating the incident" or "entering the Capitol building," "perhaps discovery would be voluminous enough to warrant excluding time under the Speedy Trial Act."   Dkt. 30 at 9.   But Worrell committed his crimes just outside the Capitol building, in a mob of hundreds of other rioters.   If the Court could, due to discovery and complexity considerations, properly continue the trial of a single defendant who walked inside the Capitol building, it is unclear why a defendant like Worrell who remained in a crowd just outside the building would be situated differently.

Besides, there *is* evidence that Worrell "plann[ed] or coordinat[ed]" prior to the incident. Dkt. 30 at 9.   His live-in girlfriend told the FBI that Worrell traveled to Washington, D.C. with other members of the Proud Boys, and there is video and photographic evidence showing Worrell marching with and posing with other Proud Boys members.   Worrell's girlfriend also told investigators that Worrell and other Proud Boys members were communicating via radio.   Thus, Worrell's case has the added complexity of potentially directly involving multiple other

5

defendants, who may be currently charged or uncharged.

Worrell also focuses on the fact that the cases cited by the government involve "at least one co-defendant," whereas Worrell is charged alone.   Dkt. 30 at 9.   But Worrell participated in a mass criminal event with hundreds of other defendants with overlapping evidence.   Dozens of other individuals committed crimes in Worrell's immediate vicinity.   Given that these criminal acts occurred at the same time and location and, arguably, in concert, the government likely could have chosen to charge Worrell in a charging instrument with some of those other individuals.   *See* Fed. R. Crim. P. 8(b).   But even setting that aside, the Capitol Attack prosecutions are not, as Worrell implies, less complex than, for example, a three-defendant fraud case simply because the government has chosen to charge many of these hundreds of defendants separately.   *See United States v. Stockton*, No. 3:15-CR-45, 2015 WL 2185562, at *2 (E.D. Tenn. May 7, 2015) (considering the case "complex for purposes of the Speedy Trial Act" under Section 3161(h)(7)(B)(ii) "due to the number of defendants" in "all related cases" in a large drug investigation, "including the voluminous discovery stemming therefrom," notwithstanding defendant's objection that "he was the sole defendant in his indictment and that to delay the trial based on other related cases would prejudice his rights under the Speedy Trial Act").

Finally, it is true enough, as Worrell contends, that "*general* congestion of the court's calendar, or lack of diligent preparation . . . on the part of the attorney for the Government," are not grounds for a continuance or excluding time under the Speedy Trial Act.   18 U.S.C. § 3161(h)(7)(C) (emphasis added); Dkt. 30 at 4, 11.[1]   But neither of those forms the basis for the

---

[1] To be clear, the massive influx of cases before the District Court for the District of Columbia relating to the Capitol Attack is in no way "general congestion"; it is extraordinary congestion resulting from a *sui generis* mass criminal event that led to what is likely among the largest sets of

government's requested continuance.   Instead, the unprecedented quantity of discovery and unusual complexity of these investigations and prosecutions is what requires a continuance here.

**B.   The COVID-19 Pandemic Independently Requires a Continuance and Exclusion of Time under the Speedy Trial Act.**

As the Chief Judge outlined in Standing Order No. 21-10, the COVID-19 pandemic is ongoing and remains potent.   *See* Dkt. 25 at 8-9.   The Chief Judge accordingly ordered that, for any cases in which the defendant could not be tried consistent with the "health and safety protocols and limitations" necessary to prevent the spread of COVID-19 in a jury trial setting, including a three-trial limitation in the courthouse at any one time, "the additional time period from March 15, 2021 through August 31, 2021" would be "excluded under the Speedy Trial Act."   *See id.* at 9 (quoting *In Re: Limited Resumption of Criminal Jury Trials in Light of Current Circumstances Relating to the COVID-19 Pandemic*, Standing Order No. 21-10 (BAH) (Mar. 5, 2021).   Worrell was arrested on March 12, 2021, long after many defendants in this district who have been awaiting trial since the inception of the pandemic.   Given the three-trial limitation in the Courthouse, and the number of defendants who would be prioritized to go to trial before Mr. Worrell, it is highly unlikely that Mr. Worrell would go to trial prior to August 31, 2021.   A 60-day continuance and exclusion of time under the Speedy Trial Act would likely put Worrell's trial date around the end

