**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>CHRISTOPHER WORRELL,<br><br>Defendant. | Case No. 21-CR-292 (RCL) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT CHRISTOPHER WORRELL'S MOTION TO DISMISS**
**THE INDICTMENT AS DEFECTIVE**

Dated: May 4, 2021

Respectfully Submitted,

**PIERCE BAINBRIDGE P.C.**

*/s/ John M. Pierce*

John M. Pierce
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
(213) 262-9333
jpierce@piercebainbridge.com

Robert L. Jenkins Jr.
Brynum & Jenkins
1010 Cameron Street, Ste. 123
Alexandria, Va 22314
Tel: (703) 309-0899
rjenkins@bynumandjenkinslaw.com

*Attorneys for Defendant Christopher Worrell*

**TABLE OF CONTENTS**

I.  FACTUAL BACKGROUND ................................................................................................ 1

II.  LEGAL STANDARD ..................................................................................................... 2

III.  ARGUMENT .................................................................................................................. 3

    A.  Mr. Worrell's Indictment Charges Lack Specificity to Such a Degree as to Render the Indictment Impermissibly Vague ......................................................... 4

    B.  The Indictment Is Defective as Charges One, Two, Three, Four, and Six Fail to State an Offense as Pepper Spray Gel is Not a Dangerous Weapon Under Law. ................................................................................................................ 6

    C.  The Indictment Is Defective Because There Are Multiplicitous Charges Aimed at Prejudicing Mr. Worrell Before the Jury ............................................. 10

IV.  CONCLUSION ............................................................................................................. 11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Hamling v. United States*,
 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974) ................................................................ 4

*United States v. Bowdin*,
 770 F. Supp. 2d. 142 (D.D.C. 2011) ........................................................................................... 3

*United States v. Brown*,
 No. 07-cr-75, 2007 WL 2007513 (D.D.C. July 9, 2007) ...................................................... 3, 10

*United States v. Douglas*,
 957 F.3d 602 (5th Cir. 2020) ...................................................................................................... 9

*United States v. Harris*,
 44 F.3d 1206 (3rd Cir. 1995) ...................................................................................................... 7

*United States v. Hillie*,
 227 F. Supp. 3d 57 (D.D.C. 2017) ..................................................................................... 4, 5, 6

*United States v. Melton*,
 233 F. App'x 545 (6th Cir. 2007) ............................................................................................... 8

*United States v. Mosquera-Murillo*,
 153 F. Supp. 3d 130 (D.D.C. 2015) ............................................................................................ 2

*United States v. Neill*,
 166 F.3d 943 (9th Cir. 1999) .................................................................................................. 8, 9

*United States v. Perez*,
 519 F. App'x 525 (11th Cir. 2013) .................................................................................... 6, 7, 8, 9

*United States v. Phillips*,
 962 F. Supp. 200 (1997) ........................................................................................................ 3, 10

*United States v. Sunia*,
 643 F. Supp. 2d 51 (D.D.C. 2009) .......................................................................................... 2, 3

**Statutes**

18 U.S.C. § 11 .................................................................................................................................. 1

18 U.S.C. § 231 ................................................................................................................................ 1

18 U.S.C. § 1752 ......................................................................................................................... 1, 6

40 U.S.C. § 5104 ............................................................................................................................1

**Federal Rules**

Fed. R. Crim. P. 7 ........................................................................................................................4

Fed. R. Crim. P. 12 ............................................................................................................. *passim*

**Other Authorities**

Sentencing Guidelines Manual § 1B1.1 cmt. n.1(E) (U.S. Sentencing Commission 2018) ...............................................................................................................................6, 9

Defendant, Christopher Worrell (Mr. Worrell), by and through counsel, pursuant to Rule 12(b)(ii),(iii), and (v), requests that this Court dismiss all the charges against Mr. Worrell because they lack sufficient specificity. Mr. Worrell moves the Court to dismiss the indictment as to Counts one, two, three, four, and six for failure to state an offense as pepper spray gel, as a matter of law, is not a deadly or dangerous weapon. Finally, Mr. Worrell moves the Court to dismiss at least two of Counts one, two, and five because they are multiplicitous, as well as two of Counts three, four, and six as these Counts are likewise multiplicitous.

