UNITED STATES DISTRICT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:21-cr-00292-RCL-1 |
| ) | |
| CHRISTOPHER WORRELL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT TO DEFEDANT'S
EMERGENCY MOTION FOR RECONSIDERATION**

Date: May 11, 2021

Respectfully Submitted,

John M. Pierce (*PHV Admitted*)
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725
Email: jpierce@piercebainbridge.com

*Attorney for Defendant Christopher Worrell*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. PROCEEDURAL HISTORY .................................................................................................... 1

III. RELEVANT FACTS .................................................................................................................. 2

IV. ARGUMENT .............................................................................................................................. 5

    A.    Reconsideration is Warranted ............................................................................... 5

    B.    Standard of Review ............................................................................................... 9

            1.    *The Nature and Seriousness of the Danger Posed by the Defendant's Release.* ................................................................................................. 12

V. CONCLUSION ......................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996) .................................................................................................5

*McCall v. State*,
  CRIMINAL ACTION NO. 2:18cr95-MHT (WO) (M.D. Ala. June 4, 2020) ..........................8

*United States v. Clark*,
  No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020) ....................................12

*United States v. Jones*,
  916 F. Supp. 2d 83 (D.D.C. 2013) ...........................................................................................5

*United States v. Stewart*,
  19 F. App'x 46 (4th Cir. 2001) (*per curiam*) .........................................................................10

*United States v. Stone*,
  608 F.3d 939 (6th Cir. 2010) ..................................................................................................11

*United States v. Taylor*,
  289 F. Supp. 55 (D.D.C. 2018) ...............................................................................................11

**Statutes**

18 U.S.C. § 3141 ..............................................................................................................................9

18 U.S.C. § 3142 ..................................................................................................................... *passim*

29 U.S.C. § 794 ...............................................................................................................................6

42 U.S.C. § 12131 ...........................................................................................................................6

**Federal Rules**

Fed. R. Civ. 59 ................................................................................................................................1

D.D.C. L.R. 14(F) ...........................................................................................................................1

**Other Authorities**

Alyson M. Cavanaugh *Suspected Recurrent SARS-CoV-2 Infections Among Residents of a Skilled Nursing Facility During a Second COVID-19 Outbreak — Kentucky, July–November 2020,* CDC, https://www.cdc.gov/mmwr/volumes/70/wr/mm7008a3.htm?s_cid=mm7008a3_w ................................................................................................................. 2, 4, 7

Tenforde MWet al., *Symptom Duration and Risk Factors for Delayed Return to Usual Health Among Outpatients with COVID-19 in a Multistate Health Care Systems Network — United States, March–June 2020*, Morbidity & Mortality Wkly. Rep. (July 31, 2020), http://dx.doi.org/10.15585/mmwr.mm6930e1 ............................. 8

Defendant Christopher Worrell ("Defendant" or "Mr. Worrell"), by and through counsel, pursuant to the direction of the Appellate Court, Bail Reform Act, 18 U.S.C. § 3142(f)(2) and Fed. R. Civ. 59(e),[1] respectfully seeks emergency reconsideration of Chief Judge Beryl A. Howell's March 19, 2021 Order of Detention Pending Trial (ECF No. 13) and that the court reopen Mr. Worrell's detention hearing due to changed circumstances.[2] Mr. Worrell's motion should be assessed under the "as justice requires" standard.[3] In accordance with Local Rule 14(F), a brief in support seeking release from custody pending trial due to the COVID-19 pandemic and the concomitant risk it poses to him given his serious medical history is being submitted simultaneously with this motion and a proposed order granting the relief requested.

## I. PRELIMINARY STATEMENT

Mr. Worrell is currently held in pretrial detainment without access to his prescribed cancer medication, or the regularly examination and treatment necessary for someone with non-Hodgkin's lymphoma. He is experiencing a rapidly deteriorating condition as he develops lymphomas on the skin of his face, neck, back, arms, and legs putting him at great risk for further complications and COVID-19 exposure. Mr. Worrell is allegedly one of the thousands of individuals who went to the grounds of the U.S. Capitol Complex on January 6, 2021 to exercise his First Amendment rights. He was arrested in the Middle District of Florida pursuant to a warrant issued in Washington, D.C. On March 19, 2021, Mr. Worrell appeared remotely before Chief Judge Beryl A. Howell in the District of Columbia for purposes of an initial appearance and detention hearing on several federal charges. Mr. Worrell appeared with his counsel, John Pierce.

