UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | No. 21-CR-292 (RCL) |
| | : | |
| **CHRISTOPHER WORRELL,** | : | |
| Defendant. | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT AS DEFECTIVE**

The United States of America respectfully submits this opposition to Defendant Christopher Worrell's Motion to Dismiss the Indictment as Defective. Dkt. 45.

Worrell raises three arguments with respect to the indictment. First, he contends that every Count of the indictment is impermissibly vague. Dkt. 45-1 at 4-6. Second, he contends that pepper spray is, as a matter of law and irrespective of the evidence the government puts on at trial, not a "dangerous weapon" under Section 1752(b)(1)(A) or Section 111(b) of Title 18. Dkt. 45-1 at 6-10. Finally, Worrell argues that two groups of counts (Counts One, Two and Five, and Counts Three, Four, and Six) are multiplicitous. Dkt. 45-1 at 10. These arguments are meritless.

**BACKGROUND**

In the days leading up to January 6, 2021, Worrell, a self-avowed member of the Proud Boys, traveled with other members of the Proud Boys to Washington, D.C. Dkt. 13 at 5; Dkt. 9 at 7-12. The morning of January 6, 2021, he moved in coordination with a group of Proud Boys, and surged forward with a crowd of rioters past barricades and onto restricted grounds to confront a line of police officers on the lower west terrace of the U.S. Capitol building. Dkt. 13 at 5; Dkt. 9 at 10. The officers were attempting to hold back the crowd and protect those inside the Capitol. Dkt. 13 at 5. Wearing a tactical vest and communications devices, and armed with

a canister of pepper gel spray, Worrell advanced, shielded himself behind a wooden platform and other protestors, and discharged the gel at the line of officers. Dkt. 13 at 5-6; Dkt. 9 at 9-12. Mere minutes later, the line of officers was breached a few yards from where Worrell had discharged his pepper gel spray, and rioters entered the Capitol. Dkt. 13 at 5; Dkt. 9 at 12.

Worrell is charged by indictment with: (1) Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (18 U.S.C. § 1752(a)(1), (b)(1)(A)); (2) Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (18 U.S.C. § 1752(a)(2), (b)(1)(A)); (3) Engaging in Physical Violence in a Restricted Building or Grounds Using a Deadly or Dangerous Weapon (18 U.S.C. § 1752(a)(4), (b)(1)(A)); (4) Act of Physical Violence in the Capitol Grounds or Buildings (40 U.S.C. § 5104(e)(2)(F)); (5) Civil Disorder (18 U.S.C. § 231(a)(3)); and (6) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon (18 U.S.C. § 111(a)(1) and (b)). *See* Dkt. 31.

## ARGUMENT

### I.     The Indictment is Not Impermissibly Vague.

Worrell first argues that the indictment generally "fails to describe in any meaningful way the acts that constitute the offense charged." Dkt. 45-1 at 9. According to Worrell, the indictment's counts merely "mirror[] the language of the statute," without precisely identifying the exact acts that Worrell engaged in that violate those statutes. *Id.* at 5.

Worrell misunderstands the purpose of an indictment and the low bar an indictment must clear to satisfy the federal rules and Constitution. As the D.C. Circuit explained in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), "[a]lthough an indictment must in order to fulfill constitutional requirements apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal Rules of Criminal Procedure, nor any

other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." *Id.* at 124. Indeed, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). "While detailed allegations might well have been required under common-law pleading rules, . . . they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Id.* at 110. As a mere notice pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established."). Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient. *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)).

Applying these principles, courts in this District have upheld the sufficiency of indictments far less specific than Worrell's. For example, in *United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017), the defendants were charged with offenses under 18 U.S.C. § 924(c). The indictments provided only "general detail as to the places where the offenses were committed: namely, Mexico and the United States." *Id.* at 154. As to the "when" of the offenses, the indictments alleged that the offenses had occurred over a two- and nine-year period. *Id.* Finally, the indictments "d[id] not specify a particular weapon that was possessed," or "specify whether

3

the firearms were 'used, carried or brandished'" under the statute. *Id.* Nonetheless, the indictments were sufficient.

