**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**
**WASHINGTON D.C.**

**UNITED STATES OF AMERICA,**
      **Plaintiff,**
**Vs.**                                      **CASE NO.: 1:2021-CR-00292-RCL-1**

**CHRISTOPHER J. WORRELL,**
      **Defendant.**
_____/

## SUPPLEMENT TO DEFENDANT'S REQUEST TO REVOKE THE ORDER OF DETENTION

The Defendant Christopher Worrell, by and through his counsel, tenders this motion to Supplement to Defendant's request to revoke the order of detention and order his immediate release with appropriate conditions to seek proper medical care.

## I. INTRODUCTION

Mr. Worrell has been battling non-Hodgkin's lymphoma on and off since 2007. He was undergoing treatment for this dangerous cancer of the immune system when he was arrested on March 12, 2021, and detained without bail. Since the day he was detained, the Government has expressly prevented him from continuing this treatment—the Government's doctors insisted on pursuing a different course of treatment. However, after almost eight months in custody, Mr. Worrell has received *no cancer treatment*.

When Mr. Worrell suffered a broken hand in May, Government doctors said he needed surgery. Yet, as of this writing, the Government has done nothing other than give Mr. Worrell a splint and some *anti-inflammatories* (i.e. Tylenol). The Government has repeatedly promised Mr. Worrell, his counsel, and this Court that it would attend to Mr. Worrell's serious medical needs. Instead, the Government has shown deliberate indifference to his plight: Mr. Worrell is approaching his eighth month in custody and has yet to receive *any* significant treatment. Indeed,

it is unclear when—if ever—the Government will give Mr. Worrell the necessary and lifesaving medical attention that he desperately needs. In sum, the Government's consistent and unremitting failure to provide medical treatment is a clear violation of Mr. Worrell's Fifth Amendment right to Due Process.

Since the filing of the original motion seeking revocation of the detention order, the DC Jail has been held in contempt of court, admittedly engaged in a concerted effort to misrepresent to this Court, and prompting this Court to mandate the Office of the Attorney General to utilize their resources to investigate the jail for possible civil rights violations concerning – at a minimum -- the medical care of Mr. Worrell and his fellow inmates.

The only remedy for such violations is release from detention. Accordingly, Mr. Worrell respectfully requests that this Court revoke Mr. Worrell's detention and order him released with appropriate conditions.

## II. STATEMENT OF FACTS

Mr. Worrell is currently held in pretrial detainment without access to proper medical care and without access to his prescribed cancer medication, or the regular examination(s) and treatment necessary for someone with non- Hodgkin's lymphoma. His condition is rapidly deteriorating – and indicative of Stage three cancer -- he is developing lesions on the skin of his face, neck, back, arms, and legs.[1]

Mr. Worrell was arrested in the Middle District of Florida pursuant to a warrant issued from Washington, D.C. on March 10, 2021. On March 12, 2021, Mr. Worrell was arrested. Mr. Worrell received telephonic notice of the warrant, and, within four hours or less, Mr. Worrell

---

[1] The undersigned viewed lesions on Mr. Worrell's face and neck. An attempt to take photos via Webex was of no benefit.

returned to Naples, Florida from Ocala, Florida to allow law enforcement to effectuate the arrest. On March 19, 2021, Mr. Worrell appeared with counsel before Chief Judge Howell for his initial appearance and detention hearing. The Court denied bail and conditional release.

From the date of his arrest, Mr. Worrell had been held at the Charlotte County Jail in Punta Gorda, Florida and subsequently transferred to Grady County Jail, Oklahoma, Northern Neck Jail, Virginia, and finally to Central Treatment Facility, Washington, D.C. where he remains incarcerated today. Mr. Worrell was promised immediate medical treatment upon his arrival in D.C. by Judge Howell. A promise to date, which has been unfulfilled.

Mr. Worrell filed an emergency motion for reconsideration of the detention order on March 26, 2021, which was denied on April 6, 2021. Mr. Worrell filed a second emergency motion for reconsideration on May 11, 2021, which was denied on June 3, 2021. The third Emergency Motion to Revoke Detention is currently pending. The undersigned supplements the Third Emergency Motion.

Mr. Worrell is still being detained without access to proper medical treatment of his non-Hodgkin's lymphoma. As time progresses, Mr. Worrell is experiencing a rapid deterioration to his physical and mental health, and his cancer is spreading. Mr. Worrell continues to develop lesions that are increasingly spreading on his body including his face, neck, back, arms, and legs. While detained, Mr. Worrell also contracted COVID-19 on or about April 10, 2021. To date, Mr. Worrell still has not received proper treatment and until Court intervention, receipt of full copies of medical records has been difficult. During the last few weeks, attachments (to the records), as well as supplemental records have been received, despite not being produced with the "entire medical file."

The following is a timeline regarding Mr. Worrell's medical treatment while he has been

detained:

1. 4/13 Intake to DC Jail—tested positive for COVID-19.
2. 4/15 Dr. Rucker provided Rx to DC Jail.
3. 4/16 Severe chest pain on the left side—40 minutes before officer on POD woke up and responded.
4. 4/16 Complaint listed "dry cough."
5. 4/16 Documented as observed for several hours—was actually placed in quarantine cell.
6. 4/16 Roughly, eight and a half hours after complaining of chest pains, Mr. Worrell was transported to Howard University
7. 4/19 DC Jail received medical records from Florida Cancer Specialist.
8. 4/20 DC Jail called Moffit, ended call as they were placed on hold.
9. 4/21 Florida Cancer Specialist reported they faxed records three times and received 'error message.
10. 4/22 Mr. Worrell submitted complaint about back pain regarding [insert]—was never seen by medical.
11. 4/28 DC Jail consulted with Dr. Rucker (his private sector physician) agreeing to continue consider Dr. Rucker's prescribed treatment
12. 4/30 Mr. Worrell submitted complaint regarding back and neck pain due to [insert] requested extra and/or new mattress, request was declined.
13. 5/3 Mr. Worrell submitted medical visit request for back pain. Mr. Worrell was never taken to medical, visit is reported as 'cancelled as no show.'
14. 5/4 Mr. Worrell submitted medical visit request for back pain. Appointment was cancelled.
15. 5/5 Dr. Mitchell acknowledge Mr. Worrell's condition of non-Hodgkin's lymphoma and the rarity of condition—advised the need for oncologist care. See Exhibit "F."
16. 5/5 Dr. Mitchell informed Mr. Worrell of Dr. Rucker's treatment as 'not normal standard of care.
17. 5/6 Mr. Worrell taken to medical to be treated for spider bite/infection—Dr. Crenshaw notes 'no discharge;' however, Mr. Worrell provided coverings of wound with green and yellow discharge. Discharge also continued after visit.
18. 5/6 Dr. Crenshaw made statement regarding Dr. Rucker's treatment not being standard, also noted Rituximab treatment discontinued in 2016 due to severe allergic reaction.
19. 5/6 Second request for medical regarding infection on back, appointment was cancelled.
20. 5/6 Dr. Mitchell attempts to coordinate oncology appointment.
21. 5/7 Mr. Worrell submits medical visit request for dry eyes and blurry vision. DC medical provided eyedrops and scheduled ophthalmologist appointment.
22. 5/12 Mr. Worrell submits medical complaint of urinary hesitancy (To date, no response).
23. 5/12 Mr. Worrell requested medical diet for nutrition, request was denied as 'not a candidate for medical diet[2]

---

[2] Diet is important while fighting cancer; A diet with lean proteins, fruits, vegetables, whole-grains, and low-fat dairy is preferred, and it is recommended a limit to sugar, caffeine, salt, and alcohol. Mr. Worrell has asked for dietary accommodations (no more different than dietary religious restrictions) and has been denied. Additionally, his dental issue causes pain, and also interferes in his nutrition

24. 5/12 Infection on back returned, Mr. Worrell was taken to medical and told 'keep monitoring, treatment not possible'. Medical noted no pus or drainage; however, infection was draining.
25. 5/13 Medical noted patches on face and neck of Mr. Worrell, spots caused my untreated lymphoma.
26. 5/14 Mr. Worrell request eye drop refill, request was denied.
27. 5/15 Mr. Worrell submits second request for eyedrop refill, again, request was denied.
28. 5/15 Mr. Worrell request medical visit, appointment scheduled and later cancelled.
29. 5/16 Mr. Worrell passed out, falling, causing a break to his right hand. Medical did not acknowledge the injury for eight hours. Medical records state 'tripped over box;' however, this is inaccurate as Mr. Worrell fainted.
30. 5/17 DC jail informed Mr. Worrell he would have a follow-up with Dr. Wilson for hand surgery.
31. 5/17 Medical reports indicate Mr. Worrell 'not in pain' during return; however, Mr. Worrell was never seen by medical upon return.
32. 5/19 Infection on back returned, yellow discharge with blood. Medical visit denied.
33. 5/19 First oncology appointment (37 days after arrival in DC).
34. 5/19 Medical informed Mr. Worrell 'treatment will be prescribed if condition continues' despite the fact Mr. Worrell has active lymphoma.
35. 5/19 Medical notes 'unspecified injury to right wrist, hand, and fingers.'
36. 5/24 During medical visit, Mr. Worrell was informed a follow-up appointment has not been made for Dr. Wilson regarding the broken hand.
37. 5/25 Radiology (x-ray) of left shoulder
38. 5/28 found unconscious with head injury, evaluated, provided motrin (no radiology or ER services)
39. 6/5 Mr. Worrell receives PET scan to scan for cancer.
38. 6/7 Mr. Worrell receives bone marrow biopsy to scan for cancer.
39. 6/11 Mr. Worrell was taken to see Dr. Wilson regarding his broken hand. Dr. Wilson informed Mr. Worrell that due to the jail's delay the hand will require surgery rather than being reset in Dr. Wilson's office.
40. 6/17 Dental appointment scheduled for root canal, request for procedure denied.
41. 6/30 Discovered no ophthalmologist appointment had been made for Mr. Worrell.
42. 9/01 start of physical therapy for May shoulder injury

As of October 24, 2021, Mr. Worrell had received appointments for his lymph node [needle] Biopsy (Carcinoma), and skin biopsy (lymphoma). Dr. Wilson has recanted from his reports and notes that Mr. Worrell needs hand surgery.[3] Mr. Worrell has still yet to receive *any* chemotherapy treatment, maintains a cracked tooth and has a painful broken (but healed

---

[3] Rather than have Dr. Wilson explain his change in position, the DC Jail brought Dr. O'Donovan to the Contempt hearing to explain this "change" in position. Inexplicably, Dr. O'Donovan has NEVER physically treated Mr. Worrell nor ever seen him.

incorrectly), deformed hand.

Conveniently, and – of course – prior to Court on November 3, 2021, Mr. Worrell has received notice of an impending medical appointment. On November 1, 2021, Mr. Worrell has an unknown outside medical, with an unknown doctor. It is unclear what the nature of the appointment is for, and Mr. Worrell has grave concerns about further care with DC Jail and Howard University medical. Despite his medical provider's misrepresentations during his medical care, Mr. Worrell has been advised to attend the outside medical. But Mr. Worrell is gravely concerned about his ongoing care from provider's who have been found in contempt, investigated for civil rights violations, and whom would have no qualms about misleading this Court.

Through today, a listed summary of Mr. Worrell's health conditions are as follows:

1. Mild Blephartis (inflammation of the eyelids)
2. Pain Left shoulder
3. Fracture of Fifth Metacarpal
4. Epidermoid Cyst
5. Urinary Hesitancy
6. Lower back pain
7. Prediabetes
8. Follicular B cell lymphoma
9. Squamous cell carcinoma of the head, neck, and base of tongue
10. History (Hx) of COVID symptoms
11. Hypertension
12. Dental – cracked molar - needs root canal, recommended for extraction instead of root canal.

As guidance for proper medical care, this Court can look to policies of the Bureau of Prisons (hereinafter the "BOP"). The BOP designates four levels of inmate care. An inmate – such as Worrell – who needs active chemotherapy, would be designated a Care Level 4 inmate. This level is reserved for inmates who are on active cancer treatment, dialysis, quadriplegia,

stroke, or head injury patients, major surgical treatment, and high-risk pregnancy.[4] There are 122 Federal prisons in the United States, of which 6 are capable of treating Care level 4. These 6 facilities allegedly also have the proper staffing and medical providers necessary to administer constitutionally proper care.[5]

The DC Jail has been found in contempt of court, and the United States Marshalls via The Office of the Attorney General has been prompted to investigate the jail for possible civil rights violations. The United States Marshall's Office did spend two days inside of the DC jail after the Courts request.

### III. LEGAL STANDARD

The Fifth Amendment's Due Process Clause protects pretrial detainees against the deprivation of life or liberty "without due process of law." *See U.S. v. Cole*, 459 F. Supp. 3d 116, 123 (D.D.C. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). The failure to provide medical treatment is inconsistent with contemporary standards of decency, and violates Due Process. *Anderson, v. Dist. of Columbia*, 317 F. Supp. 3d 444, 447 (D.D.C. 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Indeed, "Due Process [] **requires** jails to provide medical care to detainees who need it." *Id.* (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244–45 (1983)) (emphasis added).

Where—as here—the denial of medical care "rise[s] to the level of a due process violation," the Fifth Amendment requires the court to revoke a prior detention order and release the detainee. *Id.* at 123–24. Here, the government has known that Mr. Worrell is battling cancer since the first day of his detention. The Government has repeatedly told this Court

---

[4] From the Bureau of Prisons "Care Level Classification for Medical and Mental Health Conditions or Disabilities"
[5] But even medical facilities with the BOP are not beyond reproach, as Butner was one of the most deadly prisons for inmates during COVID, as 25 inmates died, making this "Care Level 4" medical facility a deathtrap. https://www.newsobserver.com/news/coronavirus/article244131227.html

that it would ensure Mr. Worrell receives treatment. Yet, after detaining Mr. Worrell for nearly eight months, the Government has given him *substandard, limited care, and no chemotherapy*. At best, this pattern of substandard care and withholding of treatment shows deliberate indifference to Mr. Worrell's plight; at worst, it shows an affirmative desire to inflict harm. Either way, it is a clear due process violation. *Cf. Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1072–77 (E.D. Cal. 2018) (failure to diagnose head injury following fall constituted violation of due process). Accordingly, this Court must order Mr. Worrell's immediate release from detention.[6]

## IV. THIS COURT SHOULD ORDER MR. WORRELL'S RELEASE FROM DETENTION BECAUSE THE GOVERNMENT'S ONGOING FAILURE TO TREAT HIS BROKEN HAND AND FAILURE TO TREAT HIS CANCER IS A CLEAR VIOLATION OF DUE PROCESS

The Due Process Clause imposes obligations on the government to meet the basic needs of the people it jails, who rely on the government for food, clothing, and necessary medical care. A failure to provide sustenance for inmates "may [] produce physical 'torture or a lingering death.'" *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (internal quotation omitted).

The due process rights of a pretrial detainee "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Those rights are violated if he is "incarcerated under conditions posing a substantial risk of serious harm," and the "state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted); *see, e.g.*, *Hardy v. District of Columbia*, 601 F.Supp.2d 182, 190 (D.D.C. 2009) (violation of constitutional rights of pretrial detainee if the officials "knowingly

---

[6] The undersigned would advise that substantial portions of the facts and legal arguments were from John Pierce, Esquire, prior submissions.

disregarded a substantial risk of serious harm of which they were aware"). Stated another way, To establish a claim for unconstitutional deprivation of medical treatment, Mr. Worrell need only establish that: (1) his medical need is serious; and (2) that jail officials were deliberately indifferent to his medical need. *Anderson*, 317 F. Supp. 3d at 447. To establish deliberate indifference, Mr. Worrell need only show that jail officials had knowledge of his serious medical need and recklessly disregarded the risk that it posed to his health and safety. *Id.*

Continuing to detain Mr. Worrell if alternatives exist to protect the community and prevent flight while placing Mr. Worrell in mortal danger constitute deliberate indifference to Chris's health and safety. Mr. Worrell's incarceration, under these new circumstances, constitutes an independent due process violation that the Court must remedy.

### A. Mr. Worrell Has Established That His Medical Need Is Serious

In May of 2021, Mr. Worrell was found unconscious and rushed to emergency medical. Amongst other issues, Mr. Worrell complained of right-hand pain. Mr. Worrell was found to have a right hand "fracture," a break of the 5th Metacarpal. On June 11, 2021, [Orthopedic] Dr. Wilson recommended a surgical repair. Exhibit "A, Dr. Wilson surgical Recommendation." This report was reviewed by Dr. Margaret Crenshaw (Jail Medical Director), who reviewed Dr. Wilson's report and signed the records with a surgical recommendation. See Exhibit "B, Dr. Crenshaw Report signed June 16, 2021." On October 13, 2021, Radiology noted the "deformity," and indicated an "old healing fracture." See Exhibit "C, Radiology report of right hand." The deformity remains painful and can be seen in the photographs taken by counsel on October 29, 2021 (via cell phone camara over Webex). See Exhibit "D, photos of the hands of Mr. Worrell showing the deformity on the right hand.

Inexplicably, and despite his original surgical opinion, Dr. Wilson changed his medical

opinion. To Mr. Worrell's detriment, this failure to treat the broken hand, and changing of opinion after five months, could lead to Mr. Worrell having a significant, permanent deformity, as well as having to live with constant nagging pain.[7]

Of primary concern, Christopher Worrell has non-Hodgkins Lymphoma. Mr. Worrell was treating – in an aggressive and ongoing manner – from October 2020. Mr. Worrell was arrested in March of 2021. The Courts and each jail facility's medical personnel were advised Mr. Worrell suffers from active, aggressive, and on-going lymphoma. Despite a course of care which was to confirm the return of Carcinoma (which according to the records Mr. Worrell had not suffered since 2007), the jail has – at a snail's space – sought to treat his Stage three non-Hodgkins lymphoma.

In non-Hodgkins Lymphoma, the affected lymphocytes multiply in an abnormal way and being to collect in certain parts of the lymphatic system. The affected lymph glands lose their abilities to aid in fighting infection, making a sufferer more prone to infection. This cancer does not limit to the lymph nodes, and other parts of the body can experience lymphocyte tumors. Three of ten sufferers do not survive (despite receiving treatment). Mr. Worrell has received prior biopsies[8], and Oncology has requested an excisional biopsy.[9] An excisional biopsy -- the most direct method to test for Lymphoma -- requires incision, where

---

[7] The Defendant complained, via grievance, of the care of his hand. See Exhibit "G." Not a single member of medical staff, to include Dr. Wilson advised of a change in his treatment plan being anything other than surgery.

[8] The prior completed biopsies would address carcinoma. An excisional biopsy is necessary for Non-Hodgkins Lymphoma, and to date, has yet to be conducted.

[9] The Court should note, Dr. Ali, the oncologist, recommended an excisional biopsy on June 16, 2021. Despite the jails attempts to indicate Worrell is causing delay, and insinuating Worrell made the request, the records indicate yet another misrepresentation and falsehood told by the jail. See Exhibit "E, Nurse Practitioner Report of Gayle Juenemann indicating patient wants excisional biopsy prior to chemotherapy, and the Report signed by Dr. Crenshaw on June 16, 2021, indicating Dr. Ali request ENT (ear, nose, throat) for an excisional biopsy." Maybe the jail should explain why it took five months for the excisional biopsy to occur (allegedly scheduled for November 1, 2021, the jail attempts to blame-shift their own malfeasance, and maybe this Court should consider contempt for misrepresentations to this Court about who is really causing such delay.

they remove portions of healthy tissue and/or remove a "lump or suspicious area" for additional review. Chemotherapy is the only possible course of treatment. The cost of the chemotherapy drugs recommended is over $43,000.00 (for the drugs alone). This does not include the costs of the medical personnel needed to administer the chemotherapy, and to monitor his ongoing, chronic, life-threatening condition. The chemotherapy will decimate an already weakened immune system leaving Mr. Worrell at the mercy of the dirty, unsanitary, COVID filled environments. This treatment should be done by an oncologist, of which there is NOT one on staff at the DC Jail. Note, the treatment usually requires other specialists such as physician assistants, nurse practitioners, nurses, nutrition specialists, and other health professionals.[10] This level of care has not been available.

### B. Mr. Worrell Has Established That the Government's Failure to Obtain Treatment for His Cancer and Broken Hand Constitutes Deliberate Indifference

The DC Jail has already been held in contempt of Court. It is not clear whether those officials in control of the inmates (and more specifically any "Jan 6" inmates) can even sit before this Court and tell the truth on any issue of the care of Mr. Worrell or other January 6 inmates. Medical providers have [at best] waivered, and possibly outright have misrepresented their positions, causing a loss of faith in all of Mr. Worrell's medical care. Mr. Worrell has been in jail for eight (8) months, with the Government knowing he has non-Hodgkins Lymphoma. Everyday Mr. Worrell goes without care for his cancer, which is Stage three at best (based on the chemotherapy recommendation), Mr. Worrell is closer to becoming statistic of the thirty percent who do not survive.

---

[10] The Jail recognizes the difficult nature of Mr. Worrell's cancer by indicating – in response to Mr. Worrell's possible desires for other types of treatments, "that Understandably, as a rare disease with few cases, robust evidence for different therapies is hard to come by. However, this underscores the need for the patient's care to be managed by an oncologist." See Exhibit "F, signed report of Dr. Crenshaw dated May 7, 2021."

Additionally, the DC Jail has demonstrated that even for any medical task, such as dental, the broken bone in the hand, physical therapy (for the shoulder), and receiving OTC medication is a task and burden such that the jail only pursues "aggressive" courses of care when this Honorable Court seeks to inquire as to a status or takes an interest in why things are not getting done. The jail does have a grievance procedure in place. This policy is generally cumbersome, and takes several days for resolution. It would not be an appropriate process designed for an inmate with life-threatening medical conditions such as cancer, and clearly not designed for an inmate whose recommendation is life-saving chemotherapy. This list, for example, is a list of Mr. Worrell's cancelled appointments – generally without explanation – by the jail (See attached as Exhibit "H, records reflecting cancelled appointments):

| Date: | Person who cancelled: | time: | Basis (if known) |
|---|---|---|---|
| 4/22/21 | Anju Menon | @ 1818 hours | (had active COVID – after a 4/13/21 positive test -- and was still in COVID quarantine) Page 242 |
| 5/3/21 | Terry Nguyen | @ 1457 hours | (added to list late, no transport, needed reschedule, considered a "no-show" by Dr. Hguyen) Page 213 |
| 5/4/2021 | Nicole Morrison | @ 0913 hours | (cancelled)(no explanation) Page 212 |
| 5/6/2021 | Anju Menon | @ 1117 hours | (cancelled)(notes indicate "URGENT – PATIENT MUST BE SEEN!!!!!!! / CTF") Page 192 |
| 5/15/2021 | Joyce Oppong | @ 2032 hours | (cancelled)(no explanation) Page 172 |
| 5/26/2021 | Kamilah Ray-Boyd | @ 1413 hours | (cancelled)(no explanation) Page 153 |
| 6/2/2021 | Joyce Oppong | @ 1251 hours | (cancelled)(no explanation) Page 134 |
| 6/4/2021 | Kamilah Ray-Boyd | @ 1209 hours | (cancelled)("seen by CC provider") Page 128 |
| 6/4/2021 | Dr Margaret Crenshaw | @ 1210 hours | (cancelled)(was not transported to doctor so listed as a no-show) Page 127 |
| 6/5/2021 | Joyce Oppong | @ 0937 hours | (Cancelled)(no explanation; possibly due to "no sick slip filed 5/31/21") Page 126 |
| 6/11/2021 | Nicole Morrison | @ 0945 hours | |
| 6/23/2021 | William Bowles | @ 1049 hours | (cancelled)(rescheduled)("no explanation") Page 101 |
| 7/3/2021 | Medical request to see | | (cancelled)(Patient requested medical visit; was not transported; documented as a refusal despite |

| | | | |
|---|---|---|---|
| 7/15/2021 | Sheila Smith | @ 1053 hours | concerns he may have court dates and does not want to miss) Page 89 (cancellation)(possibly cancelled due to Refiling eyedrops) Page 85 |
| 08/21/2021 | Debreaka Posey | @ 1653 hours | (cancelled)(no explanation given)(possibly because refill prescriptions were provided) Page 68 |
| 09/03/2021 | Nicole Morrison | @ 0950 hours | (cancelled; no explanation provided) |
| 09/27/2021 | Joyce Oppong | @ 1617 hours | (cancelled; stated "no-show" due to legal; legal would have been "a phone call, and not actual in person or video visit) Page 37 |
| 09/28/2021 | Joyce Smith | @ 1733 hours | (cancelled)(sick call request cancelled) Page 35 |
| 10/25/21 | Dr. Nguyen | @ 1130 hours | transported for cortisone shot, no shot given. Received shot 10/26/21 |

Said list begs the question, If the jail cannot handle internal medical tasks, how can they properly treat a broken hand or properly treat a regimented cancer chemotherapy protocol? The jail cannot. They can't tell a straight story, give a straight answer, nor comply with their basic constitutional duty to constitutionally provide basic medical care, all of which causes a grave danger to the life of Mr. Worrell.

### C. Mr. Worrell Has Established That the Conditions of His Detention Violate His Constitutional Rights

This Court gave the Government every opportunity – prior to the deception, contempt order, and civil rights investigation -- to manage and constitutionally take care of Mr. Worrell's basic medical needs. Not only has the jail failed miserably, but they only respond when this Court requires their action. Mr. Worrell's prior filings and current supplement emphasizes Mr. Worrell has established not only a serious medical need, but that the Government has shown deliberate indifference to such need, with their deceits, their changed medical positions, and their attempts to blame everyone but themselves for this unconstitutional behavior.

## V. SUGGESTED PRETRIAL RELEASE CONDITIONS

The Defendant's residence in Naples, Florida, is in the Middle District of Florida. U.S.

Probation maintains a Naples, Florida office on a main thoroughfare in Naples, Florida. The location is easily accessed, and centrally located. While the Middle District of Florida is an expansive District, Mr. Worrell needs only limited ability to travel [it]. Mr. Worrell would need some ability to maintain employment (if his health during chemotherapy allows), which is in Bradenton, Florida. Additionally, Worrell would access to his counsel (offices in Tampa, Florida. The need for structure or appointments to support said release and travel is of no-consequence and clearly within the norm of pre-trial release. Lastly, Mr. Worrell has a minor child, and he would like to have some ability to participate in time-sharing, which would entail providing transportation for the minor child to start and end time-sharing.

To those ends, Mr. Worrell proposes:

1. The Defendant appear at all court appearances;
2. The Defendant must not, for any purpose, for any reason, leave the MD of Florida without first obtaining written permission; The MD of Florida consists of the following counties: The Middle District of Florida consists of the following Florida counties: Baker, Bradford, Brevard, Charlotte, Citrus, Clay, Collier, Columbia, DeSoto, Duval, Flagler, Glades, Hamilton, Hardee, Hendry, Hernando, Hillsborough, Lake, Lee, Madison, Marion, Manatee, Nassau, Orange, Osceola, Pasco, Pinellas, Polk, Putnam, Sarasota, St. Johns, Seminole, Sumter, Suwanee, Union, and Volusia.
3. The Defendant cannot change his present address without permission of the Court;
4. The Defendant shall not commit any new crime while on pretrial release, and the Defendant shall immediately notify pretrial release if arrested;
5. The Defendant shall report to the US Probation Office in Naples, Florida by telephone or as directed by the Office;
6. Allow Worrell's passport to continue to be maintained by the Federal Court;
7. The Defendant shall commit to the supervision of the HISP (High Intensity Supervision Program).
8. Allow Worrell personal recognizance (if the Court orders HISP).
9. Mr. Worrell, needing pre-approved, would ask to:

    - Maintain travel (locally, or to Tampa) for appointments with counsel;
    - Travel to and from physicians;
    - Be employed and travel for work / or as below (if health allows);
    - Religious observances;
    - Maintain time-sharing with his minor child:
        1. Travel to start and end time sharing;
        2. Take the minor child to school and/or pick him up from school;

3. Attend son's athletic events (if his chemotherapy condition allows);
4. Take the minor child to ROTC, possibly wait for completion of activity, and pickup of the same (if his chemotherapy condition allows).

## CONCLUSION

Based on the foregoing reasons, Mr. Worrell respectfully requests this Supplement the Record, and based on the foregoing, release Mr. Worrell with appropriate conditions.

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
Physical address:
4908 Busch Blvd, Suite 204
Tampa, Florida 33617
Mailing:
13046 Racetrack Road, #333
Tampa, Florida 33626
Phone: 813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com

## Certificate of Service

I HEREBY CERTIFY, that a true and correct copy of the foregoing Notice of Appearance was sent via ECM filing to the United States Attorney Office for the District of Columbia on this 31st day of October, 2021.

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
4908 Busch Blvd, Suite 204
Tampa, Florida 33617
Phone: 813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com