## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

CHRISTOPER WORRELL,

*Defendant.*

Case No. 1:21-cr-292-RCL

*let this be filed*
*Royce C. Lamberth*
*U.S.D.J. 11/3/21*

## DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS, D.C. JAIL WARDEN WANDA PATTEN AND DIRECTOR QUINCY BOOTH'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER OF CIVIL CONTEMPT

Third parties District of Columbia Department of Corrections (DOC), D.C. Jail Warden Wanda Patten, and Director Quincy Booth (collectively, the DOC Parties) move for reconsideration of the Court's October 13, 2021 Order of Contempt [106] and its underlying findings. The DOC Parties request reconsideration for two reasons. First, DOC produced the requested records "forthwith"—within one business day—and before the Show Cause Hearing. Thus, the Court's order of civil contempt was unnecessary because there was no noncompliance on DOC's part to remedy. Alternatively, because DOC complied with the Court's order, the Court should find that Warden Patten and Director Booth have purged any contempt. Second, the Court's oral finding that DOC violated Mr. Worrell's civil rights based on treatment for his pinky fracture is unsupported by the record, including new evidence from Dr. Wilson's reevaluation of the injury.

A memorandum of points and authorities and proposed order are attached for the Court's consideration.

Date: November 2, 2021                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

*/s/ Chad Copeland*
CHAD COPELAND [982119]
Deputy Attorney General
Civil Litigation Division

*/s/ Katrina Seeman*
KATRINA SEEMAN [1671729]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone:  (202) 724-6607
Fax:  (202) 724-5917
Email:  katrina.seeman@dc.gov

*Counsel for District of Columbia Department of*
*Corrections, D.C. Jail Warden Wanda Patten, and*
*Director Quincy Booth*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

CHRISTOPER WORRELL,

*Defendant*.

Case No. 1:21-cr-292-RCL

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS,
## D.C. JAIL WARDEN WANDA PATTEN AND DIRECTOR QUINCY BOOTH'S
## MOTION FOR RECONSIDERATION OF THE COURT'S ORDER OF CIVIL CONTEMPT

### INTRODUCTION

The Department of Corrections (DOC), D.C. Jail Warden Wanda Patten, and Director Quincy Booth (collectively, the DOC Parties) request the Court reconsider and vacate its Order of Contempt [106] and findings from the October 13, 2021 Show Cause Hearing. The DOC Parties are entitled to reconsideration because the order to produce records "forthwith" did not set a deadline for DOC to comply, and thus its compliance one business day later is not contemptuous. Alternatively, Warden Patten and Director Booth purged their contempt by complying with the Court's order. To the extent the Court found Mr. Worrell's civil rights have been violated, the Court should reconsider its findings based on the treatment record, including new evidence from treating orthopedist Dr. Robert H. Wilson and the United States Marshals Service's (USMS) surgery determination.

## BACKGROUND

### I.    DOC's Compliance with the Court's October 8, 2021 Order

On October 8, 2021, the Court issued an order commanding DOC to resubmit Mr.

Worrell's Electronic Medical Request, including Dr. Wilson's narrative specialist notes.  Order

[102].  The Order instructed the DOC Parties to submit the information to USMS "forthwith."

*Id.*  In turn, the Court ordered the United States to "file FORTHWITH with this Court a copy of

anything provided by the Department of Corrections to the USMS."  *Id.*

On October 8, 2021, at 3:00 p.m., General Counsel Eric Glover received the Order [102]

to produce surgical notes.  Glover Decl. [107-1] ¶ 2.  Both Mr. Glover and Attorney Advisor

Michelle Wilson worked diligently to get the medical records.  *See generally* Glover Decl.;

Wilson Decl.  One business day later, on October 12, 2021 at 3:35 p.m., DOC produced the

requested medical records to the USMS.  Glover Decl. [107-1] at ¶ 8 .  Despite DOC's full

compliance with the Court's order, the Court found D.C. Jail Warden Wanda Patten and DOC

Director Quincy Booth in civil contempt.  Show Cause Hr'g Tr. 22:1-3, 17-21; Order of

Contempt [106].  Yet the Court noted there is no sanction available.  *See* Show Cause Hr'g Tr.

22:20-21.  The Court also found that DOC violated Mr. Worrell's civil rights and referred the

matter to the Attorney General of the United States for an investigation of whether the DOC "is

violating the civil rights of January 6th defendants by engaging in the conduct in this and maybe

other cases as well."  *Id.* at 22:25-23:12.

On October 14, 2021—two business days after DOC sent the records to USMS—the

United States submitted a "Notice of Filing of Defendant's Medical Records" [109] to the Court.

## II.   Mr. Worrell's Fracture Treatment

Mr. Worrell has been housed at DOC's Correctional Treatment Facility since his arrival on April 13, 2021.  On May 16, 2021, Mr. Worrell reported tripping as he exited his cell.  USA Ex. 4; Medical Records [109-1] at 16.  DOC Urgent Care gave Mr. Worrell pain medication and applied ice to his injury before transporting him to the Howard University Hospital (HUH) Emergency Room.  *Id.* at 15.  At the ER, doctors diagnosed him with a fifth metacarpal fracture in his right hand.  Ct.'s Ex. 1, Sep. 20, 2021 Consultation Req. [112-1] at 8.  The treating physician gave Mr. Worrell a partial cast—also known as a splint—and recommended a follow-up appointment with Dr. Robert H. Wilson, an orthopedic specialist at Howard University Hospital.  *Id.* at 6.

At his June 10, 2021 appointment, Dr. Wilson's medical notes indicate Mr. Worrell had removed his splint and had "no significant pain," and Mr. Worrell agreed to pursue "conservative" treatment.  USA Ex. 4, Medical Records [109-1] at 7.  But Unity (DOC's medical provider) also received a consult sheet in which Dr. Wilson authorized surgery.  Ct.'s Ex. 1, Sep. 20, 2021 Consultation Req. [112-1] at 6 (Patient Return); O'Donovan Decl. ¶ 6.  Beginning on June 14, 2021, Unity repeatedly sought to schedule Mr. Worrell's surgery.  O'Donovan Decl. ¶ 7.  HUH at first refused to schedule the procedure based on their notes that Mr. Worrell had agreed to conservative treatment.  *Id.*  After yet another call to schedule surgery, on July 8, 2021, Dr. Wilson added an addendum stating "Actually, the patient has requested surgery for this injury.  There has been a misunderstanding, noted in the initial documentation.  Surgery is indicated.  We will begin the scheduling for this patient as soon as possible."  USA Ex. 4, Medical Records [109-1] at 6; O'Donovan Decl. ¶ 8.

3

Again, Unity continually tried to schedule Mr. Worrell's surgery over the next three months, but HUH still did not set a date for the procedure or any follow-up appointment. O'Donovan Decl. ¶¶ 9-10. On September 20, 2021, Unity's Assistant Medical Director tried another route to schedule surgery by submitting a new referral for hand surgery at HUH. *Id.*; Ct.'s Ex. 1, Sep. 20, 2021 Consultation Req. [112-1] at 1. The next day, the Unity referral coordinator requested Dr. O'Donovan call Markia, the HUH Scheduling Coordinator at Dr. Wilson's office to assist in scheduling Mr. Worrell's surgery or a follow-up appointment. O'Donovan Decl. ¶ 11. Dr. O'Donovan called Dr. Wilson's office that afternoon and several days after but did not receive a call back. *Id.* at ¶ 12.

On October 7, 2021, Supervisory Deputy U.S. Marshal Derek Haywood (Marshal Haywood) called DOC's Office of General Counsel and forwarded an email with USMS's administrative denial of the surgery request. Wilson Decl. ¶ 2. DOC Counsel then emailed Dr. O'Donovan to inform her that the USMS had denied the surgery and requested Unity provide DOC Dr. Wilson's notes, not just Unity's summary of those notes. Wilson Decl. ¶¶ 3-4 . Dr. O'Donovan called Dr. Wilson's office and received no answer. O'Donovan Decl. ¶ 13. Later that day Dr. O'Donovan, the Unity coordinator, and HUH coordinator Marika finally connected. *Id.* During this call, Dr. O'Donovan again explained the documentation discrepancy from Dr. Wilson, that Unity's understanding was that the plan was to proceed with surgery, and to express her concern about the delay in scheduling. *Id.* at ¶ 14. After this conversation, Dr. Wilson returned Dr. O'Donovan's earlier call, explaining that he really did not feel that the patient's injury required surgery. *Id.*; Ct.'s Ex. 5, Oct. 14, 2021 Consultation Req. [112-5] at 15; USA Ex. 6, Medical Records [118-1] at 15-16. Dr. Wilson requested a follow-up appointment so he could re-evaluate the patient before finalizing a treatment plan or proceeding with surgery. O'Donovan

Decl. ¶ 14; Ct.'s Ex. 5, Oct. 14, 2021 Consultation Req. [112-5] at 15; USA Ex. 6, Medical

Records [118-1] at 15-16. Dr. O'Donovan added this note to Mr. Worrell's file and relayed this

plan to DOC counsel, explaining that Unity successfully scheduled an appointment for him at

HUH on October 14, 2021. O'Donovan Decl. ¶ 15; Wilson Decl. ¶¶ 8. In turn, DOC counsel

sent that update to USMS on October 8, 2021. Wilson Decl. ¶¶ 11-13.

At Mr. Worrell's October 14, 2021 appointment, Dr. Wilson's notes state "surgery

indications are weak, though pt insistent on repair . . . Risks are moderate and chance of

improving function limited. Pt is unwavering. Therefore, will proceed surgically [. . .]. Pt

agrees and demands that plan." USA Ex. 5, Medical Records [114-1] at 2. And Dr. Wilson's

notes clarify he previously "rescinded" and "decided not to proceed" with surgery after

considering the "weak indications" and risks of proceeding with Mr. Worrell's demanded

treatment. USA Ex. 6, Medical Records [118-1] at 15-16. Dr. Wilson explained his concerns as

a physician but noted HUH will "proceed with extreme caution." *Id.* at 16. Dr. Wilson also had

another orthopedist, Dr. Sean Williams, examine and evaluate Mr. Worrell for a second opinion.

*Id.* Dr. Williams concurred with Dr. Wilson's findings. *Id.*

USMS contacted Dr. Wilson to discuss his appointment notes. In this call, the United

States represents "Dr. Wilson reiterated that he did not believe surgery was 'necessary' after his

initial examination in June 2021" and the surgery is "elective." Update on Def.'s Medical Status

[118] at 6-7. Dr. Wilson again explained that fractures typically heal on their own and surgery is

not necessary. *Id.*; *see also* Ct.'s Ex. 5, Oct. 14, 2021 Consultation Req. [112-5] at 15. USMS

then denied Mr. Worrell's request for elective surgery.

## LEGAL STANDARDS

Generally, civil contempt orders are interlocutory, and the Court may revise its orders "at any time before the entry of judgment adjudicating all the claims and the rights and liability of all the parties." Fed. R. Civ. P. 54(b); *see also S.E.C. v. Bilzerian*, 729 F. Supp. 2d 9, 13 (D.D.C. 2010). But where a non-party is the target of a contempt order, the order is treated as a final one. *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988). Thus, the Court may consider a motion for reconsideration of a non-party's civil contempt order under the standards for a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) or a motion for relief from judgment or order under Fed. R. Civ. P. 60(b). *Id.*

Under Rule 59(e), a court may exercise its discretion to correct its own mistakes in the period immediately following the entry of a mistaken order. *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982). Rule 59(e) motions are appropriate to address "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1287 (D.C. Cir. 2019) (citation omitted). Under Rule 60(b), the Court may relieve a party from a final order if "the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). "The party seeking relief from a judgment bears the burden of demonstrating that he or she satisfies the prerequisites for such relief." *Lewis v. U.S. Parole Comm'n*, 841 F. Supp. 2d 56, 61 (D.D.C. 2012). Because the DOC Parties file this motion within 28 days of the Order of Contempt [106], Fed. R. Civ. P. 59(e)'s rubric applies. *See Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 420-21 (D.D.C. 2005).

**ARGUMENT**

**I.**     **The Court Should Reconsider and Vacate the Order of Contempt.**

Two requirements must be met before a party may be held in civil contempt.  First, the

court must have fashioned an order that is clear and unambiguous.  *Armstrong v. Exec. Off. of the*

*President, Off. of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993).  Second, the party must have

violated that order.  *Food Lion v. United Food and Com. Workers Int'l Union*, 103 F.3d 1007,

1016-17 (D.C. Cir. 1997).  Considering the relevant standards and controlling law, the Court

should reconsider its finding that Warden Patten and Director Booth were in civil contempt of

the October 8, 2021 Order.

**A.**     **DOC's Understanding that a One-Business-Day Turnaround Constituted**
         **Production "Forthwith" Was Reasonable.**

Before the Court may hold a party in contempt, the court must have fashioned an order

that is "clear and unambiguous." *Armstrong*, 1 F.3d at 1289.  "This requirement of clarity

derives from concepts of fairness and due process." *S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12, 28

(D.D.C. 2000) (quoting *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991)).  Here, the

Court ordered the DOC Parties to produce the requested narrative notes "forthwith" to the USMS

without specifying a deadline or defining forthwith.  Order [102].  Because of this ambiguity, the

DOC Parties were not on notice that their full compliance with the Court's Order one business

day later could subject them to civil contempt.  *See Int'l Longshoremen's Ass'n, Local 1291 v.*

*Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) ("[A] federal court [must] frame its

orders so that those who must obey them will know what the court intends to require and what it

means to forbid.").  And at the Show Cause Hearing, the Court provided no further definition—

whether it expected the records before the close of business on October 8, 2021 or over the

7

holiday weekend—noting only that "it was contempt when they didn't produce [the notes] forthwith when I ordered it on Friday."  Show Cause Hr'g Tr. 22:1-3.

Without a specific deadline or definition, "forthwith" is subject to several interpretations, including the DOC Parties' reasonable interpretation that one business day is "within a reasonable time under the circumstances."  Forthwith definition, *Black's Law Dictionary* (10th ed. 2014).  And the Court must read its October 8, 2021 Order "in a light favorable to the person charged with contempt." *Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 443 (D.C. Cir. 2010).  Giving the DOC Parties the benefit of their reasonable interpretation, the Court should have considered one business day "forthwith" and erred in its finding of contempt here. *See Teamsters Local Union No. 96 v. Washington Gas Light Co.*, 466 F. Supp. 2d 360, 362-63 (D.D.C. 2006) (declining to hold party in contempt where an award did not specify date for compliance).  As a result, the Court should reconsider and vacate the Order of Contempt.

**B.    DOC Did Not Violate the Court's October 8, 2021 Order.**

Civil contempt "seeks only to 'coerce the defendant to do' what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441-42 (2011) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)) (brackets omitted).  When a party has already complied with a court order, there is no need for a finding of civil contempt. *See Cobell v. Norton*, 334 F.3d 1128, 1147 (D.C. Cir. 2003) (punishing a party for past noncompliance is not civil contempt).  DOC's complete production of the requested records to USMS on October 12, 2021, prior to the Court's contempt finding, satisfied the Court's October 8, 2021 order to produce them.  Thus, the Court's finding of civil contempt did not involve violation of any court order or remedial sanction, and it therefore falls short of the standard for a finding of civil contempt.

8

## II.   **Alternatively, the DOC Parties Purged Any Contempt.**

Alternatively, Warden Patten and Director Booth request the Court find that they have

purged their contempt. *See United States v. Philip Morris*, 220 F.R.D. 109, 112 (D.D.C. 2004)

(lifting contempt as of date contemnor purged the contempt); *Contempt Finding in United States*

*v. Stevens*, 744 F. Supp. 2d 253, 264 (D.D.C. 2010) (same). "[O]nce a civil contemnor complies

with the underlying order, he is purged of the contempt and is free." *Turner v. Rogers*, 564 U.S.

at 442. And if a party brings itself into compliance, it is "entitled to seek reconsideration of any

civil contempt sanction." *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 33

n.4 (D.D.C. 2014).

The Court did not identify any further action it required of either Warden Patten or

Director Booth or additional steps necessary so they could purge their contempt.[1] *See id.*; *see*

*also Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994)

(explaining that civil contempt allows contemnor to purge the contempt and obtain release by

committing an affirmative act). DOC fully complied with the Court's order to produce records

to USMS on October 12, 2021. Thus, Warden Patten and Director Booth purged their contempt,

and the Court should lift its contempt finding.

## III.   **The DOC Parties Did Not Violate Mr. Worrell's Rights.**

At the Show Cause Hearing, the Court made a finding that Mr. Worrell's "civil rights

have been violated." Show Cause Hr'g Tr. 23:9-12. The Court reasoned that it was clear "there

---

[1]      A civil contempt proceeding generally involves three stages:  (1) the court issues an order; (2) after the party disobeys the order, the court issues a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed purgation conditions; and (3) if the party does not fulfill the purgation conditions, the court exacts the threatened penalty. *NLRB v. Blevins Popcorn, Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981).

is more going on here than just laying aside these papers" and that Dr. O'Donovan's October 7,

2021 note "made clear that they were then going to try to persuade Dr. Wilson to change his

recommendation and not recommend the surgery." *Id.* at 22:13-19. The Court also referred the

DOC Parties to the Department of Justice for investigation. *Id.* at 22:25-23:12. To the extent the

Court's additional findings and recommendations derive from issues unrelated to the purpose of

the Show Cause Hearing—namely, DOC's production of records—the DOC Parties request the

Court reconsider these findings after reviewing the record of Mr. Worrell's fracture treatment,

including newly available evidence about his treatment plan.

A.   **Mr. Worrell Has Received Adequate Medical Care For His Fractured Pinky Finger.**[2]

The Fifth Amendment's Due Process Clause requires DOC to provide medical care to

detainees who may need it, including Mr. Worrell. *See City of Revere v. Massachusetts General

Hosp.*, 463 U.S. 239, 244-45 (1983). "The prisoner's right is to medical care—not the type or

scope of medical care he personally desires. A difference of opinion between a physician and a

patient does not give rise to a constitutional right." *Abulrazzaq v. Trump*, 422 F. Supp. 3d 281,

291 (D.D.C. 2019) (quoting *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867-68 (2d

Cir. 1970)). To prevail on a claim involving choices between alternative courses of treatment,

Mr. Worrell must show that the chosen course of treatment was "medically unacceptable under

the circumstances" and was chosen "in conscious disregard of an excessive risk to [his] health."

*Banks v. York*, 515 F. Supp. 2d 89, 105 (D.D.C. 2007). The Court should defer to the judgment

of medical personnel rather than substituting its own. *See Estelle v. Gamble*, 429 U.S. 97, 107

---

[2]   The DOC Parties do not address Mr. Worrell's past complaints about other medical treatment for COVID-19 or non-Hodgkin's lymphoma, which the Court has already found lack merit. *See* Mem. Op. [74]. If the Court wishes additional information on these other treatments, DOC stands ready to provide any information the Court seeks.

(1976); *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007) (Eighth

Amendment rights of convicted prisoners analogous to pretrial detainees' Due Process rights).

DOC's treatment of Mr. Worrell's metacarpal fracture does not amount to a Due Process

deprivation.  DOC provided Mr. Worrell with medical care by promptly taking him to DOC's

Urgent Care and then the Emergency Room for immediate treatment.  USA Ex. 4, Medical

Records [109-1] at 15-16.  DOC continued to provide Mr. Worrell medical care by taking him to

the orthopedic surgeon for evaluation and follow-up appointments and continuing to request

USMS and HUH approve and schedule his surgery.  Despite the confusion generated from Dr.

Wilson's conflicting notes, since June 10, 2021, DOC and Unity believed that Mr. Worrell would

receive surgery and expressed concerns about the scheduling delay.  O'Donovan Decl. ¶¶ 6-14;

Ct.'s Ex. 5, Oct. 14, 2021 Consultation Req. [112-5] at 5-6.  Although USMS has since denied

Mr. Worrell's surgery request, even if Dr. Wilson had proceeded, the record confirms this

surgery was never medically necessary.  USA Ex. 5, Medical Records [114-5]; USA Ex. 6,

Medical Records [118-1] at 15-16.  Medically acceptable is not synonymous with medically

necessary.  *Cf. Acosta v. Nelson*, 181 F. Supp. 3d 44, 48-49 (D.D.C. 2012), aff'd, 561 Fed. Appx.

4 (D.C. Cir. 2014) (finding BOP's denial of surgery and continued conservative treatment of

degenerative elbow injury did not violate the Eight Amendment).  Still, DOC and Unity

advocated for Mr. Worrell's expressed preferred course of treatment.  The DOC Parties have

continued to discharge their duty to provide Mr. Worrell with adequate medical care.  There is no

violation of Mr. Worrell's rights.

**B.      Dr. O'Donovan Has Not Interfered With Dr. Wilson's Treatment Plan.**

The Court also questioned Dr. O'Donovan's note from October 7, 2021, finding this was

evidence that she was trying to persuade Dr. Wilson against surgery.  Show Cause Hr'g Tr.

11

22:13-19; *Estelle*, 429 U.S. at 104-05 (explaining how indifference may be manifested by prison doctor's intentionally interfering with prescribed treatment). But Dr. O'Donovan's record of her phone call does not evince that she—nor anyone at DOC or Unity—sought to change Dr. Wilson's recommendation. Rather, the note shows that despite Dr. Wilson's contradictions, she continued to believe HUH would proceed with surgery:

> I spoke with Dr. Wilson who saw the patient this summer. Per Dr. Wilson, Mr. Worrell's injury is often treated conservatively[,] and he had not thought patient needed surgery when he evaluated him in June. *When I explained that the documentation sent by HUH indicated that we should be setting up surgery*, he scheduled the patient for a follow-up visit next week to re-evaluate and determine the next step.

Ct.'s Ex. 5, Oct. 14, 2021 Consultation Req. [112-5] at 15 (emphasis added); O'Donovan Decl. ¶ 14. The Court's interpretation of this note is not consistent with its plain language or Unity's repeated efforts to schedule Mr. Worrell's surgery. Ct.'s Ex. 5, Oct. 14, 2021 Consultation Req. [112-5] at 15; O'Donovan Decl. ¶¶ 6-16.

Further, Dr. Wilson's own notes acknowledge he created a "misunderstanding." USA Ex. 4, Medical Records [109-1] at 6. To resolve the confusion, Dr. O'Donovan and her staff continued to request surgery or follow-up appointments, and Dr. Wilson agreed it would be appropriate to re-evaluate Mr. Worrell. *See* Ct.'s Ex. 5, Oct. 14, 2021 Consultation Req. [112-5]; O'Donovan Decl. ¶ 14. Even more telling are Dr. Wilson's notes from Mr. Worrell's October 14, 2021 appointment, in which he explains in more detail that surgery indications are weak, the risks outweigh the benefits, and that Mr. Worrell's fracture healed. USA Ex. 4, Medical Records [109-1] at 15-16. There is no indication that any DOC or Unity employee wrongfully interfered with any prescribed treatment and so the Court should vacate its findings.

**C.      There is No Evidence that Mr. Worrell's Status as a January 6th Defendant Influenced His Medical Treatment.**

The Court referred DOC's handling of Mr. Worrell's medical treatment to the Attorney

General of the United States for "investigation of whether the D.C. Department of Corrections is

violating the civil rights of January 6th defendants by engaging in the conduct in this and maybe

other cases as well." Show Cause Hr'g Tr. at 22:25-23:12. There is no evidence that Mr.

Worrell's status as a January 6 defendant has ever affected his medical treatment. In fact, the

Court has found there was no merit to the litany of complaints Mr. Worrell lodged against DOC

about the medial treatment it has provided to him. *See* Mem. Op. [74] ("Defendant has

characterized his medical treatment as, among other things, 'inadequate, dangerous, and life-

threatening' and 'tantamount to punishment. [. . . ] These representations have no basis in

reality.'"). Unequivocally, Mr. Worrell's status as a January 6th defendant has not influenced his

medical treatment in any way whatsoever, and he continues to receive appropriate medical care

at D.C. Jail.

## CONCLUSION

For these reasons, DOC, Warden Patten, and Director Booth request the Court vacate the

Order of Contempt [106] and its underlying findings that Mr. Worrell's civil rights have been

violated.

Date:  November 2, 2021                    Respectfully submitted,

                                                              KARL A. RACINE
                                                              Attorney General for the District of Columbia

                                                              */s/ Chad Copeland*
                                                              CHAD COPELAND [982119]
                                                              Deputy Attorney General
                                                              Civil Litigation Division

_/s/ Katrina Seeman_

KATRINA SEEMAN [1671729]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone:  (202) 724-6607
Fax:  (202) 724-5917
Email:  katrina.seeman@dc.gov
_Counsel for District of Columbia Department of_
_Corrections, D.C. Jail Warden Wanda Patten, and_
_Director Quincy Booth_

14

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

CHRISTOPER WORRELL,

*Defendant.*

Case No. 1:21-cr-292-RCL

**ORDER**

Upon consideration of District of Columbia Department of Corrections, D.C. Jail Warden Wanda Patten, and Director Quincy Booth's Motion for Reconsideration of the Court's Order of Civil Contempt, any opposition and reply thereto, and the entire record herein, it is hereby

**ORDERED** that the Motion for Reconsideration is **GRANTED**; and it is further

**ORDERED** that the Court's October 13, 2021 Order of Contempt [106] and findings that Mr. Worrell's civil rights have been violated are **VACATED**.

**SO ORDERED.**

ROYCE C. LAMBERTH
United States District Judge