IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | |
| : | Case No: 21-CR-292 RCL |
| **CHRISTOPHER WORRELL and** : | |
| **DANIEL SCOTT,** : | |
| : | |
| **Defendants.** : | |

### STATUS MEMORANDUM

The United States submits this status memorandum to update the Court as to two matters: A trial date in this matter and Mr. Worrell's alleged violations of his bond conditions. Defense counsel for both defendants have reviewed the portions of this memorandum that state their position to ensure accuracy.

*Trial date.* The parties have not been able to come to complete agreement as to a trial date in this case. The government discussed trial dates with counsel for Mr. Scott, who indicated that (given the Court's existing trial schedule) a trial on December 12 would be preferable, but that a trial in mid-November might be possible. The government is free for a trial on either date. Mr. Scott's counsel noted his need for that period to time to prepare his case given the voluminous discovery in the case. The government and Mr. Scott are also assiduously working toward a pretrial resolution of his case.

The government also discussed trial dates with counsel for Mr. Worrell, who indicated that he would request a trial date in February 2023. According to his counsel, in addition to the need to review discovery to properly prepare for trial, Mr. Worrell has certain medical issues and an upcoming jaw surgery that will make communication with his counsel difficult for much of September (or perhaps longer). The government will let Mr. Worrell's counsel further elaborate

on those issues at tomorrow's hearing.

***Mr. Worrell's alleged violation of his bond condition.***  The government takes seriously and is concerned by the alleged violations of Mr. Worrell's bond conditions.  After receiving the violation report, the government contacted counsel for Mr. Worrell, who indicated that there was additional context surrounding the alleged violations that Mr. Worrell intended to present to the Court.  Counsel for Mr. Worrell confirmed today that he can present additional information at tomorrow's hearing, but also stated that he may need time to fully review and present Mr. Worrell's additional information.  Without having yet seen that additional context, the government notes only the following.

As this Court recalls, in December 2021, Mr. Worrell was alleged to have violated his condition that he not use a computer to access the internet.  At that time, Mr. Worrell stated that he "understands [his] conditions" and requested that the Court take no action.  Dkt. 137 at 2.

The most recent report from pretrial services sets out a pattern of conduct in which Mr. Worrell appears to be misleading his pretrial services officer as to the reasons for his travel.

**1.** This first occurred in late April 2022, when Mr. Worrell told his pretrial services officer that he would go to the Collier County Government Center "for his son," but Mr. Worrell instead spoke at the Collier County Commissioners' meeting about his case.  During the meeting, Worrell stated (among other things) that he was a "political prisoner" and that "federal agents . . . they raided my residence, . . . and held my wife at gunpoint for hours . . . ."[1]  This is plainly a violation of Mr. Worrell's condition requiring that he not "directly or indirectly publicly comment[] on his case without prior approval of the Court."  Dkt. 134 at ¶ 7(t).

Mr. Worrell's statement was also concerning because it is false.  Mr. Worrell's then-live-

---

[1] *See* Jan. 6. Suspect makes tearful plea to Collier County Commissioners (Apr. 26, 2022), available at https://www.winknews.com/2022/04/26/jan-6-suspect-makes-tearful-plea-to-collier-county-commissioners/.

in girlfriend, Tricia Priller—who is also his third-party custodian for his release bond—was present at his house during its search in March 2021. She was not "held . . . at gunpoint for hours," as Mr. Worrell claimed. There were around a dozen law enforcement witnesses to Ms. Priller's treatment during the search of Mr. Worrell's residence. Ms. Priller was cooperative with law enforcement, and apart from an initial detention during the securing and sweep of the residence, Ms. Priller was not held, much less at gunpoint, during the remainder of the search. Ms. Priller would presumably not contradict that under oath. Mr. Worrell's outlandish claim is, though, of a piece with the similarly exaggerated or incorrect claims Mr. Worrell has made during the course of this case. *See* Dkt. 121 at 7-16 (detailing prior instances in which Mr. Worrell has made what the government views as false or exaggerated statements to the FBI, through then-counsel to Chief Judge Howell, and to the media).

**2.** In July 2022, Mr. Worrell's third-party custodian informed pretrial services that he would go to Clearwater to visit his attorney—a permitted visit under his bond condition. He then attended a rally at the Pinellas County Jail, also in Clearwater. The government does not know whether Mr. Worrell's attorney was near or at the Jail, but understands that Mr. Worrell will present additional information about that at tomorrow's hearing. In any event, Mr. Worrell's attending a rally about the events of January 6 after telling pretrial services he was going to Clearwater for an attorney visit would appear to violate Mr. Worrell's travel condition, which restricts his travel to visits for things like "attorney visits; court appearances; or court-ordered obligations," unless the "other activities" are "approved in advance by the pretrial services office or supervising officer." Dkt. 134 at ¶ 7(p)(i). Here, the rally was not approved.

**3.** Finally, the report also indicates that Mr. Worrell was in contact with another January 6, 2021 defendant, James Brett IV (*see United States v. James Brett*, 22-cr-11-5), notwithstanding

his condition prohibiting such contact. The government can confirm that Mr. Brett is a defendant in a January 6, 2021 case, who was arrested in his case on June 3, 2022.

The government does not currently know whether Mr. Worrell contests the facts outlined above. If so, the government can put on the testimony of either the Middle District of Florida's pretrial services supervisory officer Gary Crumrine (with respect to his office's communications with Mr. Worrell or Mr. Worrell's third-party custodian) or Detective Mauro with the Pinellas County Sheriff's Office (with respect to Mr. Worrell's presence at the July 2022 rally or communications with Mr. Brett), at a bond violation hearing. Because these witnesses and the defendant are located in Florida, the government would request that that hearing, if necessary, occur via Zoom.

Not yet having the benefit of additional context from Mr. Worrell, the government defers at this point to this Court's determination as to how best address these violations given pretrial services' recommendation that supervision be terminated and the troubling conduct outlined above. The government understands that Mr. Worrell also plans to present tomorrow additional information about his ongoing medical operations, including an upcoming jaw surgery that may leave him unable to speak for several weeks. Neither the government nor pretrial services has firsthand information about Mr. Worrell's current medical situation, which may be relevant to this Court's assessment of the appropriate response to Mr. Worrell's violations.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ William Dreher*
WILLIAM DREHER

D.C. Bar No. 1033828
Assistant United States Attorney (Detailed)
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov