UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
WASHINGTON D.C.

UNITED STATES OF AMERICA,
        Plaintiff,
vs.                                      CASE NO.: 1:2021-CR-00292-RCL-1
CHRISTOPHER J. WORRELL,
        Defendant.
_____/

## DEFENDANT's RESPONSE TO PRETRIAL SERVICES REPORT OF JULY 28, 2022

The Defendant Christopher Worrell, by and through his counsel, tenders this response to the Pretrial Services Report dated July 28, 2022, and states as follows:

### I.    The Submitted Violations

Worrell is alleged to have violated condition (t), which states:

(t)    Permit pretrial Services to visit him at home or elsewhere at any time and to confiscate contraband in plain view.
Not access the internet, including social media and email, except for use with his legal defense team or as authorized by Pretrial Services.
Not use encrypted messaging applications unless approved by pretrial services
Not have any contact with any other persons or organizations involved in the January 6 Capitol events after returning to the District where he will be supervised, except with their legal defense teams or as otherwise authorized by pretrial services
Defendant shall refrain from corresponding directly or indirectly with any news media organization (for example, Newsmax, Washington Post, Brietbart) without prior approval of the Court.
Defendant shall refrain from directly or indirectly publicly commenting on his case without prior approval of the Court.

### II.    Mr. Worrell's Statement

    A.  **April 27 news article / 6/15 follow up**

On April 26, 2022, Mr. Worrell attended a meeting of his Collier County Commission. The Commission chambers are located at the Collier County Government

Complex, in Naples, Florida. While at the meeting that morning, Mr. Worrell was one of three speakers to address the Commission. Mr. Worrell did not notify any party in advance of his desires to address the County Commission (signifying no intent to involve media or any other "interested" parties). Mr. Worrell's speech was recorded (as required by the "Sunshine" records for the State of Florida), and unbeknown[1] to Worrell, media entities were present at the Commission meeting.

The link is the entire speech is below:

https://news.yahoo.com/christopher-worrell-april-26-2022-114727105.html

The video starts at the 2:50 minute mark and concludes at the 6:36 mark, for a total of just under 4 minutes.

In the video, Mr. Worrell can be seen discussing the civil rights violations[2] thrust upon him by the heinous actions of the DC Jail and its personnel. Mr. Worrell, at no point, addresses the indictment which has been filed against him, and simply discusses the civil rights violations to which he was subject while an inmate in the District of Columbia Jail.

On May 6, 2022, Mr. Worrell was at the Collier County Government Center from 9:30 AM to 11:30 A.M. to speak to State of Florida Representative Lauren Melo. Worrell is permitted freedom of movement within the Middle District of Florida. Additionally, Worrell is on home detention with the exception of 7:00 A.M. to 7:00 P.M. This is not a violation of the conditions ordered by this Honorable Court.

**B. No contact with any J 6**

The undersigned is not Mr. Worrell's only counsel. On July 21, 2022, Mr. Worrell

---

[1] Unbeknown as no media entity demonstrated anything to signify there presence and that they represented a media outlet. Additionally, this Court will not hear a single piece of evidence that Worrell sought out or spoke or attempted to speak to media.

[2] To date, despite several attempts, Worrell has struggled with obtaining counsel for the DC Jails Civil Rights Violations, and has only been able to receive some assistance from Christopher Hedges, Esquire.

met with licensed Florida Attorney Chris Hedges (Florida Bar 1033467). The meeting occurred at 14400 49th Street North, Clearwater, Florida 33758. The meeting occurred at said location for convenience of Counsel and due to the fact Mr. Worrell's medical condition did not permit the possibility of another meeting for quite some time[3].

At the meeting, Mr. Worrell was not wearing Proud Boy clothing nor "Proud Boy" styled clothing. Mr. Worrell is not a member of the Proud Boys (nor any other organization), and does not wear "Proud Boy" clothing or similar. The article of clothing in question was a t-shirt. On the front of the shirt stated, "POW JAN 6, 2021; You are not forgotten." On the back stated, "November 3, 2020 was the real insurrection, January 6, 2021 was a protest; Free the boys."

Detective William Mauro states during the event, Mr. Worrell "communicated" with Mr. Brett. Mr. Brett appeared at a public event without the knowledge of Mr. Worrell. There was no premeditation that Worrell intended to meet Brett, nor any reason to believe Worrell and Brett had any prior associations or knowledge of each other[4]. Brett appears to be from Tampa Bay, while Worrell is from Naples, Florida. A distance of at least three hours travel. Worrell would not be aware of Brett nor Brett's associations.

The contact alleged is fleeting at best. The parties acknowledged each other via standard

---

[3] On September 15, 2022, Mr. Worrell is scheduled for oral surgery. Said oral surgery is medically necessary as not performing the procedure could lead to complete deterioration of the teeth as well as dangerous infections. The surgery has become medically necessary as a result of prior complications, but more so after the lack of care in the DC Jail which exasperated and accelerated this condition required such aggressive surgical repair and continued care. Said surgery will require the removal of all his lower teeth, the opening of his gums, and then the attempted bone grafting. If the bone grafting "takes," Mr. Worrell will than hope to receive a new set of teeth. Mr. Worrell will be unable to aid his counsel(s) for a minimum of 60 days and as long as several months. This lower mandible bone graft became necessary by the poor care and malnutrition of the DC Jail. In essence, this poor care and malnutrition accelerated the need to have this procedure, as did the DC Jails lack of proper care for Worrell's Stage 3 cancer.

[4] There appears to be an attempt to indicate Brett is/was a Proud Boy and that is the alleged "connection." Newsweek alleges there were 72 chapters of Proud Boys nationwide. It would be absurd to believe that Worrell "knows" them all (or even any individually), and additionally absurd as Worrell is not a member, and no longer has any associations or connections to the same.

greeting, in what was a permitted location in a corner of the Pinellas County Government Center Parking lot.  Conveniently, and with what seems to be the modus operandi of Government investigations at secure facilities, there is no video or photographic evidence available for presentation to the Court.  Despite high level active surveillance (due to the location being a courthouse and jail), and despite the fact law enforcement conducted active surveillance, there is no video or photographic evidence to suggest anything other than Worrell's deminimis contact with Brett.

### C.  Use of the computer

Defendant Worrell, made this submission in prior Docket entry.  But for purposes of this Response, re-states as follows:

The Defendant was working with his third-party custodian for purposes of completion and submission of his weekly schedule.[5]  The previously submitted schedule was denied, and Worrell was re-drafting and preparing the same.  This completion and re-submission was done while Worrell was on the phone simultaneously with Pre-trial services Officer Tad Parks.  All submissions were done with Worrell's third-party custodian present and with her supervision.

More specifically, on the morning of 12/23/21, Priller became aware of the new order setting conditions of release.  Priller immediately forwarded the Order to Pretrial Services Officer Parks, knowing Priller had just sent Worrell's new schedule (due by noon the same day) and due to being concerned about not being compliant with the new conditions. Worrell then immediately called Parks with questions pertaining to his submitted schedule at which time Parks advised Worrell his schedule was denied.  During his conversation with Parks, Priller/Worrell was actively changing the schedule to comply with the new order.

---

[5] We concur that the Order does not allow internet access, including social media and email, except for use with his legal defense team or as authorized by Pretrial Services. Worrell was not "online," or using the internet

Priller/worrell also emailed Parks asking if last week's previously approved schedule needed to be modified as they wished to attend a Christmas dinner until 9:30 p.m. Parks advised that the schedule needed to comply as of December 22, 2021 (the date of new Order).

As Worrell was – with the presence of his third-party custodian – preparing a new, updated schedule via Microsoft office, this Court should find no violation, or that the violation was de minimis.

The third-party custodian has already placed passwords as well as fingerprint only access to the computer (which has been previously shown to Parks). Worrell has no access to any computer without the third-party custodian approval/fingerprint. Additionally, Worrell was utilizing Microsoft Office – more specifically, Excel[6] – to prepare his new, updated weekly schedule. Respectfully, this Court has imposed conditions, Worrell understands those conditions, and there are no other conditions which could be imposed which would minimize or avoid the perceived risk of violation.

### D. TRISH PRILLER AS THIRD PARTY CUSTODIAN

The parties are aware that the Court has tremendous latitutde – generally speaking – in imposing conditions on convicted defendants released on probation or parole. Courts can impose reasonable conditions in pretrial release.

In *US v. Collins* (11-CR-471)(N.D. Cal. March 16, 2012) several defendants were indicted for interfering with PayPal computers (via a distributed-denial-of-service attack), as retaliation for PayPal's blocking of service to Wikileaks. The court upheld a pretrial release condition barring the defendants from using Internet Relay Chat (IRC), because the defendants

---

[6] The Defendant was utilizing the equivalent of excel, a sub-program within office, to create a schedule as for the upcoming week; Worrell did not have access to the preformulated provided document from pretrial services, and admittedly, cannot – without permission – travel to obtain the same from probation.

had used IRC to coordinate their attacks:

> While any limitation on free speech must be imposed cautiously, and each defendant retains the presumption of innocence during the pretrial period, the IRC restriction in this case furthers a compelling government interest in protecting the public from further crimes coordinated through a means specifically addressed by the grand jury in the language of the indictment. The condition operates in a content-neutral fashion. The condition does not restrict political or any other discourse by any other means, even by use of other internet services such as email, blogging services such as Tumblr, chat other than IRC, or social networks such as Facebook or Google+. All of this suggests to the court that a restriction on IRC use, while permitting substantial internet use for purposes that include political discourse, strikes a reasonable balance between the legitimate and yet competing interests of the parties….

The court also notes that the condition does not impose any burden greater than associational and other First Amendment-impacted restrictions routinely imposed by courts as a condition of pretrial release. *See, e.g., United States v. Spilotro,* 786 F.2dd 808, 815-816 (8th Circ. 1986). But the court set aside the Twitter use condition:

> The indictment makes no mention of Twitter whatsoever…. In the absence of any indictment charge, any evidence, or even any specific proffer of such illicit activity [using] Twitter, the court is not persuaded that the restriction advances any legitimate interest in protecting the public's safety or prevent any defendant from fleeing. Under these circumstances, any illicit use of Twitter by any defendant may be adequately addressed by the monitoring approved elsewhere in this order.

(*See also* U.S. ex rel. Means v. Solem (D.N.D. 1977), which struck down a much broader, content-based speech restriction.)

When the undersigned submits the above authority, Trish Priller is not a defendant, and not subject to pre-trial release conditions, with the exception of complying with this Courts Orders as she has sworn to do and of which she has fully and faithfully complied.

What is clear is the is an opposing viewpoint will not be permitted.  Ms. Priller is entitled to her position without compromising what she has sworn to the Court she would do as Worrell's third party custodian.  The removal of Priller as Worrell's third party custodian would gravely undermine counsel's ability to prepare with Worrell, and there is no other possible person who

could partake in that role. This attempt to remove Ms. Priller as well as this attempt to chill Priller's opinions and speech should not be permitted.

## CONCLUSION

Based on the foregoing reasons, Mr. Worrell respectfully requests this Honorable Court receive this explanation and take no action.

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
Physical address:
4908 Busch Blvd, Suite 204
Tampa, Florida 33617
Mailing:
13046 Racetrack Road, #333
Tampa, Florida 33626
Phone: 813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Modify Pretrial release conditions was sent via ECM filing to the United States Attorney Office (AUSA Will Dreher), and to the Clerk of District Court, on this 11th day of August, 2022.

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
4908 Busch Blvd, Suite 204
Tampa, Florida 33617
Phone: 813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com