IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No: 21-CR-292 RCL |
| CHRISTOPHER WORRELL and : | |
| DANIEL SCOTT, : | |
| : | |
| Defendants. : | |

**RESPONSE TO DEFENDANT'S AMENDED RESPONSE TO PRETRIAL SERVICES REPORT OF JULY 28, 2022**

The United States submits this response to the defendant's sealed, August 17, 2022 response to the pretrial services report of July 28, 2022 (hereafter "Defendant's Response" or "Deft's Response").[1]

## I.    TRIAL DATE

First, with respect to a trial date, the government has no information at its disposal undercutting the claim that Mr. Worrell's surgery, scheduled for September 14, 2022, is "essential and medically necessary," nor that its delay could "cause[] the risk of severe infection."  Deft's Response, Ex. C at 2-3.  It appears from Ms. Priller's public statements that this surgery was first mentioned by his doctors on July 13, 2022.[2]  But the government has not seen any of Mr. Worrell's medical records, so apart from Ms. Priller's posts does not know his treatment timeline with any certainty.[3]

---

[1] The government does not believe its filing contains any information requiring that it be sealed.

[2] *Chris Worrell Political Prisoner 377183*, GiveSendGo (last visited August 17, 2022), https://www.givesendgo.com/flotilla (Ms. Priller's post of July 13, 2022 stating: "Chris's got an update today on the surgery he needs on his jaw. The surgeon and dentist agree that he needs to have bone grafts done before his lower jaw bone becomes infected or worse.").

[3] It appears, from Ms. Priller's posts, that Mr. Worrell saw an oncologist two months after his release, and received chemotherapy in May.  *See id.* (Ms. Priller referring to "the 5 rounds of chemo he received in May"); *id.* (Ms. Priller stating: "As of 1/3/22 Chris has still not had treatment

The letter from Mr. Worrell's doctor states that he will require follow-up visits for 4-6 weeks after his surgery date. It appears a trial date in November or December would thus permit Mr. Worrell ample time to recover, receive any immediately urgent post-operative care, and then attend trial.

## II.    MR. WORRELL'S ALLEGED VIOLATIONS OF HIS BOND CONDITION

The government responds here only to new information provided in the defendant's two most recent responses. The government does not believe an evidentiary hearing is necessary, as there are few or no significant factual disputes remaining, and the government thinks the undisputed facts establish violations of Mr. Worrell's travel conditions and the prohibition on publicly commenting on his case. Because of his medical situation, and for the reasons below, the government requests at this time only that the Court modify Condition 7(p)(i) of Mr. Worrell's bond, Dkt. 134 at 2, as follows:

> "You are restricted to your residence at all times except for visits to obtain medical treatment, attorney visits (at an attorney's office or residence), court appearances, or court-ordered obligations. No other activities requiring travel outside of your residence are permitted without court approval. You must submit a schedule of anticipated travel outside of your residence, and provide notice of any changes to that schedule, as directed by the pretrial services offices or supervising officer."

With this change, Mr. Worrell would be free to attend necessary medical and legal visits, with the latter required to occur at an attorney's office or residence, not at public rallies. But he would not be permitted to attend other kinds of events absent court approval. Mr. Worrell would still be required to notify pretrial services of the above categories of travel in advance, but to permit flexibility in his medical scheduling, he could attend those visits without obtaining pretrial's *approval* of any medical or legal visit, court appearance, or court-ordered obligation.

---

for his cancer. . . . Last week Chris finally got to his first Oncologist appointment after being home for 2 months . . . .").

2

***Travel restrictions.***  First, to clarify, Mr. Worrell may misunderstand his current bond travel condition.  He suggests, for example, that if he "never left the [Middle District of Florida] . . . and there was no violation of his curfew, there was no violation of his conditions of pretrial release."  Deft's Response at 4.

Not so.  Mr. Worrell is not merely currently subject to a curfew and travel restriction prohibiting travel outside of the district.  He is *also* not permitted to leave the house for any purpose within the Middle District of Florida outside of his curfew hours, between 7 a.m. and 7 p.m.  This issue was litigated by the parties in December 2021.  The Court ordered, in line with the government's recommendation, that Mr. Worrell be permitted, outside his curfew hours, to attend certain types of events (e.g., medical appointments, education, employment, "attorney visits; court appearances; or court-ordered obligations") without pre-approval from pretrial services, but that all "other activities" not specifically listed must be "approved in advance by the pretrial services office or supervising officer."  Dkt. 134 at ¶ 7(p)(i); Dkt. 132 at 3 (government proposing similar language).  The government was clear that it was proposing that the Court "still require that Mr. Worrell only leave his residence for designated purposes," Dkt. 132 at 2, and the language of this Court's ensuing bond modification order is also clear.  Thus, under his current conditions, Mr. Worrell cannot attend events like County Commissioners' meetings, or anything else that does not fall into one of the specific enumerated categories listed in condition 7(p) of his bond order, unless those activities are pre-approved by pretrial services.

The pretrial services violation report of July 28, 2022 indicates that Mr. Worrell thus violated this condition on at least two occasions: when he attended the County Commissioners' meeting on April 26, 2022 and when he attended a meeting on June 15, 2022, each time without pre-approval.  Dkt. 151 at 3.  Mr. Worrell does not deny either trip or the lack of specific approval.

With respect to the first, Mr. Worrell informed his pretrial services officer he was headed to the courthouse "for his son" (according to his pretrial services officer) not to speak at the commissioners' meeting. Given that he actually attended and spoke publicly at a commissioners' meeting, while wearing a "POW" shirt, the government views this as an intentional attempt to hide his true purpose for the travel from pretrial services. With respect to the second incident, Mr. Worrell offers no explanation other than that he apparently believed he could go anywhere in the Middle District of Florida as long as he was back by his 7 p.m. curfew.[4] Deft's Response at 4. As explained above, that is not true. As to these two violations, therefore, the undisputed facts appear to establish a violation, which the government believes merits the bond modification noted above: confining Mr. Worrell to his home at all times aside from medical and legal visits or courtroom proceedings (with no option for other activities absent court approval).

There is also the July 14, 2022 rally. The record is now less clear as to whether that is a violation. It is undisputed that Mr. Worrell informed pretrial services he was traveling to Clearwater, Florida to meet with his civil attorney. Mr. Worrell has now submitted an affidavit from an attorney who states that he and Mr. Worrell agreed to meet while at a rally, held in the parking lot of a jail, about a January 6, 2021 defendant held in custody. Deft's Response, Ex. B. Mr. Worrell's contention appears to be that he and his attorney could only find time to meet at a highly visible outdoor rally, where privileged communications would be difficult, that just happened to be about another January 6, 2021 defendant. Regardless, to prevent a similar incident

---

[4] Mr. Worrell does attach text messages he exchanged with his pretrial services officer on April 26, 2022. *See* Deft's Response, Ex. A. These text messages are irrelevant to his alleged violations, and concern Mr. Worrell's attempt to charge his GPS monitor. But it is telling that even in this limited exchange selected by Mr. Worrell to present to the Court, Mr. Worrell tells a fact to pretrial services ("I charged it last night") that is immediately refuted by pretrial services based on their own records ("There is no entry in the log as to it being charged last night."). *Id.* at 1-3.

in the future, the government would request that any future attorney's visits, should they occur, be required to occur at an attorney's office or residence.

***Public comment on his case.*** As the government explained in its filing last week, at the April 26, 2022 commissioners' meeting, Mr. Worrell commented directly on the circumstances of his arrest and the search of his home. Dkt. 152 at 2 (quoting Mr. Worrell's comments that "federal agents . . . they raided my residence, . . . and held my wife at gunpoint for hours . . . ."). Mr. Worrell further claimed that the "arrest" of "dozens of Florida citizens" who are January 6 defendants, including himself, "were unlawfully executed" in violation of various state and federal laws.[5] That is a legal argument about the validity of his arrest in this case. Contrary to Mr. Worrell's suggestion, his arrest and the search of his house are part of his criminal case, as Mr. Worrell would agree if he had challenged the validity of either in a pretrial motion. Finally, it is hard to construe Mr. Worrell's comment at that April meeting that he is a "political prisoner" as anything but a comment on the legitimacy of the charging documents in this case.[6] *Id.* Thus, even setting aside Mr. Worrell's comments on his pretrial detention, he publicly commented on his case, a violation of Mr. Worrell's condition requiring that he not "directly or indirectly publicly comment[] on his case without prior approval of the Court." Dkt. 134 at ¶ 7(t).

---

[5] *See* https://www.facebook.com/CollierGov/videos/418838580118069 (from 40:34 through 41:08).

[6] Mr. Worrell claimed, in his letter to this Court, that the phrase "political prisoner" is not one that he embraces, but rather is one that "was thrust upon myself and the other January 6 defendants by the staff of the DC DTF Jail." *See* Deft's Response Ex. D at 1. That claim is not credible. Mr. Worrell wore a shirt, months after his release, with the phrase "POW" on it. His own fundraising website, run by his third-party custodian, is titled "Chris Worrell Political Prisoner 377183" and states "Chris was a January 6 Political Prisoner for 237 days." *See Chris Worrell Political Prisoner 377183*, https://www.givesendgo.com/flotilla. He led his remarks to the commissioners on April 26, 2022 with a reference to him being a "political prisoner." It beggars belief that Mr. Worrell is using that phrase publicly, repeatedly, and long after he is out of custody *not* to convey his view that these prosecutions are illegitimate, but because he was simply conditioned to refer to himself in that way after it was "thrust" upon him by staff at the D.C. Jail.

***Contact with James Brett.*** Mr. Worrell does not deny contacting James Brett, but claims his contact was *de minimis*, and claims he had no foreknowledge Mr. Brett would be present. The government has no specific facts proving Mr. Worrell's knowledge of Mr. Brett's status as a defendant, even if the circumstances (Mr. Worrell communicating with another Proud Boy defendant at a rally for a third detained January 6, 2021 defendant) are suggestive.[7]

Finally, the government briefly responds to Mr. Worrell's claim in last week's filing that, contrary to law enforcement's report, he was not wearing "'Proud Boy' styled clothing" during this meeting with Mr. Brett, "is not a member of the Proud Boys (nor any other organization), and does not wear 'Proud Boy' clothing or similar." Dkt. 153 at 3. That claim is not relevant to his violations. But it is also not credible. The shirt he wore both on April 26 and July 14 stated on the front: "POW JAN 6, 2021." *Id.* On the back, it stated: "November 3, 2020 was the real insurrection, January 6, 2021 was a protest; FREE THE BOYS." *Id.* Here is the shirt:

 

---

[7] Mr. Worrell's use of a computer in December 2021, *see* Deft's Response at 6-7, was addressed by the Court at that time and is not at issue here.

That is, indeed, "Proud Boy styled" clothing. The shirt references "FREE THE BOYS"; is black with yellow lettering; and features a yellow double laurel wreath. Black and yellow are the Proud Boys' colors, and the yellow double laurel wreath is the coopted insignia of the Proud Boys. The following sample of open-source photographs or screenshots, of Mr. Worrell and other Proud Boys, show both that color scheme and the double laurel wreath design:





The following photographs are of similar Proud Boy shirts (with "PB" or "Proud Boy" on them, along with the double laurel wreath and same color scheme) seized from Mr. Worrell's residence at the time of his arrest:




Mr. Worrell's claim is thus easily refuted.

### III.   CONCLUSION

The government requests that the Court set a trial date in November or December and modify Mr. Worrell's bond conditions as set forth above.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ William Dreher*
WILLIAM DREHER
D.C. Bar No. 1033828
Assistant United States Attorney (Detailed)
700 Stewart Street, Suite 5220

Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov