## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA
## WASHINGTON D.C.

UNITED STATES OF AMERICA,
        **Plaintiff,**

**vs.**                                  **CASE NO.: 1:2021-CR-00292-RCL-1**

**CHRISTOPHER J. WORRELL,**
        **Defendant.**

_____/

### DEFENDANT'S AMENDED RESPONSE TO PRETRIAL SERVICES REPORT
### OF JULY 28, 2022

The Defendant Christopher Worrell, by and through his counsel, tenders this response to the Pretrial Services Report dated July 28, 2022, and states as follows:

The court must determine whether to release or detain a defendant pursuant to 18 U.S.C § 3141(a), and the judicial officer may amend his order at any time, 18 U.S.C. § 3142(c)(3). Among other things the court can release the defendant on his "personal recognizance or upon execution of an unsecured appearance bond" or "on a condition or combination of conditions. . . ." 18 U.S.C. § 3142(a)(1)-(2).

However, "[t]he Bail Reform Act creates a strong policy in favor of release on personal recognizance, and it is *only if 'such a release would not reasonably assure the appearance of the person as required' that other conditions of release may be imposed.*" *Wood v. United States*, 391 F.2d 981 at 983 (D.C. Cir. 1968) (emphasis added); see also *United States v. Melville*, 306 F. Supp. 124 at 126 (S.D.N.Y. 1969) (emphasizing the conditions of release should reflect the least onerous conditions to reasonably assure the defendant's appearance for trial).

Since the Court ordered Mr. Worrell's release from the D.C. Jail on November 4, 2021, he has never failed to appear nor has he provided the Court with any reason to believe he would fail to appear. However, the government has attempted on several occasions now to present

scenario to this Court where it would like for you to believe Mr. Worrell is violating his conditions of pretrial release so he can once again be detained.

February 6, 2022, your Honor heard arguments from the government as to why this Court should reverse its decision granting Mr. Worrell pretrial release, arguing he violated his conditions of pretrial release. Your Honor recognized Mr. Worrell's original conditions of release lacked the necessary flexibility for, among other things, pursuing medical treatment.[1]

In its report, Pretrial Services begins by presenting issues it apparently believed were violations of Mr. Worrell's conditions of release. However, instead of immediately filing a report for a supposed violation, Pretrial Services delayed 92 days in reporting the first incident and it waited at least 57 days for the second incident. Pretrial Services then discusses an event that took place on July 14, 2022, but to complete its argument Pretrial Services attempts to present anew the issue concerning pretrial release from December 21, 2021, that has already been ruled upon. The government is again trying to convince this Court Mr. Worrell should be detained for violating his conditions of pretrial release.

## I.      The Submitted Violations

Worrell is alleged to have violated condition (t), which states:

(t)     Permit pretrial Services to visit him at home or elsewhere at any time and to confiscate contraband in plain view.
Not access the internet, including social media and email, except for use with his legal defense team or as authorized by Pretrial Services.
Not use encrypted messaging applications unless approved by pretrial services
Not have any contact with any other persons or organizations involved in the January 6 Capitol events after returning to the District where he will be supervised, except with their legal defense teams or as otherwise authorized by pretrial services

---

[1] The Court should be advised that Mr. Worrell's previous pretrial releaser officer is no longer with the office; Mr. Worrell's current officer has advised Mr. Worrell that he is not free to leave the residence unless on the schedule and approved.  This also includes no ability to enter, for example, into the back porch/yard of the home.

Defendant shall refrain from corresponding directly or indirectly with any news media organization (for example, Newsmax, Washington Post, Brietbart) without prior approval of the Court.

Defendant shall refrain from directly or indirectly publicly commenting on his case without prior approval of the Court.

### A.  "The Defendant shall refrain from directly or indirectly publicly commenting on his case without prior approval of the Court.

Mr. Worrell is accused of violating his condition of directly or indirectly publicly commenting on his case without the court's prior approval. Dkt. 151 p. 3. This is in reference to Mr. Worrell speaking at a County commissioners meeting, and does not conform with the definition of a case.[2] Mr. Worrell's case involves what he is alleged to have done in Washington D.C. on January 6, 2021.

At no point in time did Mr. Worrell discuss any facts surrounding his case.[3] He spoke of tangential issues like being mistreated at the D.C. Jail. Mr. Worrell's time at the D.C. Jail has no direct connection to January 6 and forms the basis for possible civil suits. While the defense concedes Mr. Worrell may have exercised poor judgment in his choice of words at the Collier County Board of County Commissioners Meeting April 26, 2022, political prisoner is the moniker bestowed upon the January 6 defendants housed at Washington DC-CTF by the jail staff.

Like most January 6 defendants, Mr. Worrell has experienced extensive difficulty locating legal representation. As such, he was pleading with his elected officials for help in addressing violations to his constitutional rights concerning tangential issues unrelated to his criminal case. Therefore, while Mr. Worrell may have exercised poor judgment in his choice

---

[2] *Case*, Black's Law Dictionary (11th ed. 2019) A civil or criminal proceeding, suit, or controversy at law or in equity.

[3] https://www.facebook.com/CollierGov/videos/418838580118069/ (40:21 mark)

words because this was a plea for help concerning a potential future civil suit, this was not a direct or indirect reference to his criminal case and should not be viewed as a violation of his conditions of pretrial release.

Second, the government is arguing Mr. Worrell violated his conditions of release because he had an unscheduled two hour visit at District 80 Florida House Representative Lauren Melo's office on June 15, 2022. Dkt. 151 p. 3. Mr. Worrell never left the Middle District of Florida (MDFL). In fact, he never even left Collier County. For every instance where he may have had a conflict with his curfew or he would have an extended trip, he, Trish Priller, his third-party custodian, or both contacted Tad Parks to seek approval. This also includes text messages from Mr. Worrell to Mr. Parks taking place in real-time where Mr. Worrell was informing Mr. Parks that he was rushing home to charge the battery on his GPS monitoring device because Mr. Worrell was concerned the battery might die.[4] Mr. Worrell was taking proactive steps to inform Pretrial Services of what was transpiring to avoid a situation where he might be deemed to have violated his conditions of Pretrial Release. This Court has amended Mr. Worrell's conditions of release to address scenarios like this where Mr. Worrell might not be able to timely or adequately notify Pretrial Services. Therefore, because Mr. Worrell never left the MDFL on June 15, 2022, and there was no violation of his curfew, there was no violation of his conditions of pretrial release pertaining to this private meeting with his elected representative.

*This portion of page intentionally left blank*

---

[4] See text messages attached as Exhibit A

**B.  Not have any contact with any other persons or organizations involved in the January 6 Capitol event after returning to the district where he will be supervised, except with their legal defense teams or as otherwise authorized by Pretrial Services**

Next, the government contends Mr. Worrell violated his conditions of release based on his attendance at a political rally on public property in front of the Pinellas County Jail on July 14, 2022. Dkt. 151 p. 3. Pinellas County Jail is within the boundaries of the MDFL and Mr. Worrell did not violate his 19:00 curfew. Mr. Worrell met with a lawyer in good standing and licensed to practice in Florida while in attendance at the rally in accordance with the message Ms. Priller left with Pretrial Services.[5] If Mr. Worrell had contact with Mr. Brett while in attendance it was de minimis, and consisted of a basic acknowledgement, a common courtesy in civil society. However, despite the extensive surveillance system and Detective Mauro's active surveillance where he was able to identify Mr. Worrell, Mr. Brett, Mr. Brett's girlfriend, their respective vehicles, the cloths they were wearing, and take pictures of Mr. Worrell and Mr. Brett individually, there are no pictures of the two men together. Dkt. 151-2 p. 7-8.

Mr. Worrell resides in Naples, Florida while Mr. Brett lives roughly 170 miles north of him in Clearwater, Florida. Thus, there is no way Mr. Worrell could have known Mr. Brett would be in attendance. The Republican Liberty Caucus (RLC) was holding a rally for Jeremy Brown, a citizen who is running for the Florida House of Representatives and who is endorsed by the RLC. The RLC is not an organization connected with the events on January 6. Additionally, while Mr. Brown may have called into the rally, Mr. Brown had been detained without bond or bail for 288 days as of July 14, 2022, and there was no possibility he could show up. Therefore, because Mr. Worrell never left the MDFL, there was no violation of his curfew,

---

[5] See Attachment B – Affidavit for Christopher Hedges

Pretrial Services was forewarned that Mr. Worrell would be travelling to Pinellas County, Mr. Worrell met with an officer of the court, there is no tangible proof that there was anything more than a general salutation between Messrs Worrell and Brett, and there was no foreknowledge of a prohibited group or person that would be present, there was no willful violation of any condition of pretrial release concerning Mr. Worrell's attendance at the event on July 14.

### C.  The use of the computer

Defendant Worrell made this submission in prior Docket entry 137.  But for purposes of this Response, re-states as follows:

The Defendant was working with his third-party custodian for purposes of completion and submission of his weekly schedule.[6]  The previously submitted schedule was denied, and Worrell was re-drafting and preparing the same.  This completion and re-submission was done while Worrell was on the phone simultaneously with Pre-trial services Officer Tad Parks.  All submissions were done with Worrell's third-party custodian present and with her supervision.

More specifically, on the morning of 12/23/21, Priller became aware of the new order setting conditions of release.  Priller immediately forwarded the Order to Pretrial Services Officer Parks, knowing Priller had just sent Worrell's new schedule (due by noon the same day) and due to being concerned about not being compliant with the new conditions.

Worrell then immediately called Parks with questions pertaining to his submitted schedule at which time Parks advised Worrell his schedule was denied.  During his conversation with Parks, Priller/Worrell was actively changing the schedule to comply with the new order.

Priller/worrell also emailed Parks asking if last week's previously approved schedule needed to

---

[6] We concur that the Order does not allow internet access, including social media and email, except for use with his legal defense team or as authorized by Pretrial Services. Worrell was not "online," or using the internet

be modified as they wished to attend a Christmas dinner until 9:30 p.m.  Parks advised that the schedule needed to comply as of December 22, 2021 (the date of new Order).

As Worrell was – with the presence of his third-party custodian – preparing a new, updated schedule via Microsoft office, this Court should find no violation, or that the violation was de minimis.

The third-party custodian has already placed passwords as well as fingerprint only access to the computer (which has been previously shown to Parks).  Worrell has no access to any computer without the third-party custodian approval/fingerprint.  Additionally, Worrell was utilizing Microsoft Office – more specifically, Excel[7] – to prepare his new, updated weekly schedule.  Respectfully, this Court has imposed conditions, Worrell understands those conditions, and there are no other conditions which could be imposed which would minimize or avoid the perceived risk of violation.

### D.  TRISH PRILLER AS THIRD-PARTY CUSTODIAN

The parties are aware that the Court has tremendous latitude – generally speaking – in imposing conditions on convicted defendants released on probation or parole.  Courts can impose reasonable conditions in pretrial release.

In *US v. Collins (11-CR-471 N.D. Cal. Mar. 16, 2012)* several defendants were indicted for interfering with PayPal computers (via a distributed-denial-of-service attack), as retaliation for PayPal's blocking of service to Wikileaks. The court upheld a pretrial release condition barring the defendants from using Internet Relay Chat (IRC), because the defendants had used IRC to coordinate their attacks:

---

[7] The Defendant was utilizing the equivalent of excel, a sub-program within office, to create a schedule as for the upcoming week; Worrell did not have access to the preformulated provided document from pretrial services, and admittedly, cannot – without permission – travel to obtain the same from probation.

> While any limitation on free speech must be imposed cautiously, and each defendant retains the presumption of innocence during the pretrial period, the IRC restriction in this case furthers a compelling government interest in protecting the public from further crimes coordinated through a means specifically addressed by the grand jury in the language of the indictment. The condition operates in a content-neutral fashion. The condition does not restrict political or any other discourse by any other means, even by use of other internet services such as email, blogging services such as Tumblr, chat other than IRC, or social networks such as Facebook or Google+. All of this suggests to the court that a restriction on IRC use, while permitting substantial internet use for purposes that include political discourse, strikes a reasonable balance between the legitimate and yet competing interests of the parties....

The court also notes that the condition does not impose any burden greater than associational and other First Amendment-impacted restrictions routinely imposed by courts as a condition of pretrial release. *See, e.g., United States v. Spilotro,* 786 F.2d 808, 815-816 (8th Cir. 1986)

But the court set aside the Twitter use condition:

> The indictment makes no mention of Twitter whatsoever.... In the absence of any indictment charge, any evidence, or even any specific proffer of such illicit activity [using] Twitter, the court is not persuaded that the restriction advances any legitimate interest in protecting the public's safety or prevent any defendant from fleeing. Under these circumstances, any illicit use of Twitter by any defendant may be adequately addressed by the monitoring approved elsewhere in this order.

(*See also U.S. ex rel. Means v. Solem, 440 F.Supp. 544* (D.N.D. 1977), which struck down a much broader, content-based speech restriction.)  Arguably, Ms. Priller is not subject to conditions of pre-trial release and entitled, therefore, to her opinion.  Should the Court impose conditions on Ms. Priller, the undersigned asks, respectfully, the Court do so in the least imposing manner.  Additionally, there is no other suitable replacement, and to lose Ms. Priller would detrimentally affect the defense and his ability to consult with his client, and would certainly stifle any ability to prepare.

## CONCLUSION

Since November 4, 2021, Mr. Worrell has undergone five rounds of chemotherapy and he may be required to undergo additional treatments to address his advanced staged Non-Hodgkins

Lymphoma. He has also scheduled medically necessary oral surgery.[8] Mr. Worrell has provided

no reason for anyone to believe he will fail to appear or that he would be a danger to the

community. In attempts to ensure he complied with his existing obligation to attend scheduled

court hearings in conjunctions with the complications of scheduling a meeting that requires the

attendance of the dentist, surgeon, and laboratory professionals resulted in Mr. Worrell

scheduling his oral surgery for September 14, 2022.

Pretrial Services bookended its most recent claim concerning July 14 with incidents it

failed to report for 92 days and 57 days respectively on one side and with an incident this Court

has already ruled upon on the other. Conversely, Mr. Worrell has never failed to appear before

this Court since his release on November 4, 2021, the pretrial conditions of release imposed upon

Mr. Worrell go beyond what the D.C. Circuit articulated should be imposed in *Wood v. United*

*States*. The conditions are also not the least onerous conditions as the court emphasized in *United*

*States v. Melville*. For these reasons the defense humbly requests the Court look to Mr. Worrell's

track record for appearing as well as his proactive approach when communicating with Pretrial

Services, and reject the allegations put forward by Pretrial Services.

Based on the foregoing reasons, Mr. Worrell[9] respectfully requests this Honorable Court

receive this explanation and take no action.

ALEX R. STAVROU, ESQ.
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
Physical address:
4908 Busch Blvd, Suite 204
Tampa, Florida 33617

Mailing:
13046 Racetrack Road, #333

---

[8] The Doctors "note" and Affidavit of Dr. Reed are attached as Exhibit C.  They articulate the medical necessity of the major surgery and the recovery time.
[9] Mr. Worrell wished to address the Court.  The letter is Attached as Exhibit D.

Tampa, Florida 33626
Phone: 813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing Amended Response to Pretrial Services Report of July 28, 2022, was sent via ECM filing to the United States Attorney Office (AUSA Will Dreher), and to the Clerk of District Court, on this 17th day of August, 2022.

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
4908 Busch Blvd, Suite 204
Tampa, Florida 33617
Phone: 813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com

# EXHIBIT "A"





















# EXHIBIT "B"

## <u>Affidavit Concerning Mr. Worrell's Presence at the</u>
## <u>Republican Liberty Caucus's Event on July 14, 2022</u>

I, Christopher Hedges, the undersigned, state the following facts are true:

1. I am over the age of eighteen (18), am a resident of the State of Florida, have personal knowledge of the facts herein, and, if called as a witness, could testify competently thereto.

2. I am a lawyer, Florida Bar # 1033467, licensed to practice in Florida and my license is in good standing.

3. I have been providing Mr. Worrell with limited pro bono legal services for roughly three months.

4. Prior to July 14, 2022, Mr. Worrell contacted me to check my availability for the date in question because he had some questions he wanted to address in person.

5. I informed Mr. Worrell I had several prior obligations but told him I would be at the Pinellas County Jail for an event put on by the Republican Liberty Caucus and we could speak there if that was acceptable.

6. I believe I arrived at the Pinellas County Jail between 11:15 and 11:30 AM on July 14, 2022.

7. When I arrived, I located Mr. Worrell at the northern most portion of where the event was taking place, standing in close proximity to some tables that were setup.

8. Mr. Worrell and I spoke there until more people arrived and then we relocated further away from the gathering and closer to 49th Street.

9. To the best of my recollection, Mr. Worrell and Mr. Brett did not interact.

10. I left the event just as Mr. Brown was calling in to speak to the crowd. However, I do not know what time that was exactly.

In compliance with Florida Statute § 92.525(2), under penalty of perjury, the undersigned has read the foregoing Affidavit and the facts contained herein are true and correct.


_____
Signature

Christopher Hedges

# EXHIBIT "C"
## (Has been Ordered as filed under seal)

# EXHIBIT "D"

Honorable Judge Royce Lamberth,

I am writing today to offer a heartfelt apology to you and the court.

Political Prisoner is a title that was thrust upon myself and the other January 6 defendants by the staff of the DC DTF Jail while I was detained there for 206 days. The staff ensured we knew on a daily basis we were there because of who we voted for and supported. They made this point crystal clear and the way the January 6 defendants were treated guaranteed we would never forget it.

I was thrown in the "hole" for sixteen days due to my persistent advocacy by way of the jail's grievances system. While in the hole on Thursday, October 14, 2021, in the early morning hours, I was visited by a guard I did not recognize because he concealed his identity behind a mask. This anonymous jail staffer's threat to me was, "You guys messed up. You're gonna be in here a long time. Just watch out!"

This incident transpired the day after you held Warden Wanda Patton and District of Columbia Department of Corrections Director Quincy Booth in contempt of court related to the various forms of abuse I was subjected to, concerning misconduct and deprivation of medically necessary healthcare services.

At 2:30 a.m. on Monday, October 18, 2021, I was visited by a Lieutenant Alan, a man I had never seen prior to that early morning visit. Lieutenant Alan came to my cell explicitly to inform me that "[I wasn't] very safe in here." He left as soon as he delivered his ominous threat.

I would like for you to know that I do not take lightly the generosity the Court exhibited in November 2021. I have been diligent about addressing my various issues because I am well aware of the lack of time and certainty I face, due to my current legal proceedings.

First, I have undergone five rounds of chemotherapy that ended in mid-May, which was only possible because the medication was donated, a kindness that will not be able to be repeated. Next, two teeth were extracted, in addition to some bone grafting. This was performed as two separate procedures and were necessary test cases to determine how I would heal to evaluate the drastically more invasive oral surgical procedures that I would need to undergo. The tooth extracted from the left side was chosen because that tooth was broken in the DC Jail and never addressed because inmates at the jail do not receive outside medical attention for dental procedures. The tooth extracted from the right side was removed after I healed from the first procedure. Unfortunately, the time needed to heal took longer than anticipated due to the complications arising from my overall health situation.

With those first two test cases completed, I am now facing a major bone grafting of my lower jaw in hopes of stopping the bone deterioration and the need for a possible prosthetic jaw replacement. After healing from when the surgical procedure is complete, I will require additional chemotherapy because within a month of finishing my previous regiment of chemotherapy many symptoms have not simply returned but have shown to be more aggressive.

My reason for addressing my County Commissioners was to beg for assistance from anyone that was willing to listen. Despite my best efforts I had been unable to locate an attorney who would be willing to speak with me, let alone represent me for my civil proceedings. The complications surrounding my conditions of pretrial release have complicated my circumstances because I must rely on the charity of others to address the exorbitant costs of medical treatment. However, I was very careful not to mention anything related to my indictment, the facts of my criminal case, or the criminal charges.

I recognize how my statement offended your Honor and the Court, but that was never my intention. At no time was I intending to say my situation was the fault of the Court or your Honor. If anything, your Honor liberated me from the subhuman conditions that were imposed upon me and the other January 6 defendants who are still being held in the DC Jail. I understand my statement may have come across as disrespectful to yourself and the Court, however, that was never my intention.

I am grateful to you for sending me home in November 2021 so I had the opportunity to pursue the genuine medical attention I desperately needed. Please accept my humblest of apologies and know that I will not be making any future public statements.

Christopher Worrell