**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**
**WASHINGTON D.C.**

**UNITED STATES OF AMERICA,**
      **Plaintiff,**
Vs.                        **CASE NO.: 1:2021-CR-00292-RCL-1**

**CHRISTOPHER J. WORRELL,**
      **Plaintiff.**
_____/

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AS DEFECTIVE

      The Defendant, Christopher Worrell, by and through his counsel, tenders this motion to dismiss all charges within the Second Superceding Indictment as defective for lack of specificity and failure to state an offense, pursuant to Federal Rules of Criminal Procedure Rule 12b. A brief in support is being submitted simultaneously with this Motion.

Dated: September 15, 2022

                                                              Respectfully Submitted,

                                                              *ALEX R. STAVROU, ESQ.*
                                                               ALEX R. STAVROU, ESQUIRE
                                                               Alex R. Stavrou, P.A.
                                                               Physical address:
                                                               4908 Busch Blvd, Suite 204
                                                               Tampa, Florida 33617
                                                               Mailing:
                                                               13046 Racetrack Road, #333
                                                              Tampa, Florida 33626
                                                              Phone:       813-251-1289x1
                                                              Fax: 813-489-2528
                                                              Florida Bar No. 0108390
                                                              Alex@alexstavrou.com

## Certificate of Service

      I HEREBY CERTIFY, that a true and correct copy of the foregoing was sent via ECM filing to the United States Attorney Office for the District of Columbia on this 18th day of September, 2022.

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
4908 Busch Blvd, Suite 204
Tampa, Florida 33617
Phone:      813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**
**WASHINGTON D.C.**

**UNITED STATES OF AMERICA,**
　　　　**Plaintiff,**
Vs.　　　　　　　　　　**CASE NO.: 1:2021-CR-00292-RCL-1**

**CHRISTOPHER J. WORRELL,**
　　　　**Plaintiff.**
_____/

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE SECOND SUPERCEDING INDICTMENT AS DEFECTIVE

Defendant, Christopher Worrell (Mr. Worrell), by and through counsel, pursuant to Rule 12(b)(ii),(iii), and (v), requests that this Court dismiss all the charges against Mr. Worrell because they lack sufficient specificity. Mr. Worrell moves the Court to dismiss the Second Superceding indictment as to Counts two, four, six, and thirteen, for failure to state an offense as pepper spray gel, as a matter of law, is not a deadly or dangerous weapon. Finally, Mr. Worrell moves the Court to dismiss as least Counts two, four, and six because they are multiplicitous, as well as Counts eight are likewise multiplicitous.

**I. FACTUAL BACKGROUND**

Mr. Worrell was arrested in the Southern District of Florida after an arrest warrant was issued in Washington, D.C., for his alleged conduct at the Capitol on January 6, 2021. According to the special agent's investigation, Mr. Worrell appeared in a montage of images in front of the U.S. Capitol in a tactical vest and his apparent use of pepper spray towards an unknown target.

Mr. Worrell is alleged to have discharged saber red pepper gel.

The Second Superceding indictment alleges Mr. Worrell traveled to and potentially participated in the riot at the U.S. Capitol on January 6, 2021. Mr. Worrell is charged with Count One - Obstruction of an Official Proceeding and Aiding and Abetting, 18 U.S.C. 1512(c)(2); Count two, 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon; Count four, Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A); Count six, Engaging in Physical Violence in a Restricted Building or Grounds, Using a Deadly or Dangerous Weapon, 18 U.S.C. 1752(a)(4) and (b)(1)(A);  Count eight, Act of Physical violence in the Capitol Grounds or Buildings, 40 U.S.C. 5104(e)(2)(F); Count ten, Civil Disorder, 18 U.S.C. § 231(a)(3); Count Thirteen, Assaulting, Resisting, or Impeding Certain Officers Using a dangerous weapon, 18 U.S.C. §§ 111(a)(1) and (b).

## II. LEGAL STANDARD

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," including for "lack of specificity" and "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii), (v). "[A] pretrial motion to dismiss an indictment allows a district court to review the sufficiency of the government's pleadings, but it is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Mosquera-Murillo*, 153

F. Supp. 3d 130, 154 (D.D.C. 2015) (citation and internal quotation marks omitted). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009).

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). The notice requirement "is established in the Sixth Amendment, which provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]'" *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017) (quoting U.S. Const. Amend. VI). "A valid indictment also preserves the Fifth Amendment's protections against abusive criminal charging practices; specifically, its guarantees that a criminal defendant can only be prosecuted for offenses that a grand jury has actually passed up on, and that a defendant who is convicted of a crime so charged cannot be prosecuted again for that same offense.

*Id.*

For an indictment to have sufficient specificity, "the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *Id.* at 72. An indictment that is drawn in the generic words of a statute and that fails entirely to describe in any meaningful way the alleged acts of the defendant that constitute the offenses charged is insufficient to notify a defendant of the nature of the accusations against him. *Id.* at 73.

An indictment must be viewed as a whole and the allegations must be

accepted as true in determining if an offense has been properly alleged. *United States v. Bowdin*, 770 F. Supp. 2d. 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

In regard to multiplicity, the law protects defendants against multiplicitous indictments to avoid multiple sentences for a single offense and prevent prejudice which such overbearing indictments may generate in the eyes of a jury. *United States v. Phillips*, 962 F. Supp. 200, 202 (1997). When an indictment charges multiple offenses arising from the same conduct it "may falsely suggest to a jury that a defendant has committed not one but several crimes" and falsely suggest the defendant must be guilty of at least some of them. *Id*. This prejudicial practice threatens to pose significant threats to the proper functioning of the jury system. *Id.*

An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Brown*, No. 07-cr-75, 2007 WL 2007513, at *6 (D.D.C. July 9, 2007).

### III. ARGUMENT

The indictment against Mr. Worrell is defective for multiple reasons. *See* Second Superceding Indictment as to Christopher Worrell. The indictment is entirely deficient in regard to specificity, lacking almost any details specific to the allegations against Mr. Worrell apart from restating the language of the statute.

Critically the indictment lacks specificity in the key area of describing Mr. Worrell's conduct that would satisfy the elements of the offenses charged, failing to give Mr. Worrell fair notice. The indictment is also defective with regard to any enhancements for the use or carrying of a deadly or dangerous weapon because as a matter of law, pepper spray gel is not a deadly or dangerous weapon. Finally, the indictment is defective because it has mulitplicitous charges for the same offense, and the Government must choose which charges to bring or else risk unconstitutionally biasing the jury.

For these reasons, when considering the four corners of the indictment, the face of the indictment, and the language of the charges, the indictment is defective in violation of the Federal Rules of Criminal Procedure Rule 7, and Mr. Worrell's Fifth and Six Amendment rights. Accordingly, this indictment therefor must be dismissed.

### A. Mr. Worrell's Second Superceding Indictment Charges Lack Specificity to Such a Degree as to Render the Second Superceding Indictment Impermissibly Vague

Pretrial motions to dismiss for lack of specificity in the indictment are appropriate under the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 12(b)(3)(B)(iii). An indictment is sufficient if it, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. The indictment may

use the language of the statute, but must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged. *Hillie*, 227 F. Supp. 3d at 72. An indictment that is drawn in the generic words of a statute and that fails entirely to describe in any meaningful way the acts of the defendant that constitute the offenses charged is insufficient to notify a defendant of the nature of the accusations against him. *Id.* at 73.

The Second Superceding indictment against Mr. Worrell fails to describe in any meaningful way the acts that constitute the offense charged. *See* Indictment as to Christopher Worrell. The language in the Second Superceding indictment, exactly mirrors the language of the statute but is not "supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *See id.*; *see also*, *Hillie*, 227 F. Supp. 3d at 72. This lack of fair notice fails to meet the burden posed to the government and without correction by the Court would deprive Mr. Worrell of fair notice of the charges alleged.

The Second Superceding indictment does not describe the "what, where, or how" of Mr. Worrell's conduct that led to the charges. *See id*. The Second Superceding indictment does not describe what restricted grounds Mr. Worrell entered. The Second Superceding Indictment as to Christopher Worrell (Count Two). The Second Superceding indictment does not discuss what disorderly or disruptive conduct Mr. Worrell engaged in, nor his intent to do so. Second Superceding Indictment as to Christopher Worrell (Count Four). The

indictment does not discuss who Mr. Worrell engaged in an act of physical violence, nor the manner in which these events allegedly occurred. Second Superceding Indictment as to Christopher Worrell (Count Six and Eight). The Second Superceding indictment does not discuss how Mr. Worrell allegedly committed or attempted to obstruct, impede, or interfere with a law enforcement officer, nor does it describe or identify which Law enforcement officer, Mr. Worrell allegedly committed this crime against. Second Superceding Indictment as to Christopher Worrell (Count Ten). The Second Superceding indictment does not discuss how Mr. Worrell allegedly forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with an employee of the United States, nor does it describe which officer or employee of the United States this charge refers to. Indictment as to Christopher Worrell (Count Thirteen).

  The charges in the indictment lack any specificity with which Mr. Worrell could be aware of his conduct which led to the charge and formulate a defense. The indictment is constitutionally deficient due to its lack of specificity, and must be dismissed. *See* Hillie, 227 F. Supp. 3d at 71.

>  **B. The Second Superceding Indictment Is Defective as Charges, Two, Four, Six, and Thirteen, Fail to State an Offense as Pepper Spray Gel is Not a Dangerous Weapon Under Law.**

  Counts two, four, six, and thirteen should also be dismissed with regard to their enhancement for the carrying or use of a deadly or dangerous weapon. As a matter of law, pepper spray gel is not a dangerous weapon under the statute. *See*

Fed. R. Crim. P. 12(b)(3)(B)(v).

### 1. Sabre Red Pepper Spray

"Pepper spray" is used by thousands of police departments, prisons, and for personal self-defense as non-lethal, non-dangerous method of seeking arrest compliance.

Sabre Pepper Gel is a product made with an all-natural substance in cayenne peppers called oleoresin capsicum (OC).  Said spray is designed (and therefore necessary) to be sprayed ear to ear directly across the eyes.  Any other contact does not yield any effects to the recepient of being sprayed (nor does it "penetrate" clothing to yield any results).  Sabre's website indicates the spray is not any more effective than hand-to-hand self defense techniques.  Sabre indicates:

> *"Pepper spray and pepper gel products will have temporary effects on those who are sprayed but will not cause permanent damage…"*

In fact, and generally, removal of the gel is done by using water and/or soap and water.

Federal aviation regulations allow these products to be stored in checked luggage. Interestingly, the United States Capitol Police discuss what is prohibited on the grounds and into Capitol buildings.  The website states "pursuant to the United States and district of Columbia Criminal Codes, firearms, dangerous weapons, explosives, or incendiary devices are prohibited on *U.S. Capitol Grounds (*emphasis added).  Prohibited items in the U.S. Capitol & Capitol Visitor Center (i.e., the buildings) include "weapons," and specifically itemizes "mace and

pepper spray." Clearly, had United States and District of Columbia Codes, as well as the United States Capitol Police wished to prevent the carrying of pepper spray or mace on Capitol grounds, they would have specifically stated it as such. Mace and pepper spray therefore, are permitted to be carried on Capitol grounds, just not inside any Capitol buildings. Prohibited Items | United States Capitol Police.[1]

### 2. The United States Sentencing Guidelines provide the only guidance for a definition of whether mace is a deadly or dangerous weapon.

18 U.S.C. § 1752 contains no definition for deadly or dangerous weapon. *See* 18 U.S.C. § 1752. As such, the definition should come from the most commonly understood definition, which appears in the Sentencing Guidelines. *See* U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n.1(E) (U.S. Sentencing Commission 2018); *see also id* § 2A2.2 cmt. N.1. The Government appears to have previously conceded to this definition as the Government has previously cited to cases using this exact same definition in claiming that pepper spray is a dangerous weapon. (*See* Gov't Supplemental Mem. in Opp'n to Emer. Mot. for Recons. at 2).

A dangerous weapon is defined as an object or weapon that must be likely to cause "serious bodily injury" such as "*extreme* physical pain or the *protracted impairment* of a function of a bodily member, organ, or mental facility; or requir[e] medical intervention such as *surgery, hospitalization*, or *physical rehabilitation*."

---

[1] The undersigned has found no information that in anticipation of January 6, 2021, the United States Capitol Police or any other party with authority to do so, banned the carrying of mace on Capitol GROUNDS. Which also begets the question, is the discharge of the same lawful? The rhetorical question clearly would be "Why would it be lawful to carry on the grounds, but unlawful to discharge the same?"

*United States v. Perez*, 519 F. App'x 525, 528 (11th Cir. 2013) (citing U.S.S.G. § 1B1.1, comment. (n.1(L)) (emphasis in original). Pepper spray does not meet this statutory definition of a dangerous weapon.

Finding pepper spray to be a dangerous weapon requires a case-specific factual showing by the Government. *Perez*, 519 F. App'x at 529. The Eleventh Circuit held that the Government's reliance on the pepper spray's label and marketing materials was insufficient to show the spray was a dangerous weapon. *Id* at 528. The Court rejected the Government's reliance of the pepper spray's label holding "a label created by the manufacturer of a substance is not particularly reliable evidence given its self-serving nature." *Perez*, 519 F. App'x at 528 (citing *United States v. Harris*, 44 F.3d 1206, 1216 (3rd Cir. 1995) (concluding that promotional pamphlet provided an inadequate basis for concluding that the pepper spray in question was a dangerous weapon)). In this case, the Government relied on statements on the product website which make broad claims about the product's power. Just as in *Perez* the government has based their findings on self-serving advertising material that fails to act as reliable evidence. *See id*. The Government has failed to make any assertion within the indictment that the spray at issue meets the statutory definition of a dangerous weapon. *See* Second Superceding Indictment as to Christopher Worrell. Without a case specific factual showing the pepper gel at issue in this case cannot be considered a dangerous weapon and the Government's reliance on advertising material fails to meet the case specific

factual showing standard. *Perez*, 519 F. App'x at 528.

The Eleventh Circuit further held that:

> Neither a brand name nor a warning label, alone or taken together, establishes that a weapon is a "dangerous weapon"... the warning on the canister's label does not establish that the contents of the canister are capable of inflicting a serious bodily injury. The fact that someone may have to wash an affected area for 15 minutes or seek medical attention does not establish that the spray could cause "extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental facility; or requir[e] medical intervention such assurgery, hospitalization, orphysical rehabilitation."

*Perez*, 519 F. App'x at 528." *Id.* (emphasis in original).

The Eleventh Circuit identified pepper spray by its very nature is not designed to function as a dangerous weapon in its typical use. The District of Columbia Court should follow the holding of the Eleventh Circuit. Pepper spray is designed not to cause protracted impairment or require surgery, hospitalization, or physical rehabilitation. *How Dangerous Is Pepper Spray?*, National Capital Poison Center, https://www.poison.org/articles/how-dangerous-is-pepper-spray-201 (last accessed Apr. 6, 2021. Pepper spray can indeed irritate the eyes, nose, or mouth but these symptoms are usually mild and temporary, typically lasting minutes to hours. *Id.* Pepper spray generally requires washing the affected area with water to alleviate the effects but does not generally require surgery, hospitalization, or physical rehabilitation. *Id.* The effects of pepper spray do not rise to the level of requiring medical intervention such as surgery, hospitalization, or physical rehabilitation in their ordinary use and therefore are properly classified outside the

statutory definition of a "dangerous weapon." *Perez*, 519 F. App'x at 528.

The Government primarily relies on other circuits, such as the Sixth and Ninth Circuits, which have concluded, based on the individualized facts of those cases, that pepper spray was a dangerous weapon in those cases. *See United States v. Neill*, 166 F.3d 943, 949 (9th Cir. 1999) (discussing the effects on those with an underlying condition); *United States v. Melton*, 233 F. App'x 545, 547 (6th Cir. 2007) (unpublished) ("[B]ased on the severe and probable effects that pepper spray has on the human body, the district court's determination that pepper spray constitutes a 'dangerous weapon' was not erroneous.") However, Sixth and Ninth Circuit have not adopted sweeping decisions designating pepper spray a "dangerous weapon" in all cases. *See Neill*, 166 F.3d at 949, *Melton*, 233 F. App'x at 547. Even if the Court agrees with the reasoning in the Sixth and Ninth Circuit's cases the Court should still reject the Government's enhancements in this indictment as the Government failed to make a specific factual allegation as to how pepper gel in this case constitutes a dangerous weapon.

The 6th Circuit's holding in *Neill* was supported by "[e]vidence presented to the district court demonstrat[ing] that pepper spray is 'capable of inflicting death or serious bodily injury' and therefore satisfies the requirements of a dangerous weapon as defined in § 2B3.1(b)(2)(D)." 166 F.3d 943, 949. Specifically, the use of pepper spray in that case was shown to cause extreme pain based on the victim's testimony. *Id.* The court also heard evidence that the victim suffered protracted

impairment of bodily functions or organs because the victim testified that she had difficulty breathing for weeks. *Id.* at 950. In this case the Government has not offered any evidence that the alleged victim suffered a protracted impairment of bodily function. Further, the Government has failed to even produce a victim or any evidence that any individual was hit by the pepper gel spray allegedly discharged by Mr. Worrell.

Similarly, the Fifth Circuit found pepper spray to be a dangerous weapon only where the victim complained of protracted effects of the pepper spray, including sustained blindness in one eye requiring multiple follow-up visits to doctors. *United States v. Douglas*, 957 F.3d 602, 604 (5th Cir. 2020). Again, there is no victim identified in Mr. Worrell's case and no allegation the pepper gel caused any abnormal injuries other than potential irritation of the eyes that could be tended to without medical personal.

Pepper spray is undoubtedly painful, designed to incapacitate attackers temporarily. However, it is not capable of, nor likely to, cause the kind of extreme pain or serious bodily injury required to be classified as a deadly or dangerous weapon. *Perez*, 519 F. App'x at 528. The Government has failed to offer evidence that the pepper spray could or did cause serious bodily injury, aside from the labels and marketing of the brand of pepper spray Mr. Worrell is alleged to have discharged. There is nothing in the indictment which indicates that the pepper spray can or did cause extreme physical pain or protracted impairment of a bodily

function or require medical intervention such as surgery, hospitalization, or physical rehabilitation. Therefore, this Court should find that, as a matter of law, pepper spray is not a dangerous weapon and dismiss the counts in the indictment which contain this enhancement.

### C. THE INDICTMENT IS DEFECTIVE BECAUSE THERE ARE MULTIPLICITOUS CHARGES AIMED AT PREJUDICING MR. WORRELL BEFORE THE JURY.

The law guards against multiplicitous charges as bringing multiple charges for the same action threaten to improperly bias the jury and can also implicate double jeopardy concerns. *See Phillips*, 962 F. Supp. at 202. Mr. Worrell moves to dismiss the multiplicitous charges in the indictment pursuant to Federal Rules of Criminal Procedure Rule 12(b)(3)(B)(ii). An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *Brown*, No. 07-cr-75, 2007 WL 2007513, at *6.

In the present case, the indictment's Counts two, four, and six all refer to the same offense and are, therefore, multiplicitous. All of these charges seemingly refer to Mr. Worrell's alleged presence at the Capitol Grounds on January 6. As a result, the Government must now choose between these three charges and select one to proceed with the prosecution or risk unfairly prejudicing Mr. Worrell before the jury.

Similarly, Counts two, four, and six all refer to the same alleged conduct.

This appearance of multiplicity could perhaps could result from the aforementioned lack of specificity, but presently, it appears that Mr. Worrell is only alleged to have engaged in a single act of violence. Three charges for the same single offense is multiplicitous and violative of Mr. Worrell's rights.

These multiplicitous charges make the indictment constitutionally defective, and thus dismissal is warranted.

### IV . CONCLUSION

Viewing the indictment, considering all the facts alleged to be true, and considering the document as a whole, the indictment is defective. The indictment lacks specificity throughout, fails to state an offense with regard to the deadly or dangerous weapon enhancements, and has multiple charges for the same offense. As a result of these defects, the indictment is constitutionally deficient and dismissal by this Court is warranted.

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
Physical address:
4908 Busch Blvd, Suite 204
Tampa, Florida 33617

Mailing:
13046 Racetrack Road, #333
Tampa, Florida 33626
Phone:      813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com

## Certificate of Service

      I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via ECM filing to the United States Attorney Office (AUSA Will Dreher), and to the Clerk of District Court, on this 18th day of September, 2022.

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
4908 Busch Blvd, Suite 204
Tampa, Florida 33617
Phone:         813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com