---

related prosecutions in the history of the Department of Justice.   Thus, Section 3161(h)(7)(C)'s carveout for "general congestion" does not apply to these cases.   Moreover, Worrell, and the other defendants present at the U.S. Capitol on January 6, are themselves responsible for the influx of cases into this District.   Worrell is thus wholly unlike a defendant who commits a solitary crime and, after being charged, is burdened with court delays or congestion caused by other, unrelated cases.   Worrell saw a mob of rioters advancing on the U.S. Capitol and chose to join them. Worrell thus cannot complain now that the size of and number of participants in the very criminal event he willingly joined is preventing him from going to trial as quickly as he would like.   Any delays caused by congestion are delays Worrell helped create or that were foreseeable to any defendant who chose to commit crimes on January 6 with a riotous mob.

of August or beginning of September. Thus, the continuance and exclusion of time are independently justified by the impossibility, in light of the COVID-19 pandemic and health and safety measures it has imposed on the judicial system, of Mr. Worrell proceeding to trial prior to the expiration of the government's requested 60-day continuance.

Worrell's only response is to point out that the government had previously cited the very low numbers of inmates diagnosed with COVID-19 at the D.C. Jail, where Worrell is being held. Dkt. 30 at 15. But controlling the spread of COVID-19 in a carceral institution (which has taken time for the D.C. Jail to achieve) is different than controlling it in a jury trial setting requiring the in-person presence of witnesses, U.S. Marshals staff, counsel for both parties, the Court and its staff, and jurors, not all of whom may be vaccinated at this point. The complications of holding a jury trial with disparate members of the public are what require the health and safety measures outlined in Standing Order No. 21-10. This thus remains an independent ground for continuing the case and tolling the Speedy Trial Clock.

C.    **Neither the Public's Interest nor Worrell's Interest in a Speedy Trial Outweighs These Considerations .**

Worrell's second contention is that his and the public's interest in a speedy trial outweigh the considerations outlined above. The government takes these contentions in turn.

First, although the public has an interest in a speedy trial, that must be weighed against the public's other interests implicated here, such as the interest in achieving justice for criminal defendants and in preventing the spread of COVID-19. The public (and the government) has an interest in uncovering potentially exculpatory material for Worrell that may exist in the mass of evidence compiled in these cases. And the public clearly has an interest in conducting jury trials in a manner that prevents or minimizes the transmission of COVID-19. Thus, even artificially

focusing only on the interest of the public, the "ends of justice" favor a continuance notwithstanding the public's interest in a speedy trial.    18 U.S.C. § 3161(h)(7)(A).

Second, Worrell notes that he is currently in pretrial detention and may face health complications.   The government does not wish to downplay those concerns, but Worrell has raised them in a separate motion for pretrial release and related filings before Chief Judge Howell, and in an appeal of Chief Judge Howell's detention reconsideration order.   *See* Dkts. 16, 22, 23, 38 (noting appeal to D.C. Circuit Court of Appeals).   At this early stage and given that Chief Judge Howell has determined that Worrell should remain detained notwithstanding his health concerns, and given that this is the first continuance requested in the case, the government's view is that those concerns do not outweigh the considerations outlined above favoring a continuance in this case.

## CONCLUSION

The government respectfully requests that the Court grant a 60-day continuance of the above-captioned proceeding, and that the Court exclude the time until that hearing date from the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendants in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793


By:    <u>/s/ *William Dreher*</u>
       WILLIAM DREHER
       Assistant United States Attorney
       D.C. Bar No. 1033828
       700 Stewart Street, Suite 5220
       Seattle, WA 98101
       (206) 553-4579
       william.dreher@usdoj.gov