### I. FACTUAL BACKGROUND

Mr. Worrell was arrested in the Southern District of Florida after an arrest warrant was issued in Washington, D.C., for his alleged conduct at the Capitol on January 6, 2021. According to the special agent's investigation, Mr. Worrell appeared in a montage of images in front of the U.S. Capitol in a tactical vest and his apparent use of pepper spray towards an unknown target.

The indictment alleges Mr. Worrell traveled to and potentially participated in the riot at the U.S. Capitol on January 6, 2021. Mr. Worrell is charged with 18 U.S.C. §§ 1752(a)(1) and (b)(1)(a); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Charge One), 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Charge Two), 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A); Engaging in Physical Violence in a Restricted Building or Grounds Using a Deadly or Dangerous Weapon (Charge Three); 40 U.S.C. § 5104(e)(2)(F); Act of Physical violence in the Capitol Grounds or Buildings (Charge Four), 18 U.S.C. § 231(a)(3); Civil Disorder; and 18 U.S.C. §§ 11(a)(1) and (b) (Charge Five); and Assaulting, Resisting or Impeding Certain Officers Using a Dangerous Weapon (Charge Six).

The indictment is specific to Mr. Worrell only to the extent that it includes the date, the location in barest terms (The District of Columbia), his name, and his alleged dangerous

1

weapon. The indictment does not include specific factual allegations about Mr. Worrell's conduct as it relates to the charges, rather the indictment merely restates the language of the statute. With regard to Charges three, four, and six the indictment does not describe the violent conduct or use of the weapon that Mr. Worrell allegedly engaged used.

## II. LEGAL STANDARD

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," including for "lack of specificity" and "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii), (v). "[A] pretrial motion to dismiss an indictment allows a district court to review the sufficiency of the government's pleadings, but it is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 154 (D.D.C. 2015) (citation and internal quotation marks omitted). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009).

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). The notice requirement "is established in the Sixth Amendment, which provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]'" *United States v. Hillie,* 227 F. Supp. 3d 57, 69 (D.D.C. 2017) (quoting U.S. Const. Amend. VI). "A valid indictment also preserves the Fifth Amendment's protections against abusive criminal charging practices; specifically, its guarantees that a criminal defendant can only be prosecuted for offenses that a grand jury has actually passed up on, and that a defendant who is convicted of a crime so charged cannot be prosecuted again for that same offense.
>
> *Id.*

For an indictment to have sufficient specificity, "the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *Id.* at 72. An indictment that is drawn in the generic words of a statute and that fails entirely to describe in any meaningful way the alleged acts of the defendant that constitute the offenses charged is insufficient to notify a defendant of the nature of the accusations against him. *Id.* at 73.

An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged. *United States v. Bowdin*, 770 F. Supp. 2d. 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

In regard to multiplicity, the law protects defendants against multiplicitous indictments to avoid multiple sentences for a single offense and prevent prejudice which such overbearing indictments may generate in the eyes of a jury. *United States v. Phillips*, 962 F. Supp. 200, 202 (1997). When an indictment charges multiple offenses arising from the same conduct it "may falsely suggest to a jury that a defendant has committed not one but several crimes" and falsely suggest the defendant must be guilty of at least some of them. *Id*. This prejudicial practice threatens to pose significant threats to the proper functioning of the jury system. *Id.*

An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Brown*, No. 07-cr-75, 2007 WL 2007513, at *6 (D.D.C. July 9, 2007).

**III.   ARGUMENT**

The indictment against Mr. Worrell is defective for multiple reasons. *See* Indictment as to Christopher Worrell. The indictment is entirely deficient in regard to specificity, lacking almost any details specific to the allegations against Mr. Worrell apart from restating the language of the

statute. Critically the indictment lacks specificity in the key area of describing Mr. Worrell's conduct that would satisfy the elements of the offenses charged, failing to give Mr. Worrell fair notice. The indictment is also defective with regard to any enhancements for the use or carrying of a deadly or dangerous weapon because as a matter of law, pepper spray gel is not a deadly or dangerous weapon. Finally, the indictment is defective because it has mulitplicitous charges for the same offense, and the Government must choose which charges to bring or else risk unconstitutionally biasing the jury.

For these reasons, when considering the four corners of the indictment, the face of the indictment, and the language of the charges, the indictment is defective in violation of the Federal Rules of Criminal Procedure Rule 7, and Mr. Worrell's Fifth and Six Amendment rights. Accordingly, this indictment therefor must be dismissed.

### A. Mr. Worrell's Indictment Charges Lack Specificity to Such a Degree as to Render the Indictment Impermissibly Vague

Pretrial motions to dismiss for lack of specificity in the indictment are appropriate under the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 12(b)(3)(B)(iii). An indictment is sufficient if it, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. The indictment may use the language of the statute, but must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged. *Hillie*, 227 F. Supp. 3d at 72. An indictment that is drawn in the generic words of a statute and that fails entirely to describe in any meaningful way the acts of the defendant that constitute the offenses charged is insufficient to notify a defendant of the nature of the accusations against him. *Id.* at 73.

The indictment against Mr. Worrell fails to describe in any meaningful way the acts that constitute the offense charged. *See* Indictment as to Christopher Worrell. The language in the indictment, exactly mirrors the language of the statute but is not "supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *See id.*; *see also*, *Hillie*, 227 F. Supp. 3d at 72. This lack of fair notice fails to meet the burden posed to the government and without correction by the Court would deprive Mr. Worrell of fair notice of the charges alleged.

The indictment does not describe the "what, where, or how" of Mr. Worrell's conduct that led to the charges. *See id*. The indictment does not describe what restricted grounds Mr. Worrell entered. Indictment as to Christopher Worrell (Count One). The indictment does not discuss what disorderly or disruptive conduct Mr. Worrell engaged in, nor his intent to do so. Indictment as to Christopher Worrell (Count Two). The indictment does not discuss who Mr. Worrell engaged in an act of physical violence, nor the manner in which these events allegedly occurred. Indictment as to Christopher Worrell (Count Three and Four). The indictment does not discuss how Mr. Worrell allegedly committed or attempted to obstruct, impede, or interfere with a law enforcement officer, nor does it describe or identify which Law enforcement officer, Mr. Worrell allegedly committed this crime against. Indictment as to Christopher Worrell (Count Five). The indictment does not discuss how Mr. Worrell allegedly forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with an employee of the United States, nor does it describe which officer or employee of the United States this charge refers to. Indictment as to Christopher Worrell (Count Six).

The charges in the indictment lack any specificity with which Mr. Worrell could be aware of his conduct which led to the charge and formulate a defense. The indictment is constitutionally deficient due to its lack of specificity, and must be dismissed. *See* Hillie, 227 F. Supp. 3d at 71.

**B.     The Indictment Is Defective as Charges One, Two, Three, Four, and Six Fail to State an Offense as Pepper Spray Gel is Not a Dangerous Weapon Under Law.**

Counts One, two, three, four, and six should also be dismissed with regard to their enhancement for the carrying or use of a deadly or dangerous weapon. As a matter of law, pepper spray gel is not a dangerous weapon under the statute. *See* Fed. R. Crim. P. 12(b)(3)(B)(v).

18 U.S.C. § 1752 contains no definition for deadly or dangerous weapon. *See* 18 U.S.C. § 1752. As such, the definition should come from the most commonly understood definition, which appears in the Sentencing Guidelines. *See* U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n.1(E) (U.S. Sentencing Commission 2018); *see also id* § 2A2.2 cmt. N.1. The Government appears to have conceded to this definition as the Government cited to cases using this exact same definition in claiming that pepper spray is a dangerous weapon. (*See* Gov't Supplemental Mem. in Opp'n to Emer. Mot. for Recons. at 2).

A dangerous weapon is defined as an object or weapon that must be likely to cause "serious bodily injury" such as "*extreme* physical pain or the *protracted impairment* of a function of a bodily member, organ, or mental facility; or requir[e] medical intervention such as *surgery, hospitalization*, or *physical rehabilitation*." *United States v. Perez*, 519 F. App'x 525, 528 (11th Cir. 2013) (citing U.S.S.G. § 1B1.1, comment. (n.1(L)) (emphasis in original). Pepper spray does not meet this statutory definition of a dangerous weapon.

Finding pepper spray to be a dangerous weapon requires a case-specific factual showing by the Government. *Perez*, 519 F. App'x at 529. The Eleventh Circuit held that the Government's reliance on the pepper spray's label and marketing materials was insufficient to show the spray

6

was a dangerous weapon. *Id* at 528. The Court rejected the Government's reliance of the pepper spray's label holding "a label created by the manufacturer of a substance is not particularly reliable evidence given its self-serving nature." *Perez*, 519 F. App'x at 528 (citing *United States v. Harris*, 44 F.3d 1206, 1216 (3rd Cir. 1995) (concluding that promotional pamphlet provided an inadequate basis for concluding that the pepper spray in question was a dangerous weapon)). In this case, the Government relied on statements on the product website which make broad claims about the product's power. Just as in *Perez* the government has based their findings on self-serving advertising material that fails to act as reliable evidence. *See id*. The Government has failed to make any assertion within the indictment that the spray at issue meets the statutory definition of a dangerous weapon. *See* Indictment as to Christopher Worrell. Without a case specific factual showing the pepper gel at issue in this case cannot be considered a dangerous weapon and the Government's reliance on advertising material fails to meet the case specific factual showing standard. *Perez*, 519 F. App'x at 528.

> The Eleventh Circuit further held that:
>> Neither a brand name nor a warning label, alone or taken together, establishes that a weapon is a "dangerous weapon"… the warning on the canister's label does not establish that the contents of the canister are capable of inflicting a <u>serious</u> bodily injury. The fact that someone may have to wash an affected area for 15 minutes or seek medical attention does not establish that the spray could cause "<u>extreme</u> physical pain or the <u>protracted impairment</u> of a function of a bodily member, organ, or mental facility; or requir[e] medical intervention such as <u>surgery, hospitalization,</u> or <u>physical rehabilitation</u>."
>
> *Perez*, 519 F. App'x at 528." *Id.* (emphasis in original).

The Eleventh Circuit identified pepper spray by its very nature is not designed to function as a dangerous weapon in its typical use. The District of Columbia Court should follow the holding of the Eleventh Circuit. Pepper spray is designed not to cause protracted impairment or require

7

surgery, hospitalization, or physical rehabilitation. *How Dangerous Is Pepper Spray?*, National Capital Poison Center, https://www.poison.org/articles/how-dangerous-is-pepper-spray (last accessed Apr. 6, 2021. Pepper spray can indeed irritate the eyes, nose, or mouth but these symptoms are usually mild and temporary, typically lasting minutes to hours. *Id.* Pepper spray generally requires washing the affected area with water to alleviate the effects but does not generally require surgery, hospitalization, or physical rehabilitation. *Id.* The effects of pepper spray do not rise to the level of requiring medical intervention such as surgery, hospitalization, or physical rehabilitation in their ordinary use and therefore are properly classified outside the statutory definition of a "dangerous weapon." *Perez*, 519 F. App'x at 528.

The Government primarily relies on other circuits, such as the Sixth and Ninth Circuits, which have concluded, based on the individualized facts of those cases, that pepper spray was a dangerous weapon in those cases. *See United States v. Neill*, 166 F.3d 943, 949 (9th Cir. 1999) (discussing the effects on those with an underlying condition); *United States v. Melton*, 233 F. App'x 545, 547 (6th Cir. 2007) (unpublished) ("[B]ased on the severe and probable effects that pepper spray has on the human body, the district court's determination that pepper spray constitutes a 'dangerous weapon' was not erroneous.") However, Sixth and Ninth Circuit have not adopted sweeping decisions designating pepper spray a "dangerous weapon" in all cases. *See Neill*, 166 F.3d at 949, *Melton*, 233 F. App'x at 547. Even if the Court agrees with the reasoning in the Sixth and Ninth Circuit's cases the Court should still reject the Government's enhancements in this indictment as the Government failed to make a specific factual allegation as to how pepper gel in this case constitutes a dangerous weapon.

The 6th Circuit's holding in *Neill* was supported by "[e]vidence presented to the district court demonstrat[ing] that pepper spray is 'capable of inflicting death or serious bodily injury' and

8

therefore satisfies the requirements of a dangerous weapon as defined in § 2B3.1(b)(2)(D)." 166 F.3d 943, 949. Specifically, the use of pepper spray in that case was shown to cause extreme pain based on the victim's testimony. *Id.* The court also heard evidence that the victim suffered protracted impairment of bodily functions or organs because the victim testified that she had difficulty breathing for weeks. *Id.* at 950. In this case the Government has not offered any evidence that the alleged victim suffered a protracted impairment of bodily function. Further, the Government has failed to even produce a victim or any evidence that any individual was hit by the pepper gel spray allegedly discharged by Mr. Worrell.

Similarly, the Fifth Circuit found pepper spray to be a dangerous weapon only where the victim complained of protracted effects of the pepper spray, including sustained blindness in one eye requiring multiple follow-up visits to doctors. *United States v. Douglas*, 957 F.3d 602, 604 (5th Cir. 2020). Again, there is no victim identified in Mr. Worrell's case and no allegation the pepper gel caused any abnormal injuries other than potential irritation of the eyes that could be tended to without medical personal.

Pepper spray is undoubtedly painful, designed to incapacitate attackers temporarily. However, it is not capable of, nor likely to, cause the kind of extreme pain or serious bodily injury required to be classified as a deadly or dangerous weapon. *Perez*, 519 F. App'x at 528. The Government has failed to offer evidence that the pepper spray could or did cause serious bodily injury, aside from the labels and marketing of the brand of pepper spray Mr. Worrell is alleged to have discharged. There is nothing in the indictment which indicates that the pepper spray can or did cause extreme physical pain or protracted impairment of a bodily function or require medical intervention such as surgery, hospitalization, or physical rehabilitation. Therefore, this Court

should find that, as a matter of law, pepper spray is not a dangerous weapon and dismiss the counts in the indictment which contain this enhancement.

### C. The Indictment Is Defective Because There Are Multiplicitous Charges Aimed at Prejudicing Mr. Worrell Before the Jury

The law guards against multiplicitous charges as bringing multiple charges for the same action threaten to improperly bias the jury and can also implicate double jeopardy concerns. *See Phillips*, 962 F. Supp. at 202. Mr. Worrell moves to dismiss the multiplicitous charges in the indictment pursuant to Federal Rules of Criminal Procedure Rule 12(b)(3)(B)(ii). An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *Brown*, No. 07-cr-75, 2007 WL 2007513, at *6.

In the present case, the indictment's Counts one, two, and five all refer to the same offense and are, therefore, multiplicitous. All of these charges seemingly refer to Mr. Worrell's alleged presence at the Capitol Grounds on January 6. As a result, the Government must now choose between these three charges and select one to proceed with the prosecution or risk unfairly prejudicing Mr. Worrell before the jury.

Similarly, Counts three, four, and six all refer to the same alleged conduct. This appearance of multiplicity could perhaps could result from the aforementioned lack of specificity, but presently, it appears that Mr. Worrell is only alleged to have engaged in a single act of violence. Three charges for the same single offense is multiplicitous and violative of Mr. Worrell's rights.

These multiplicitous charges make the indictment constitutionally defective, and thus dismissal is warranted.

IV.   **CONCLUSION**

Viewing the indictment, considering all the facts alleged to be true, and considering the document as a whole, the indictment is defective. The indictment lacks specificity throughout, fails to state an offense with regard to the deadly or dangerous weapon enhancements, and has multiple charges for the same offense. As a result of these defects, the indictment is constitutionally deficient and dismissal by this Court is warranted.

Dated: May 4, 2021                                  Respectfully Submitted,

**PIERCE BAINBRIDGE P.C.**

*/s/ John M. Pierce*

John M. Pierce
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
(213) 262-9333
jpierce@piercebainbridge.com

Robert L. Jenkins Jr.
Brynum & Jenkins
1010 Cameron Street, Ste. 123
Alexandria, Va 22314
Tel: (703) 309-0899
rjenkins@bynumandjenkinslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 4, 2021 that the foregoing document was filed with the Court's CM/ECF systemwhich will provide notice on all counsel deemed to have consented to electronic service. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing document by mail on this date.

                                                     /s/ John M. Pierce
                                                     John M. Pierce