## II. PROCEEDURAL HISTORY

At the conclusion of the March 19 detention hearing, the Court denied bail and conditional release. (*See* Exhibit A, Order of Detention Pending Trial Bail, dated March 19, 2021, (Dkt. No. 13)). Since that time, Mr. Worrell has been held at the Charlotte County Jail in Punta Gorda,

1

Florida and subsequently transferred to Grady County Jail, Oklahoma, Northern Neck Jail, Virginia, and finally to Central Treatment Facility, Washington, D.C. where he remains incarcerated today.

Mr. Worrell files this second Emergency Motion for Review of his detention order based on new material information made available during the appeal of the Courts denial of the previous Emergency Motion for Reconsideration. Mr. Worrell seeks conditional release pending electronic ankle monitoring and home detention, the same conditions imposed by the Florida Magistrate Judge. The relief requested is justified on two grounds. *First*, Mr. Worrell suffers from—and currently require treatment for—non-Hodgkins lymphoma, Mr. Worrell has not received such treatment since his transfer to the Central Treatment Facility following the first Emergency Motion for Reconsideration. *Second,* Mr. Worrell's immune system has been compromised by cancer, and a recent contraction of COVID-19 in the State's facilities, subjecting him to an increased risk of health complications and death with the threat of reinfection looms large for Mr. Worrell.

### III.   RELEVANT FACTS

Mr. Worrell was being held pretrial in the Port Charlotte Jail in Punta Gorda Florida and significant efforts were being made to arrange for Mr. Worrell to facilitate the passage of cancer medications from Dr. Rucker to the Jail and see the medications approved for use. As these arrangements appeared to be almost complete, the Government transferred Mr. Worrell, first to Grady County, Oklahoma, then to Northern Neck Jail, Virigina. Mr. Worrell contracted COVID-19 on or about April 14, 2021, while in the Northern Neck Jail, or at some point along his nearly week-long trip spanning half the country and further delaying his ability to see his oncologist and exposing him to COVID-19.

Mr. Worrell experienced a fever, cough, headache, severe chest congestion, body aches, weakness and muscle fatigue, sweats and chills. At some points he was so cold he piled blankets on himself to get warm but it did not work. Other times he would sweat profusely. His fatigue and body aches were so severe he laid in bed as much of the day and night as is possible for an incarcerated person, only getting out of bed to get water, food, and use the restroom. For three days he also dragged himself from bed to participate in a prayer group, and credits this group with getting him through the illness. COVID, combined with the lack of treatment for his cancer, has caused him severe psychological and emotional distress. Mr. Worrell is currently in fear for his life and not sure if he will live to see his son grow up, his wife on the outside, or even live to see his own trial.

During the first rehearing The District Court stated that the risk of Mr. Worrell contracting COVID-19 upon transfer was very low, having reviewed COVID-19 numbers from that very day. *See* Tr. of Hr'g on Def.'s Emer. Mot. for Recons. The Court also suggested that Mr. Worrell would have better access to treatment in Washington D.C., "Perhaps there will be a more responsive doctor in D.C. who can provide both authorizations for prescriptions and prescriptions that are on-label uses that can actually be prescribed by legitimate doctors." See Tr. of Hr'g on Def.'s Emer. Mot. for Recons. at 45. Neither of these statements came to pass, Mr. Worrell did in fact contract a life-threatening virus, and has yet to see on oncologist for his cancer despite repeated requests, and has been told outright that he will not be allowed to receive the medication prescribed by Dr. Rucker in the Central Treatment Facility.

Mr. Worrell still has rashes and lesions spread throughout his body, predominantly on his face, around his neck and ears. He has received no medication or treatment for these extremely irritating and itchy patches that are a symptom of his Non-Hodgkin's Lymphoma. He still has a

3

large node behind his ear that has not been treated or examined by an oncologist. On his most recent blood test in the Central Treatment Facility, he had a white blood cell count of 11,800 mcLs, the normal range is between 4,000 and 11,000. High white blood cell count ranges can be an indicator of serious infection, including cancer. Mr. Worrell has been told that he will not be able to see an oncologist soon, perhaps not even for a month, and even that is no guarantee; the Government, and the Jails, have routinely made promises and statements that ultimately were untrue.

The risk to Mr. Worrell, now that he is no longer testing positive for COVID-19, is not over. Individuals diagnosed with COVID-19, especially older and immunocompromised individuals, like Mr. Worrell, have been shown to have symptoms can last months.[1] These symptoms include, memory or concentration problems, trouble sleeping, depression or anxiety, as well as permanent organ damage to the heart, lungs, and brain. *Id.* COVID-19 also increases the risk of blood clots and blood vessel issues, problems with mood and fatigue. *Id.* "Researchers recommend that doctors closely monitor people who have had COVID-19 to see how their organs are functioning after recovery." *Id.*

Mr. Worrell can also potentially recontract COVID-19.[2] Especially because he is immunocompromised, he is at an increased risk of recontracting COVID-19. He has not been evaluated by a doctor to determine the potential long term health effects of COVID-19 and its comorbidity with his Non-Hodgkin's Lymphoma. Mr. Worrell is unable to get the regularly scheduled care and treatment or quality of care in the Central Treatment Facility, in Washington, D.C.

---

[1] https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-long-term-effects/art-20490351
[2] https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html

4

IV.   **ARGUMENT**

    A.     **Reconsideration is Warranted**

"Although not expressly authorized by the Federal Rules of Criminal Procedure, motions for reconsideration are allowed in criminal cases." *United States v. Jones*, 916 F. Supp. 2d 83, 86 (D.D.C. 2013). Reconsideration is appropriate when there exists "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotations and citation omitted). Given the availability of new evidence concerning Mr. Worrell's cancer treatment in the D.C. jail, and Mr. Worrell's COVID-19 diagnosis, reconsideration is warranted here.

The first new evidence available for the Court's consideration is that Mr. Worrell continues to lack access to his cancer medication and lacks access to an oncologist at the Central Treatment Facility, Washington, D.C. In the Government's bail report, Mr. Worrell reported that he is in poor physical health and suffers from non-Hodgkin's lymphoma. He was diagnosed with this cancer in 2007 and has been receiving treatment, including chemotherapy and radiation. *See* Ex. B, Affidavit of Dr. Bino Rucker, M.D. Mr. Worrell is currently under the care of his primary care physician and he has never been diagnosed with a mental health condition. *See* Ex. C, Government Bail Report.

In Dr. Rucker's affidavit, he states that "[c]ontinuing confinement at the federal detention center presents a substantial risk of serious infection to Mr. Worrell and his transfer to home confinement would significantly decrease the risk to his health in connection with the ongoing COVID-19 pandemic." Ex. A. Dr. Rucker will also have Mr. Worrell for an examination immediately following his release. Mr. Worrell's requests for the necessary cancer medication have been denied by jail staff despite the government's contention in the first emergency hearing

5

that acquiring the medication would be "simple"; remedied by Dr. Rucker renewing Mr. Worrell's prescriptions. Instead, jail doctors have refused to honor Dr. Rucker's prescriptions and demand Mr. Worrell acquire a new doctor while simultaneously telling Mr. Worrell he will not have access to an oncologist for at least a month.

Inadequate medical care of those in confinement presents a widespread hazard. Since his detention, Mr. Worrell has suffered aggravating symptoms of his cancer, including lymphomas of the skin on his face. The lesions are often itchy, scaly, and red to purple – appearing in different parts of the skin and increase Mr. Worrell's COVID infection risk.

Mr. Worrell has not received adequate medical care while detained. Due to the failure to furnish Mr. Worrell with proper medications he has developed serious lymphoma symptoms, including developing painful lesions on his face, neck, back, arms, and legs and causing him reasonable fear of the cancer metastasizing to other parts of his body. Failure to provide accommodations to individuals undergoing chemotherapy and radiation violates federal regulations that protect people with disabilities, including those with life-threatening cancer, pursuant to §504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq. In order for Mr. Worrell to get the care that he needs, he must have his required medications, trained staff, qualified medical professionals, and properly equipped on-site medical facilities. Furthermore, there should be a limit on the length of detention for individuals with serious medical conditions and to accommodate access to proper medical care in the interim.

A second new piece of evidence justifying reconsideration of Mr. Worrell's pretrial detention is his contraction of the COVID-19 virus while in state custody. As predicted, Mr. Worrell caught the deadly virus in state custody as he was juggled from facility to facility while

on appeal regarding the danger of such a virus. The Appeals Court declined to rule on the effect of COVID-19 on Mr. Worrell's pretrial incarceration, given that while on appeal Mr. Worrell's facts changed from a danger of contracting the virus to having the virus itself.

Today Mr. Worrell has survived his first brush with the virus but now faces even greater health risks. The Center for Disease Control has found cases of reinfection are a present danger with the COVID-19 virus. Alyson M. Cavanaugh *Suspected Recurrent SARS-CoV-2 Infections Among Residents of a Skilled Nursing Facility During a Second COVID-19 Outbreak — Kentucky, July–November 2020,* CDC, https://www.cdc.gov/mmwr/volumes/70/wr/mm7008a3.htm?s_cid=mm7008a3_w. A new CDC study found that some who apparently recovered from the coronavirus later came down with a second, even worse case, indicating that asymptomatic or mild cases may not provide substantial protection against becoming reinfected with Covid-19. *Id*. The CDC stated that even after being infected for the first time maintaining physical distance, wearing face coverings or masks, and frequent hand hygiene are critical mitigation strategies necessary to prevent transmission. *Id*. These protective measures are simply impossible for Mr. Worrell to practice while being held in the DC jail.

Additionally, Mr. Worrell's non-Hodgkins lymphoma diagnosis also makes him among those most at risk for contracting and suffering severe symptoms of COVID-19. Non-Hodgkin's lymphoma is cancer that originates in your lymphatic system, the disease-fighting network spread throughout your body.[4] In non-Hodgkin's lymphoma, tumors develop from lymphocytes — a type of white blood cell. With Mr. Worrell's new elevated white blood cell count this concern is redoubled. This cancer impacts Worrell's ability to fight off even routine infections, let alone the deadly virus which has spread across the world and is particularly rampant in prisons.[5]

7

There are currently 114 federal inmates and 173 Federal Bureau of Prisons (BOP) staff who have confirmed positive test results for COVID-19 nationwide, and there have been 234 inmate deaths and 4 staff deaths as a result of COVID-19. In total 46,131 inmates and 6,751 staff have recovered from COVID-19 nationwide demonstrating its startling presence in federal facilities. The disease continuing to rip through carceral facilities, infecting incarcerated individuals at a rate four times the general population, and causing deaths at nearly twice the national rate. Detainees are held in very crowded conditions in a setting that is designed for control, but certainly not for hygiene or to prevent transmission of an infectious disease.

Courts across the country have recognized that BOP undertreats or ignores COVID-related symptoms, despite Center of Disease Control findings that COVID-19 can "result in prolonged illness even among persons with milder . . . illness." Media accounts confirm that many who test positive for COVID-19 in carceral facilities receive virtually no care, and that staff have "ignored or minimized . . . COVID-19 symptoms, and mixed the sick and healthy together in haphazard quarantines." Tenforde MWet al., *Symptom Duration and Risk Factors for Delayed Return to Usual Health Among Outpatients with COVID-19 in a Multistate Health Care Systems Network — United States, March–June 2020*, Morbidity & Mortality Wkly. Rep. (July 31, 2020), http://dx.doi.org/10.15585/mmwr.mm6930e1; *see also McCall v. State*, CRIMINAL ACTION NO. 2:18cr95-MHT (WO) (M.D. Ala. June 4, 2020) (finding that "the overwhelming number of COVID-19 cases in combination with other factors, constituted extraordinary and compelling reasons for release"). Those without COVID-19 also suffer; during the pandemic medical care for chronic conditions has been delayed and, in many cases, withheld entirely.

Reconsideration based on denial of Mr. Worrell's prescriptions, lack of access to an oncologist, and risk due to reinfection of COVID-19 should be considered, along with the other

8

factors outlined in 18 U.S.C. § 3142. *See United States v. Gilbert*, CRIMINAL ACTION NO. 20-404 (E.D. Pa. Jan. 7, 2021). Where defendants have a "particular vulnerability to the disease", courts have found that this is a compelling reason for release under 3142(i). *Id.* Mr. Worrell, who is diagnosed with non-Hodgkin's lymphoma is at an increased risk of both contraction of COVID-19 and death from COVID-19 and thus has a particular vulnerability to the disease. Therefore, reconsideration is warranted. *See Id*. These compelling reasons are in line with common-sense recommendations for how to address the pandemic in carceral settings, including ensuring safe conditions for people who remain incarcerated, reducing incarceration levels to end facility overcrowding, limiting the spread of COVID-19; and supporting safe and effective re-entry to the community.

**B.    Standard of Review**

Pretrial detention and release are governed by the Bail Reform Act (BRA), 18 U.S.C. § 3141, et seq. The BRA instructs the Court to seek "the least restrictive further condition or conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id*. § 3142(c)(1)(B). However, if the Court finds after the hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court "shall order the detention of the person before trial." *Id.* § 3142(e)(1). Where, as here, a detention ruling is based on a defendant's danger to the community, the Court must make the finding by clear and convincing evidence. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (*per curiam*).

The Court's determination is governed by four factors:

1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;

2. The weight of the evidence against the person;

3. The history and characteristics of the person, including

   A. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   B. Whether, at the time of the current offense or arrest, the person was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4. The nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

These four factors must be considered in light of the risk posed by COVID-19 and the impact COVID-19 has on the defendant in detaining him pretrial. *See Gilbert*, CRIMINAL ACTION NO. 20-404. Where defendants have a "particular vulnerability to the disease," courts have found that this is a compelling reason for release under § 3142(i) this standard is satisfied with the new factual developments in this case. *Id*.

This Court should find that it is appropriate to release Mr. Worrell to home confinement his particular vulnerability to COVID-19 not only rebuts the statutory presumption of dangerousness (18 U.S.C. § 3142(e)), but tilts the balance in favor of release. In *United States v. Melvin McLean*, CRIMINAL ACTION NO. 20-404 19-380 (D.D.C. March 28, 2020), the court

10

held that COVID-19 tips the scales in the defendant's favor on those first two factors—the nature and circumstances of the offense charged and the weight of the evidence— and also provides a "basis to conclude that the case falls 'outside the congressional paradigm' giving rise to the presumption" that Defendant poses a danger to the community. *Id.* (citing *United States v. Taylor*, 289 F. Supp. 55, 63 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010))). (*See* attached as Exhibit "B" (A40)).

The Government contends that pretrial detention is warranted because Mr. Worrell is charged with felonies involving the use of an allegedly "dangerous weapon"—in this case, pepper spray. This contention, along with the alleged offense conduct, purports to make Mr. Worrell a danger to the community. *See* Gov't's Mem. Supp. Mot. Review Release Order ("Gov't's Memo.") at 8, ECF No. 9. At the outset, however, it is important to review the overall framework of the detention issues presented to the Court, the impact of COVID-19, and the conditions within Central Treatment Facility. As described above, the least restrictive means must be imposed when considering whether there are any conditions of pretrial release "that will reasonably assure" a particular defendant's appearance in court, and the safety of the community. 18 U.S.C. § 3142(f).

The four factors together with considerations of COVID-19 justify pretrial release under the least restrictive means. The weight of the four factors has already been expressed in Mr. Worrell's first Emergency Motion for Reconsideration and to avoid being largely duplicative will not be restated here. *See* Def.'s Emer. Mot. For Recons. Only the fourth factor the nature and seriousness of the danger posed by Mr. Worrell's release warrants additional factural reconsideration.

11

### 1.  *The Nature and Seriousness of the Danger Posed by the Defendant's Release.*

Mr. Worrell's severe and deteriorating medical condition continues to develop such that his compliance with any release conditions is assured. In some circumstances, a particular defendant's medical condition can reduce that defendant's risk of flight or danger to the community, and the health condition would therefore fall within the factors appropriately considered in the context of § 3142(g). *See, e.g., United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community.  Nevertheless, "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, No. PX-19-158-9, slip op. at 5-6 (D. Md. Apr. 29, 2020).

Mr. Worrell is diagnosed with cancer and previously received treatment, including chemotherapy and radiation. Since his pretrial confinement, Mr. Worrell has suffered aggravating symptoms of his cancer, including lymphomas of the skin on his face, creating dangerously exposed lesions. Dr. Rucker's affidavit offers the best individualized assessment available, holding that Mr. Worrell is at greater risk than other detainees, suffering from a condition that may put him at an increased risk for severe illness resulting from the virus. *See* Ex. B. The Court should consider that this serious progressive disease jeopardizes Mr. Worrell's life.

Even outside the additional risks contracting COVID-19 would pose, Mr. Worrell's condition will continue to worsen and substantially erode Mr. Worrell's quality of life without

adequate medical supervision and treatment. Adequate medical supervision and treatment is not being provided to Mr. Worrell. Mr. Worrell has been informed by D.C. jail staff he will not have access to an oncologist for at least a month and the jail will not respect any of Dr. Rucker's prescriptions for cancer treatment. Simultaneously Mr. Worrell received a COVID-19 diagnosis posing potential irreparable damage to his respiratory system and elevating the risks posed by a potential second infection. Thus Mr. Worrell's continually degrading medical condition further reduces the risk of flight or danger to the community and the health condition considered in the context of § 3142(g).

Taking the nature of the charges against Mr. Worrell, the weight of the evidence, and Mr. Worrell's history and characteristics, including his current medical conditions, this Court should reconsider whether Mr. Worrell would pose a grave danger to the community if released. The Government does not contend that Mr. Worrell poses a serious risk of flight. Prior to Mr. Worrell's arrest he drove several hours to turn himself in to law enforcement. Furthermore, other far less damaging means exist by which the Court can be assured of Mr. Worrell's compliance with conditions of release, that still allow him to treat his ongoing life-threatening medical issues while mitigating his risk of contracting COVID-19 and worsening them, for example, monitored house arrest.

Mr. Worrell is suffering in jail and has been unable to get the medical attention he needs for his life-threatening cancer. Further, the Government has provided no evidence that the January 6 riot was anything but spontaneous, and Mr. Worrell's alleged role in it was anything but minor involvement. As justice requires, Mr. Worrell should be allowed to receive the proper medical care and treatment for his lymphoma in his home community, reunite with his family, resume his job

with a living wage, as he does not present a threat to his community or pose a flight risk to await his trial date.

Through the Congressional history and the passing of the 1984 Bail Reform Act, it has always been the intent of Congress to not only reduce, but to eliminate the hypocrisy in the bail system and significantly reduce pretrial incarceration. The Act requires that *only* those who pose prospective danger or flight risk should be held without bail. COVID-19 adds another consideration to those statutory factors outlined in the BRA. Mr. Worrell would not pose as a threat should he be allowed pre-trial release, especially when considering the effect of both his non-Hodgkin's lymphoma and COVID-19 have on his health.

## V.   CONCLUSION

For the foregoing reasons, Mr. Worrell respectfully requests that the Court reconsider and amend Chief Judge Beryl A. Howell's March 19, 2021 Order of Detention Pending Trial (ecf No. 13).

Date: May 11, 2021

Respectfully Submitted,

*/s/ John M. Pierce*

John M. Pierce (*PHV Admitted*)
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725
Email: jpierce@piercebainbridge.com

*Attorney for Defendant Christopher Worrell*

**CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, March 26, 2021, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

                                                      /s/ John M. Pierce
                                                      John M. Pierce