Here, Worrell does not dispute that all of the elements of each offense are properly alleged in the indictment, which by itself identifies the criminal conduct with which Worrell is charged. And the indictment provides sufficient information to Worrell to fairly inform him of those offenses. Worrell knows the exact day on which the alleged crimes occurred: January 6, 2021, which is alleged in all counts. *See* Dkt. 31. He knows that all charged conduct occurred in this District, from the indictment's allegation. *Id.* Four of the six Counts specifically refer to conduct on U.S. Capitol grounds, further narrowing the "where" of the charged crimes. Counts Five and Six relate specifically to an existing civil disorder and to a law enforcement officer. Counts One, Two, Three, and Six refer to the specific type of "deadly or dangerous weapon" that Worrell allegedly used or carried: a canister of pepper gel spray. *Id.* And the statutes charged are not so unusually vague that they require allegations beyond the elements of the offenses.

Worrell complains that the indictment does not explain *how* his conduct was "disorderly or disruptive," nor the "manner" in which he was physically violent, nor "how Mr. Worrell allegedly committed or attempted to" commit a violation of 18 U.S.C. § 231, nor "how Mr. Worrell alleged forcibly assaulted . . . an employee of the United States." Dkt. 45-1 at 9. But Worrell's "complaint seems to result . . . from a general misunderstanding of the purpose of the indictment and, especially, from an inflated notion of what must be included therein." *Haldeman*, 559 F.2d at 124. As the D.C. Circuit concisely explained in rejecting an identical argument in *Verrusio*:

> Verrusio contends that Count Two of the indictment failed to allege an official act because it failed to say "how Mr. Verrusio was going to use his position" to help United Rentals . . . . The indictment certainly need not allege precisely how Verrusio contemplated [committing the crime]. Would he do it by himself or ask someone else to do it? Would that someone else be Colonel Mustard or Professor Plum? With a candlestick or a rope, in the library or the study? Answering those questions is not required at the indictment stage.

4

762 F.3d at 14–15.  Worrell's specificity argument fails.

## II. Pepper Spray Is A Dangerous Weapon Under Sections 1752(b)(1)(A) and 111(b) of Title 18.

Worrell is charged in Counts One, Two, and Three with violating paragraphs (1), (2), and (4) of Section 1752(a); each of those Counts also alleges that Worrell "did use and carry a deadly and dangerous weapon, that is, a canister of pepper spray gel," during the offense under 18 U.S.C. § 1752(b)(1)(A).  Dkt. 31 at 1-3.  Worrell is charged in Count Six with "using a deadly or dangerous weapon, that is, a canister of pepper gel spray," to assault, oppose, impede, intimidate, or interfere with a law enforcement officer under Section 111(a)(1) and (b).  Worrell contends that the pepper gel spray that he carried and discharged on U.S. Capitol grounds on January 6, 2021 is not a "dangerous weapon" under Section 1752(b)(1)(A) or Section 111(b), and insists that Counts One, Two, Three, and Six[1] be dismissed now, before the government can even put on evidence of pepper spray's dangerousness.

A "dangerous weapon" for purposes of Sections 111 and 1752—neither of which define the term—is "an object capable of causing serious bodily injury or death to another person," where the defendant uses the object "in that manner."  *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002 (citation omitted).[2]  Courts have fleshed out the meaning of that phrase in those and other

---

[1] Worrell also claims that Count Four has a dangerous weapon enhancement.  It does not.  Whether Worrell's pepper spray gel is a dangerous weapon is irrelevant to whether he committed an act of physical violence under Section 5104(e)(2)(F) of Title 40.

[2] Looking at precedent outside of the Circuit, Chief Judge Howell recently held that a "deadly or dangerous weapon" under Section 111(b) of Title 18 means "any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person." *United States v. Klein*, No. CR 21-236 (JDB), 2021 WL 1377128, at *6 (D.D.C. Apr. 12, 2021) (quoting *United States v. Bullock*, 970 F.3d 210, 215 (3d Cir. 2020) (citing *United States v. Sanchez*, 914 F.2d 1355, 1358-59 (9th Cir. 1990) (collecting cases))).  The government views that definition as essentially identical to that used in *Arrington* and the Sentencing Guidelines.

statutes by looking to the definition of that phrase contained in the U.S. Sentencing Guidelines, which defines the term in part as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1 n.1(E). "Serious bodily injury" is defined in the Sentencing Guidelines to mean "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* § 1B1.1 n.1(M). Worrell agrees that the Sentencing Guidelines provide the appropriate definition of "dangerous weapon" under Sections 1752 and 111. Dkt. 45-1 at 6.

In this case, Chief Judge Howell concluded that pepper spray is a "dangerous weapon" for purposes of the Bail Reform Act, rendering Worrell eligible for detention, at Worrell's March 19, 2021 detention hearing. *See* Ex. 1 (Tr. of March 19, 2021 Hr'g) at 62-63 ("For purposes of this hearing, the Court does view pepper spray gel, particularly—if the marketing can be believed, a particularly powerful pepper spray gel as a dangerous weapon; it can cause serious bodily injury not only to people who suffer from preexisting conditions, like asthma to make it difficult for them to breathe, but it can cause people who get it in their mouth, their nose, and their eyes to feel very serious stinging and be very uncomfortable unless they can promptly wash it out.").

Numerous courts have likewise concluded that pepper spray (or "mace") is a dangerous weapon under the Sentencing Guidelines definition noted above. In *United States v. Neill*, 166 F.3d 943 (9th Cir. 1999), the victim "suffered from exercise-induced asthma controllable with a inhaler after exercising," and a pepper-spray attack caused "severe asthma attacks for a week after the incident" and thereafter. *Id.* The Ninth Circuit concluded that pepper spray was a "dangerous weapon" under the Guidelines because, as those facts showed, it was capable of causing "serious bodily injury":

6

> Initially, evidence at trial proved that pepper spray is capable of causing "extreme pain." [The victim] testified that after being sprayed she felt "like somebody took a match and stuck it up both sides of [her] nostrils ... it was like I was on fire." Additionally, [the victim's] testimony proves that pepper spray is capable of causing "protracted impairment of a function of a bodily organ." [The victim] testified that "I was not able to breath, you know, no air in. A lot of coughing mucus in—in my lungs. Its like your lungs are just being filled up slowly with liquid and you're not able to breathe in because there's no way for the air to come in." According to [the victim], this condition lasted for days and did not completely abate for two weeks. [The victim] testified that she is currently required to take five asthma relief pills a day for the rest of her life. Such lifelong severe asthma is surely a protracted impairment of a bodily organ, the lungs.

166 F.3d at 949-50.

Similarly, in *United States v. Bartolotta*, 153 F.3d 875 (8th Cir. 1998), the Eighth Circuit concluded that "mace" is a dangerous weapon under the Sentencing Guidelines. The victim in that case "testified that she developed chemical pneumonia as a result of the [mace attack], and that she missed almost two weeks of work. [The victim] had to take daily steroid shots for over four months and steroid pills for one year to cleanse the mace from her system." *Id.* In *United States v. Melton*, 233 F. App'x 545 (6th Cir. 2007), the court affirmed the district court's classification of pepper spray as a "dangerous weapon" based on the following effects:

> The spray burns the face, nostrils, restricts breathing passages, and causes blindness. Most persons recover from its effects within 20 to 30 minutes, sooner with aid. However, persons with medical problems such as asthma have experienced damage to lungs when exposed to pepper spray.

*Id.* at 547; *see also United States v. Douglas*, 957 F.3d 602, 607 (5th Cir. 2020) (finding that pepper spray is a "dangerous weapon" and noting that "[t]wo victims were treated in a hospital after initial treatment in the prison infirmary, and one victim suffered protracted impairment in his right eye"); *Headwaters Forest Def. v. Cty. of Humboldt*, 240 F.3d 1185, 1199-1200 (9th Cir. 2000) ("pepper spray is designed to cause intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx"), *cert. granted, judgment vacated*, 534 U.S. 801 (2001); *cf. United States v. Dukovich*, 11 F.3d 140,

7

142 (11th Cir. 1994) (tear gas was "dangerous weapon" under Sentencing Guidelines because it can cause "eye pain and a severe headache," and can cause vomiting, a rash, the loss of breath, or temporary damage to the eyes).

District courts have come to the same conclusion. *See United States v. Krueger*, No. 13-20242, 2013 WL 8584873, at *2 (E.D. Mich. July 10, 2013) (concluding that pepper spray was dangerous weapon under Sentencing Guidelines); *Logan v. City of Pullman*, 392 F. Supp. 2d 1246, 1261 (E.D. Wash. 2005). Others have similarly concluded that pepper spray is a "dangerous weapon" under similarly-worded state statutes. For example, in *Norris v. Lafler*, No. 04-CV-72176, 2008 WL 786661 (E.D. Mich. Mar. 20, 2008), the district court found reasonable a state court's conclusion that a combination of tear gas and pepper spray was a "dangerous weapon" under a state statute requiring a "serious injury," because that combination had caused victims' "extreme eye pain and burning sensations that required two of them to seek medical treatment," one victim "need[ed] glasses to read and ha[d] blurred vision in his left eye" and cornea defects as a "result of being sprayed," and another could not wear contact lenses for a month. *Id.* at *8-9.

Several of these cases, in concluding that pepper spray is a dangerous weapon, noted that pepper spray had in fact caused serious bodily injury to the victims in those cases. Worrell, reviewing these cases, complains that the government, in the indictment, did not "produce a victim or any evidence that any individual was hit by the pepper gel spray." Dkt. 45-1 at 9.

But that complaint evidences Worrell's misunderstanding of the definition of a "dangerous weapon," which infects his motion. It is true that some cases have emphasized the actual serious injuries suffered by victims of pepper-spray attacks, for those actual injuries are plainly *sufficient* to show that pepper spray is a dangerous weapon. But such injuries are not *necessary*. As the Sentencing Guidelines, D.C. Circuit case law, and text of Sections 1752(b)(1)(A) and 111(b) make

clear, the government need not show serious bodily injury—or even that the victim was touched by the dangerous weapon—in a particular case. The Guidelines and this Circuit's *Arrington* case make this point obvious by stating that a weapon is dangerous if it is merely "*capable*" of inflicting "serious bodily injury" in the way it was used, even if it did not in fact do so. U.S.S.G. § 1B1.1 n.1(E) (emphasis added); *Arrington*, 309 F.3d at 45. Section 1752(b), meanwhile applies an enhancement to anyone who "uses *or carries* a . . . dangerous weapon" during and in relation to the offense. 18 U.S.C. § 1752(b)(1)(A) (emphasis added). By separately criminalizing the mere carrying of a "dangerous weapon," the statute makes abundantly clear that a weapon can be dangerous under Section 1752 without ever having been used at all in the instant offense, much less without having hit a victim or caused serious bodily injury.[3] Finally, Section 111(b) states that a defendant will receive that subsection's enhanced penalty if he "uses a . . . dangerous weapon . . . or inflicts bodily injury," which presupposes that a defendant can use a dangerous weapon without causing bodily injury. 18 U.S.C. § 111(b).[4] That the government need not show contact with a victim is even more apparent in other contexts. A court would have no trouble concluding that a defendant used a dangerous weapon if a defendant drove a car directly at a law enforcement officer, even if the officer jumped away with just a few scratches (or if a defendant shot at a victim,

---

[3] Unlike Section 1752(b)(1)(A), Section 111(b) only applies if the defendant "uses" the dangerous weapon. 18 U.S.C. § 111(b). Thus, while a canister of pepper spray (like a firearm) may be a "dangerous weapon" under Section 1752(b)(1)(A) and Section 111(b) even if never used, the defendant could only be convicted of the latter Section 111(b) charge if he used the pepper spray in a way that it is dangerous (e.g., by discharging it).

[4] The enhanced penalty provision in Section 1752(b) operates similarly: it applies to the defendant's use or carrying of a dangerous weapon *or* where the "the offense results in significant bodily injury." 18 U.S.C. § 1752(B)(1)(B). That further makes clear that significant bodily injury is not required to show that the defendant used or carried a dangerous weapon, as otherwise the significant bodily injury provision would be superfluous.

9

but missed). Worrell's case is logically indistinguishable. Thus, as long as the type of pepper spray used by Worrell *can* cause serious bodily injury, it is a dangerous weapon.

The cases cited earlier make clear that pepper spray can do so, and so is a dangerous weapon, for three reasons. First, it is capable of causing an "injury involving extreme physical pain"—typically extreme burning pain in the eyes, nose, throat, or lungs—as the Ninth Circuit held in *Neill*. 166 F.3d at 949 ("pepper spray is capable of causing 'extreme pain'"). Second, pepper spray can cause "protracted impairment of a function of a bodily member [or] organ," as evidenced by the "lifelong severe asthma" suffered by the victim in *Neill*, 166 F.3d at 950 (finding that to be "surely a protracted impairment of a bodily organ, the lungs"), the "chemical pneumonia" that forced the victim in *Bartolotta* to miss two weeks of work and receive treatment for a year, 153 F.3d at 879, the "blurred vision" and cornea defects suffered by the victim in *Norris*, 2008 WL 786661 at *8, or the sustained vision impairment in *Douglas*, 957 F.3d at 604. Finally, pepper spray can require "medical intervention," such as the doctor's visit and prescriptions in *Neill*, the steroid shots and pills in *Bartolotta*, or the medical treatment in *Norris* and *Douglas*.

As Worrell notes, two courts have held that mace or pepper spray does not constitute a "dangerous weapon," but those cases actually underscore a separate reason why Worrell's argument cannot succeed at this stage as a matter of law. Those courts' holdings were specifically tied to the *evidence* of dangerousness put on by the government in those cases. Thus, in *United States v. Harris*, 44 F.3d 1206 (3d Cir. 1995), the Court concluded that, by sentencing, some of the government's evidence of dangerousness—a competitor's pamphlet describing a different type of mace—"lacked sufficient indicia of reliability," and that the government otherwise had offered only the product's promotional literature, which was insufficient to establish that mace was a dangerous weapon. *Id.* at 1216. Similarly, in *United States v. Perez*, the case on which Worrell

primarily relies, the Court noted that "the evidentiary record is silent as to the form or nature of the pepper spray, its chemical composition, the strength or concentration of the active agent, the size of the can, whether the spray mechanism was functional, or the distance or velocity the mechanism was designed to achieve" and that the government did not "present any evidence on the dangerousness of pepper spray generally" before the district court. 519 F. App'x 525, 527-28 (11th Cir. 2013). The government had relied exclusively on the brand name of the canister and a warning on its label. *Id.* at 528.

But neither of those cases was decided on a motion to dismiss the indictment before trial, and neither suggests that the government was required to allege detailed, extensive facts about a dangerous weapon in the charging instrument. Those cases instead hold only that if the government offers essentially no *evidence* of pepper spray's dangerousness other than marketing materials—not even the evidence in the factual records of cases like those cited above—it may fail to qualify as a dangerous weapon. But that can only be determined after the government puts on its evidence. Worrell seems to agree, stating that "[f]inding pepper spray to be a dangerous weapon require a case-specific factual showing," and requesting "evidence" from the government. Dkt. 45-1 at 6, 9. Thus, to the extent they are relevant at all, *Harris* and *Perez* imply that the dangerousness question should be evaluated by the jury or judge after the government puts on its evidence. Neither *Harris* nor *Perez* (nor any other case cited by Worrell) provides any support for the idea Worrell espouses in his motion: that the Court can dismiss, at the indictment stage, a charge with a dangerous-weapon enhancement on the ground that the government has not alleged in the indictment all the detailed factual proof of that weapon's dangerousness.

### III. The Indictment's Counts Are Not Multiplicitous.

Citing no case law, Worrell also briefly asserts that the indictment's counts are multiplicitous. Dkt. 45-1 at 10. Specifically, Worrell argues that Counts One, Two and Five are multiplicitous with one another, and that Counts Three, Four, and Six are multiplicitous with one another. *Id.* Worrell is wrong, and obviously so.

A defendant may be convicted of and sentenced under different statutory provisions for multiple offenses arising out of the same single act or course of conduct so long as Congress authorized the imposition of such multiple punishments. *See United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998) ("If the legislature intends to impose multiple punishment, imposition of such sentences does not violate Double Jeopardy."). "To determine multiplicity vel non, courts generally apply the *Blockburger* test: '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not,' i.e., whether either is a lesser included offense of the other." *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010) (quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999), and *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). If the two offenses each require proof of a fact the other does not, then the charges are not multiplicitous. *Id.* at 890.[5] The *Blockburger* "test focuses on the statutory elements of the offense, not on the proof offered in a given case."

---

[5] On the other hand, if two offenses fail the *Blockburger* test—because one is a lesser-included offense of the other—that is not the end of the inquiry. In that scenario, the "*Blockburger* test . . . provides only a canon of construction, not a 'conclusive presumption of law,' *id.* at 888 (quoting *Garrett v. United States*, 471 U.S. 773, 779 (1985)), because there "'is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and *punishing also the completed transaction.*'" *Id.* (quoting *Garrett*, 471 U.S. at 779) (emphasis in original). Here, the offenses clearly each require proof of a fact the others do not, so it is not necessary to conduct this further analysis.

*United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998). Thus, it is irrelevant whether there is significant overlap in the factual proof of each count at trial, or even whether two counts "are based upon the exact same set of facts and circumstances," as long as each count's elements require proof of a fact that the others do not. *United States v. Manafort*, 313 F. Supp. 3d 311, 314 (D.D.C. 2018); *see id.* ("[T]he test for multiplicity is not whether two counts are based on the same set of facts; rather, it is whether the statutory elements of the two offenses are the same.").

Here, Worrell's multiplicity arguments fail because each of the offenses charged in the indictment "requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. Indeed, these are not close questions—which is likely why Worrell spends but a page on the argument, does not even attempt to evaluate or analyze the statutes' elements, and cites nothing to support his claim. Many of the Counts require proof of multiple facts not required by the other Counts, and all require proof of at least one. Thus, the indictment satisfies *Blockburger*.

***Counts One, Two, and Five.*** Count One charges a violation of Sections 1752(a)(1) and (b)(1)(A) of Title 18, which applies to a defendant who "knowingly enters or remains in any restricted building or grounds without lawful authority to do so" while "us[ing] or carr[ying] a deadly or dangerous weapon." 18 U.S.C. § 1752(a)(1), (b)(1)(A). The elements of that offense, as charged here with the dangerous weapon enhancement, are:

1) The defendant entered or remained in a restricted building or grounds as defined in 18 U.S.C. § 1752(c);
2) The defendant did so knowingly;
3) The defendant had no lawful authority to do so;
4) The defendant used or carried a deadly or dangerous weapon during and in relation to the offense.

Count Two charges a violation of Sections 1752(a)(2) and (b)(1)(A), which applies to a defendant who "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within

13

such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions," while "us[ing] or carr[ying] a deadly or dangerous weapon." 18 U.S.C. § 1752(a)(2), (b)(1)(A). The elements of that offense, as charged here with the dangerous weapon enhancement, are:

1) The defendant engaged in disorderly or disruptive conduct;
2) The defendant did so knowingly;
3) The conduct was in, or within such proximity to, a restricted building or grounds as defined in 18 U.S.C. § 1752(c);
4) It was done when, or so that, such conduct in fact impeded or disrupted the orderly conduct of government business or official functions;
5) The defendant used or carried a deadly or dangerous weapon during and in relation to the offense.

Count Five charges a violation of Section 231(a)(3) of Title 18, which applies to a defendant who "commits . . . any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." 18 U.S.C. § 231(a)(3). As relevant here, the elements of that offense are:

1) The defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;
2) At the time of the defendant's act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and
3) That such civil disorder in any way or degree obstructed, delayed, or adversely affected the performance of a federally protected function.

These three counts are not multiplicitous. Count One requires proof that the defendant was "without lawful authority" to be in any restricted building or grounds (element 3 of Count One). Neither Count Two nor Count Five requires proof of that fact. Elements 1 and 4 of Count One also require facts that Count Five does not: a defendant can violate Section 231 (Count Five)

without being in a restricted building or grounds and without carrying a deadly or dangerous weapon.

Count Two, meanwhile, requires proof that the defendant engaged in "disorderly or disruptive conduct" (element 1 of Count Two), which neither Count One nor Count Five requires. Count Two also requires proof that the defendant's conduct "in fact impede[d] or disrupt[ed] the orderly conduct of government business or official functions" (element 4 of Count Two), which Counts One and Five do not. Finally, elements 3 and 5 of Count Two require facts that Count Five does not: a defendant can violate 18 U.S.C. § 231 without being "in" or "within such proximity to" any restricted building or grounds; and without carrying a deadly or dangerous weapon.

Finally, each of Count Five's elements require proof of facts that are not required to prove Counts One or Two. That is, the government could prove a violation of both Section 1752(a)(1) and (a)(2) without proving that the defendant obstructed, impeded, or interfered with a law enforcement officer; that the officer was engaged in their official duties; that there was a civil disorder; or that the civil disorder affected the conduct or performance of any federally protected function. Counts One, Two, and Five are therefore not multiplicitous of one another.

Worrell complains that the charges all "seemingly refer to Mr. Worrell's alleged presence at the Capitol Grounds on January 6." Dkt. 45-1 at 10. But that simply assumes what evidence the government will use at trial to prove those three Counts. Moreover, both Counts Two and Five plainly require proof of more than mere "alleged presence" on Capitol grounds. In any event, Worrell misunderstands that the *Blockburger* multiplicity analysis refers to the elements of the offenses, not whether a single act could violate multiple statutes. The very premise of *Blockburger* and its progeny is that the "same act or transaction"—here, Worrell's presence and violence at the Capitol Grounds—can form the basis of multiple criminal charges so long as each Count requires

15

proof of a fact that the others do not. *Mahdi*, 598 F.3d at 888; *Manafort*, 313 F. Supp. 3d at 314 (counts can be "based upon the exact same set of facts and circumstances," if *Blockburger* is satisfied). That Worrell's conduct on January 6, 2021 has led to multiple related charges is unsurprising and utterly ordinary in a criminal case.

***Counts Three, Four, and Six.*** Count Three charges a violation of Sections 1752(a)(4) and (b)(1)(A) of Title 18, which applies to a defendant who "knowingly engages in any act of physical violence against any person or property in any restricted building or grounds" while "us[ing] or carr[ying] a deadly or dangerous weapon." 18 U.S.C. § 1752(a)(4), (b)(1)(A). The elements of that offense, as charged here with the dangerous weapon enhancement, are:

1) The defendant engaged in an act of physical violence against any person or property;
2) The defendant did so knowingly;
3) The defendant did so in a restricted building or grounds as defined in 18 U.S.C. § 1752(c);
4) The defendant used or carried a deadly or dangerous weapon during and in relation to the offense.

Count Four charges a violation of Section 5104(e)(2)(F) of Title 40, which applies to a defendant who "willfully and knowingly. . . (F) engage[s] in an act of physical violence in the Grounds or any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(F). The elements of that offense are:

1) The defendant engaged in an act of physical violence;[6]
2) The defendant did so willfully and knowingly;
3) The defendant did so in the Grounds or any of the Capitol Buildings;

Count Six charges a violation of Section 111(a)(1) of Title 18, which applies to a defendant who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [law

---

[6] "Act of physical violence" is defined in Section 5104(a)(1) to mean "any act involving— (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, or destruction of, real or personal property."

enforcement officer under 18 U.S.C. § 1114] while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1). The indictment further alleges that Worrell's conduct "involve[d] physical contact with the victim . . . or the intent to commit another felony," Dkt. 31 at 4, and that Worrell committed the offense "using a deadly or dangerous weapon," *id.* at 3. With those enhancements, the elements of that offense are:

1) The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with a designated federal officer;
2) The defendant did so forcibly;
3) The defendant did so while the designated federal officer was engaged in, or on account of, the performance of official duties;
4) The defendant intended to commit these acts;
5) The defendant's commission of these acts involved physical contact or the intent to commit another felony;
6) The defendant used a deadly or dangerous weapon in the commission of these acts;
7) The defendant used the deadly or dangerous weapon intentionally.

*See United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002).

Based on the foregoing elements, Counts Three, Four, and Six are not multiplicitous, because each requires proof of a fact that the other two do not. Thus, Count Three requires that the defendant have acted "in any restricted building or grounds," which neither Count Four nor Count Six requires. (Count Four requires that the defendant have acted on Capitol Grounds or in Capitol Buildings, but that is not sufficient to prove that that portion of the Capitol Grounds was a "restricted building or grounds" (as that phrase is defined in Section 1752(c)) at that time.) Count Three also requires, unlike Count Four, that the defendant have carried or used a deadly or dangerous weapon.[7]

---

[7] To be clear, given that each count plainly requires proof of at least one fact the others do not, the government does not in this opposition set out a full list of potential distinctions between all of the statutes charged in Counts One through Six—such as whether an act of "physical violence" under Sections 1752(a)(4) and 5104(e)(2)(F) requires proof beyond that necessary to satisfy Section 111(a)(1).

17

Count Four requires proof that the defendant acted "willfully" (element 2 of Count Four), and in the Grounds or in any of the Capitol Buildings (element 3 of Count Four).  Neither Count Three nor Count Six requires proof of either fact.  (Again, Count Three does require proof that the defendant have acted in a "restricted building or grounds," but that phrase is not limited to the Capitol; it relates to, *inter alia*, any building or grounds "where the President or other person protected by the Secret Service is or will be temporarily visiting."  18 U.S.C. § 1752(c)(1)(B).  Thus, Count Three does not require proof that the events occurred on U.S. Capitol grounds.)

Finally, Count Six requires several elements required by neither Count Three or Four.  Most obviously, Count Six requires that the target be a "person designated in Section 1114 of [Title 18]," which is not true of either Count Three or Four, both of which could be charged for violence against any victim or, indeed, against property.  Count Six also requires that the conduct involve either physical contact or the intent to commit another felony, while neither is required by Count Three or Four.  Thus, Counts Three, Four, and Six are also not multiplicitous.

Again, Worrell's complaint that these counts appear to relate to "only a single act of violence," Dkt. 45-1 at 10, misunderstands *Blockburger*.  A single act of violence frequently results in multiple punishments, and that is entirely permissible so long as application of the *Blockburger* test (or other indicia of congressional intent) make clear Congress's intent to permit such multiple punishment.  That is so here, and so Worrell's multiplicity complaint fails.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Worrell's Motion to Dismiss the Indictment be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793


*/s/ William Dreher*
WILLIAM DREHER
D.C. Bar No. 1033828
Assistant United States Attorney (Detailed)
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov