UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-292 (RCL) |
| | : | |
| CHRISTOPHER WORRELL and | : | |
| DANIEL SCOTT, | : | |
| | : | |
| Defendants. | : | |

MOTION IN LIMINE REGARDING
AUTHENTICATION OF PHOTO AND VIDEO EVIDENCE

The government hereby moves *in limine* regarding the authentication of photo and video

evidence under Federal Rules of Evidence 104, 901, and 902. The government has provided

Defendants with photos and videos it plans to introduce at trial, but if no agreement regarding this

evidence can be reached, the government seeks a pretrial ruling from the Court finding that the

categories of photo and video evidence detailed herein may be properly authenticated and admitted

using the methods outlined below, assuming sufficient foundation is laid at trial regarding

authenticity.   Except for video evidence from the Senate Recording Studio, which is self-

authenticating under Federal Rule of Evidence 902, the government does not, in this motion, seek

a ruling that any particular exhibits are authentic or admissible.

BACKGROUND

The riot at, and attack on, the United States Capitol building was an event of unparalleled

size and scope. Much of the event was recorded on video: on surveillance footage captured by the

U.S. Capitol Police ("USCP") cameras; on Metropolitan Police Department ("MPD") body-worn

cameras; and on phones and cameras carried by those within the crowd that engulfed the Capitol.

The government's case will rely on such evidence to explain the Defendants' specific conduct, to

1

contextualize this conduct through other contemporaneous events, and to give the jury a sense of the riot as a whole. This memorandum outlines the types of exhibits the government plans to use and seeks a pretrial ruling on the methods of authentication outlined below.

"As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial." *United States v. Blackwell*, 694 F.2d 1325, 1329 (D.C. Cir. 1982) (citations omitted). Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (1) *Testimony of a Witness with Knowledge*. Testimony that an item is what it is claimed to be.
> . . .
> (3) *Comparison by an Expert Witness or the Trier of Fact*. A comparison with an authenticated specimen by an expert witness or the trier of fact.
>
> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
> . . .
> (9) *Evidence About a Process or System*. Evidence describing a process or system and showing that it produces an accurate result.

Fed. R. Evid. 901(b)(1), (3), (4), (9).

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). *See also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's

burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases). *See also, e.g.*, *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *Vidacek*, 553 F.3d at 349. *See also, e.g.*, *Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See, e.g.*, *United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'") (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). The party seeking to admit evidence also need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability,

possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*,
608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C.
Cir. 1997)). *See, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining
that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have
depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to
skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the
accounts belonged to the defendants, and that the defendants were the authors of the posts about
using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity
even though "there was no testimony establishing that the recording equipment was reliable or that
the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is
not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the
government may rely upon otherwise inadmissible evidence in establishing the authenticity of the
video evidence described in this motion. *See, e.g.*, *United States v. White*, 116 F.3d 903, 914 (D.C.
Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible,
the government must introduce sufficient evidence at trial from which a reasonable juror could
reach the same conclusion regarding authenticity. *See, e.g.*, *United States v. Gammal*, 831 F. App'x
539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public
information to make its preliminary determination, it did not err because it did not do so in lieu of
the presentation of sufficient authenticating public evidence later at trial."); *United States v.
Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to
make a preliminary determination as to authentication, admit the evidence conditionally under

Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated.").

## ANALYSIS

The government's evidence will show that all videos described herein fairly and accurately depict events at the Capitol. While the government anticipates that the authentication and admission of footage from MPD, USCP, and Defendants themselves will not be controversial, we discuss the evidentiary basis for each below. The bulk of the government's argument thus focuses on authentication of videos taken by other attendees, the distinctive events and characteristics visible in those videos, and corroboration from other pieces of evidence. The videos presented in this motion are intended to be examples, not a comprehensive set of the videos or images the government plans to introduce at trial in any particular category. Except for video evidence from the Senate Recording Studio, which is self-authenticating under Federal Rule of Evidence 902, the government seeks a ruling only that the following methods of authentication are permissible methods of authentication that the government may rely upon at trial; the ultimate determination of authenticity of any particular exhibit is a question for the jury after the admission of evidence at trial, as discussed below.

### 1. U.S. Capitol Police Video Footage

Admission of footage from USCP's own systems is straightforward. If no stipulation with Defendants is reached, then the government will present a USCP witness to testify to their surveillance system. This witness will be able to explain how the system is used, that it reliably records and depicts the areas where USCP has installed cameras, and the internal characteristics of videos—such as date and time stamps—which allow USCP to identify and retrieve segments of video. Such evidence satisfies the requirement of Fed. R. Evid. 901(b)(4), which allows authentication by way of "the appearance, contents, substance, internal patterns, or other

distinctive characteristics of the item, taken together with all the circumstances." It also accords

with the requirements of Rule 901(b)(9), which allows authentication by "[e]vidence describing a

process or system and showing that it produces an accurate result."

The government may additionally elect to call a USCP witness who was present during the

attack on the Capitol to explain that the videos used by the government here are consistent with

the events that occurred, generally, on January 6, 2021.  If so, that would serve to authenticate the

footage based on the officer's personal knowledge. Fed. R. 901(b)(1) (allowing authentication by

"[t]estimony that an item is what it is claimed to be"). This is standard authentication for any

photograph or video. *See*, *e.g.*, *United States v. Patterson*, 277 F.3d 709, 713 (4th Cir. 2002) ("The

necessary foundation for the introduction of a photograph is most commonly established through

eyewitness testimony that the picture accurately depicts the scene in question[.]"); *United States*

*v. Rembert*, 863 F.2d 1029, 1026 (D.C. Cir. 1988) (noting one method of authentication occurs

where "a sponsoring witness (whether or not he is the photographer) who has personal knowledge

of the scene depicted testifies that the photograph fairly and accurately portrays that scene").

## 2.  Body-Worn Camera Footage from the Metropolitan Police Department

The admissibility of footage from body-worn cameras, worn by MPD officers on January

6, 2021, is likewise clear. Either the officer who wore the camera, or any other witness to the

events depicted in the video, can authenticate the video based on their personal knowledge that the

video fairly and accurately depicts the events that occurred pursuant to Rule 901(b)(1) as detailed

above.

If no stipulation with Defendants is reached, a witness present on the West Plaza where

law enforcement officers established a defensive line using bike racks—and where Defendant

Christopher Worrell deployed pepper gel against officers—will testify that the MPD body-worn

camera footage fairly and accurately depicts what occurred. Fed. R. 901(b)(1). The area where Worrell's assaultive conduct occurred can also be seen from an elevated USCP surveillance camera, and a comparison of this bird's-eye view of the assault with MPD body-worn cameras makes clear that they record the same areas during the same time period. Thus, the USCP footage corroborates the events recorded on body-worn camera and supports their admissibility. *See* Fed. R. Evid. 901(b)(4) (authentication by comparison with another authenticated specimen).

### 3. Senate Recording Studio Video of Electoral College Certification Process

The government also intends to introduce video evidence of the Joint Session of Congress that assembled on January 6, 2021 to declare the winner of the 2020 presidential election by reviewing and certifying the Electoral College ballots. Specifically, the United States Senate has an affiliated entity called the Senate Recording Studio that contemporaneously records Senate proceedings and distributes those recordings to the public. The Recording Studio is comprised of Senate TV, Hearing Rooms, and a Studio function. Senate TV is comprised of eight cameras which record activity occurring on the Senate floor. This footage is also broadcast through the Cable-Satellite Public Affairs Network (CSPAN). The Senate Studio can also capture contemporaneous footage of the House of Representative proceedings, used for broadcast, when there are joint sessions of Congress.

The Senate Recording Studio recorded the proceedings relating to the Electoral College Certification on January 6, 2021, up to the point when the rioters breached the Capitol Building itself and the Senate was forced into recess. After the rioters were cleared from the Capitol building, the Senate Recording Studio continued recording the Electoral College Certification process once the joint session resumed. The Senate Recording Studio also recorded rioters who

were present on the Senate floor during the recess. *See* https://www.senate.gov/floor/, last accessed

Nov. 7, 2022:



The Senate Recording Studio recorded at least three events relevant to this trial: Vice

President Michael Pence gaveling the session to order and reading from Senate Congressional

Resolution 1 and 3 U.S.C. § 17 in conjunction with the official proceeding of the Electoral College

Certification; the Senate being gaveled into recess, and resulting evacuation of the Senate Floor

Chamber, after rioters breached the building; and the Joint Session of Congress reconvening to

finish the Electoral College Certification hours later, after the rioters were cleared from the U.S.

Capitol. Screen captures of those events are shown below:

Electoral College certification proceedings:

 

Senate Floor when rioters breach the Capitol Building:

 

Joint Session when Congress reconvenes:



### *Self-Authentication under Rule 902*

The Congressional videos from the Senate Recording Studio are self-authenticating and should be admitted on that basis. Federal Rule of Evidence 902 governs the authentication of evidence that is "self-authenticating." Rule 902 provides, in part, that:

> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
>
> . . .

(11) Certified Domestic Records of a Regularly Conducted Activity. The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them. . . .

(13) Certified Records Generated by an Electronic Process or System. A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11).

Fed. R. Evid. 902. Pursuant to Rule 902, the government hereby gives notice of its intent to offer the records and submits that the videos are self-authenticating under Rule 902(11) and (13). *See* Certification of Diego Torres, attached as Exhibit 1.

The video footage is also self-authenticating under Federal Rule of Evidence 902(5). Federal Rule of Evidence 902(5) provides, in part, that:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

. . .

(5) Official Publications. A book, pamphlet, or other publication purporting to be issued by a public authority

Fed. R. Evid 902. The video feed from which the clips are taken are available on the Senate.gov website. *See* https://www.senate.gov/floor/, last accessed Nov. 7, 2022. Moreover, the certification of Diego Torres from the Senate Recording Studio establishes the video as an official publication. It is well established that materials found on a government public website are self-authenticating under Federal Rule of Evidence 902(5). *See Williams v. Long*, 585 F. Supp. 2d 679 (D. Md. 2008). *See also Singletary v. Howard Univ.*, No. 1:17-cv-01198, 2018 U.S. Dist. LEXIS 164945, 2018

WL 4623569 (D.D.C., Sept. 26, 2018), *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486 (S.D.N.Y. 2017) (Congressional transcripts self-authenticating under Rule 902(5)).[1]

### 4. Photos and Videos Obtained from Defendant Worrell's iPhone and Facebook account

On March 12, 2021, Defendant Christopher Worrell was arrested at his home in Florida in connection with the instant offense. ECF Nos. 5, 9. Worrell's iPhone, laptop, and other items related to his criminal conduct at the Capitol on Jan. 6, 2021 were seized. *Id.* The government also sought and obtained a search warrant for the contents of Worrell's Facebook account. At trial, the government intends to introduce photos and videos recovered from Worrell's phone, from a backup copy of the contents of Worrell's phone located on Worrell's laptop, and from Worrell's Facebook account.

The government will likely offer evidence that this evidence is authentic in that it consists of videos or photographs *from* Worrell's phone or Facebook account. The government will authenticate that the photos and videos on Worrell's phone and laptop came from those sources by introducing testimony from the FBI. *United States v. Banks*, 43 F.4th 912, 918 (8th Cir. 2022) ("While the officers were not present when the images and videos were first captured, their testimony [about reviewing extraction reports] provided a rational basis to believe that the exhibits had been created within the relevant time frame and stored on [the defendant's] cellular phones."); *United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (finding text messages on phone authenticated by evidence tying defendant to phone, such as location from which phone was seized and information in phone's contacts and properties sections). Similarly, the government will authenticate the photos and videos from Worrell's Facebook account by introducing evidence that

---

[1] The government may also offer similar evidence from the House Recording Studio. *See* Certification of Douglas Massengale, attached as Exhibit 2. The government submits that the same principles would support the authentication of any such evidence.

the records were received from Facebook with an accompanying certificate of authenticity, which establishes their authenticity as business records under Rule 902(11), as described above. In some instances, the government may simply authenticate a video or photograph from these sources just by establishing the video or photograph's contents as fair and accurate, without proving that that item came from a particular source (e.g., Worrell's cell phone).[2] In such instances, the government can authenticate these items using any of the other methods described in Section 5 of this motion.

### 5. Photo and Video from Others Present at the Capitol

Finally, the government also intends to introduce photos and videos taken by others present in and around the Capitol that day. This includes open-source video from journalists and rioters, including those charged in separate criminal cases for their conduct at the Capitol on January 6, 2021.

The government anticipates authenticating these videos in multiple ways. First, any witness with knowledge of the events depicted in a photograph or video can authenticate the evidence, including but not limited to the person who took the photograph or video. *See* Fed. R. Evid. 901(b)(1). Here, that includes any person who was present for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted and testify that they appear to fairly and accurately show the events that took place. *See, e.g., Am. Wrecking Corp. v. Sec'y of Lab*., 351 F.3d 1254, 1262 (D.C. Cir. 2003); *see also United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988) (citing, *e.g., Simms v. Dixon*, 291 A.2d 184 (D.C. 1972); E. Cleary, McCormick on Evidence (3d ed. 1984) at 671).

---

[2] The government may also offer video or photographs from these sources as relevant even if they are *not* fair and accurate depictions. For example, memes or open-source videos or photographs may be relevant merely because Worrell received them or sent them, indicating his knowledge of their contents, irrespective of whether those contents are accurate.

Even a person who was not present for a specific event can circumstantially establish the authenticity of a photograph or video depicting that event.  As explained, the bar for establishing authenticity sufficient to admit evidence to the jury is very low: only a *prima facie* showing that the evidence is what the government purports it to be—namely, photographs and videos of the Capitol siege in progress. For that reason, even a witness who was not present during the events depicted can help authenticate an exhibit if they can (1) identify the location(s) depicted in the photograph or video; and (2) establish that the video is generally consistent with their knowledge of events that occurred at that location during the Capitol riot. *See, e.g., Rembert*, 863 F. 2d at 1028 ("Even if direct testimony as to foundation matters is absent . . . the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." (*quoting United Stearns*, 550 F.2d at 1171)); *Holmquist*, 36 F.3d at 169 ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."); *Cf. Safavian*, 435 F. Supp. 2d at 36 (authenticating emails based on "distinctive characteristics" and citing Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp. 3d 141 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions).

Second, authenticated video or photographs can in turn authenticate other, substantially similar videos or photographs of the same scene. *See* Fed. R. Evid. 901(b)(3) (authentication by comparison with another authenticated specimen); *see. e.g.*, *United States v. Hoyt*, 946 F.2d 127 (D.C. Cir. 1991) ("[W]e will assume without deciding that the photograph was sufficiently authenticated by comparison with previously admitted Government Exhibit 11, which showed the

door from another angle."); *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th at 1371; *Stearns*, 550 F.2d at 1171-72 (where circumstantial evidence established one photograph's authenticity, it "authenticates the other four pictures as to time"); *Diaz v. County of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021) ("Here, the videos can be authenticated through other evidence on the record—namely, other video and photographic evidence of the incident that Green provides."); *United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) ("e-mails that are not clearly identifiable on their own can be authenticated under Rule 901(b)(3)," by the jury's comparison with other "emails that already have been independently authenticated").

In another January 6 trial in this district, the court found similar "open-source" evidence to be authentic by comparison under Rule 901(b)(3). *United States v. Rodean*, 1:21-cr-57-TNM, Dkt. 50 (D.D.C. Apr. 20, 2022). In *Rodean*, the court compared screenshots of video from a known source (USCP security footage), which showed the Senate Wing Doors from the inside facing out, with screenshots of video footage taken by an unspecified rioter showing the Senate Wing Doors from the outside looking in. *Id.* at 2. The court noted similar objects depicted in both sets of screenshots: doors of a building flanked by windows, a crowd of rioters near the windows, and a wooden beam sticking through a shattered window. *Id.* The court found these similarities sufficient, and granted the government's pretrial motion to find the video taken by the unspecified rioter to be authentic. *Id.* at 6.

Indeed, multiple video and photographic exhibits can provide circumstantial evidence of each other's authenticity, even if none of them is independently authenticated. If testimony were to establish, for example, that multiple open-source videos each showed the same events from different angles, and were obtained from separate sources, it would be highly unlikely that multiple different sources could have created videos or photographs depicting the same event from different

angles, with the same distortion or inaccuracy repeated in each of the videos or photographs from a different angle.

Below, the government provides an overview of some types of evidence it will offer.

***Video Evidence of Approach to the Capitol***

To show Defendants' path to the Capitol on Jan. 6, 2021, as well as their state of mind that day, the government plans to introduce, among other video evidence from third parties, a 23-second clip titled 266N-TP-3395185_0000061_1A0000047_0000001, which shows Defendants and others passing by a small group of USCP officers near the eastern edge of the Capitol's restricted area as the officers equip themselves with protective riot gear.



As Defendants pass the officers, Worrell can be seen approaching the officers and yelling "Honor your oaths! On your knees! Honor your oaths!" Then, after a few seconds' pause, "We are on your side, don't make us go against you! These are our streets!" When Worrell is visible on video, he appears to be recording on a smartphone.



This clip can be authenticated by comparison to video obtained from Worrell's phone of the same time period titled IMG_1188. In IMG_1188, the same officers can be seen as Worrell approaches them, and as in the open-source video, Worrell can be heard yelling, "Honor your oaths! On Your knees! Honor your oaths!" Then as Worrell continues on past the officers, he can be heard yelling, "We are on your side, don't make us go against you! These are our streets!" As in 266N-TP-3395185_0000061_1A0000047_0000001, the officer closest to the camera can be seen equipping a kneepad, while the officer behind and to the left of him can be seen equipping body armor on his upper torso.



At the 13-second mark, just as Worrell shouts, "Don't make us go against you," the individual in the grey pants and khaki jacket can be seen turning to face Worrell as he films with his smartphone.



This individual appears to be the person filming 266N-TP-3395185_0000061_1A0000047_0000001. In that video, when Worrell can be heard shouting, "Don't make us go against you" 14 seconds into the video, the camera pans toward Worrell, who is standing just feet away, roughly the same distance as the third-party appears in Worrell's video.



Based on these similarities, 266N-TP-3395185_0000061_1A0000047_0000001 could be authenticated by comparison to IMG_1188, if the latter is already authenticated, pursuant to F.R.E. 901(b)(3). *See Diaz v. County of Ventura*, 512 F. Supp. 3d at 1030 (authenticating photographic evidence through comparison to photographic evidence in record).

### *Worrell Pepper Sprays Officers on West Plaza*

At approximately 1:31 p.m. on January 6, 2021, Mr. Worrell deployed a canister of Red Sabre Pepper Gel against a line of police officers who were defending a defensive barricade of bicycle racks to prevent the violent mob from accessing the western side of the Capitol building. At trial, the government will seek to introduce video evidence showing the West Plaza area of the Capitol Grounds moments before and after Mr. Worrell's assaultive conduct. For example, the government will introduce an open-source video[3] ("135438.mpeg") that captures, among other

---

[3]     Available     here     (last     visited     Nov.     7,     2022): https://ia904500.us.archive.org/23/items/6u8pBq4eDQBThpyoa/FB_20210106_135438.mpeg4

events at the Capitol on Jan. 6, 2021, the West Plaza crowd's violent confrontation with the line

of law enforcement officers Mr. Worrell attacked. This video can be authenticated by comparison

to footage taken from the body-worn cameras of officers involved in this confrontation on the West

Plaza.[4]

At approximately the 42-minute mark in 135438.mpeg, the individual filming moves to the

front of the crowd closest to the southern portion of the West Plaza law enforcement barricade,

eventually moving toward the northern end of this police barricade—where Worrell's assault

occurred—near the 46-minute mark. Also present in this area at this time was MPD Lieutenant

Ronald Wilkins, whose body-worn camera footage captured the same scene as 135438.mpeg.

Comparison between Lt. Wilkins's BWC footage and 135438.mpeg shows the latter to be

authentic.

First, both the BWC footage and 135438.mpeg capture the same individual officers present

at the West Plaza police barricade. For example, at 46:33 in 135438.mpeg, shown in the image

below, an officer with a blue facemask, a riot helmet, and a large pepper-spray cannister can be

seen standing approximately 10 meters behind the line of officers defending the barricade.

---

[4] This open-source video has been previously authenticated and admitted in other criminal prosecutions in this district relating to the Jan. 6 Capitol breach. *E.g. United States v. John Strand*, 1:21-cr-85 (D.D.C); *United States v. Thomas Robertson*, 1:21-cr-34 (D.D.C.).



This same officer can be seen on Lt. Wilkins's BWC footage at timestamp 1:28:54 p.m. in approximately the same position, as shown in the following image.



Individual members of the crowd gathered at the West Plaza are also identifiable in both video sources. For example, at 47 minutes and 36 seconds in 135438.mpeg, a man in a red

sweatshirt, black jacket, and black hat is visible standing on a small staircase directly to the north of the police barricade near a white sign stating "AMERICANPOPULISTPARTY.COM".



This same individual can be seen on Lt. Wilkins's BWC at timestamp 1:30:11 p.m., with the white "AMERICANPOPULISTPARTY.COM" sign immediately to the left of him.



Finally, easily recognizable conduct by Lt. Wilkins can be seen in both videos. At 1:30 p.m., Lt. Wilkins approached the police line and deployed pepper spray against the rioters fighting police officers at the barricade. This moment can be seen on both Lt. Wilkins's BWC footage and on 135438.mpeg. In particular, in 135438.mpeg shortly after the 48-minute mark, when Lt. Wilkins begins deploying the pepper spray, an individual in a camouflage jacket and a tan and orange baseball hat can be seen pushing against the police line at the front of the crowd. In the second image to follow, Lt. Wilkins can be seen in a black and neon green jacket deploying pepper spray near the top off the photo.



In Lt. Wilkins's BWC footage at the 1:30:40 p.m. timestamp, the same individual in the camouflage jacket and tan and orange hat can be seen pushing against the police barricade as he is pepper sprayed by Lt. Wilkins.



Based on the specific and recognizable police and crowd activity visible in 135438.mpeg and in Lt. Wilkins's BWC footage, 135438.mpeg can be corroborated based on its similarities with Lt. Wilkins's BWC footage pursuant to F.R.E. 901(b)(3). *See Diaz*, 512 F. Supp. 3d at 1030.

### *Crowd Rush into Senate Scaffolding Staircase*

As a final example, the government also intends to introduce open-source video showing Defendants' participation in the crowd's push through the police line through the Senate-side scaffolding staircase, which provided access to much of the Capitol building on Jan. 6, 2021. One such video is "JaydenX - Insurgence PB Push Up Scaffolding 2125," which can be corroborated by comparison against a clip titled "IMG_1205" taken from Worrell's iPhone (among other

videos).[5] The JaydenX video shows Worrell, Scott, and others gather at the scaffolding staircase entrance before the crowd swiftly overpowers the line of officers at the 28-second mark. At this point in the JaydenX video, Worrell can be seen moving toward the back of the crowd as it surges forward.



Around the 40-second mark, Scott can also be seen immediately to the left of the entrance through the scaffolding onto the staircase.

---

[5] "JaydenX - Insurgence PB Push Up Scaffolding 2125" is a one-minute and 37-second video clip taken from a longer video posted by "JaydenX" on social media. Other portions of the full video have been admitted by courts in this district in criminal prosecutions relating to the January 6 Capitol breach. *E.g. United States v. Robertson, et al.*, 1:21-cr-34 (Cooper, J.) (ECF No. 67 (Gov't exhibit list)); *United States v. Strand, et al.*, 1:21-cr-85 (Cooper, J.) (ECF No. 103 (Gov't exhibit list)).



The video clip IMG_1205, obtained from Worrell's iPhone, appears to have been recorded shortly after the JaydenX video, as it captures Defendants and others in the same position as the JaydenX video, but with the crowd having advanced further into the staircase area underneath the scaffolding. Based on Worrell's vantage point filming, he appears to be near the back left of the crowd, just as he was in the JaydenX, while Scott can still be seen standing immediately to the left of the entrance to the staircase.



At the 39-second mark of IMG_1205, Worrell turns his camera to record himself stating "Yeah! Taking the Capitol!" and shows himself wearing the same clothes and tactical gear as in the JaydenX video. The red, white, and blue face covering worn in the JaydenX video now appears around his neck.



Based on the visible similarities between the JaydenX and IMG_1205 videos and the recognizability of Defendant Worrell in both videos, this portion of JaydenX - Insurgence PB Push Up Scaffolding 2125 may be properly authenticated by comparison under Rule 901(b)(3) and through the Defendant's unique characteristics under Rule 901(b)(4). *United States v. Chandler*, 5 F. App'x 839, 847 (10th Cir. 2001) (unpublished) ("Authentication under Rule 901(b)(4) is proper

if the appearance, contents, distinctive characteristics and circumstances of discovery of the CCA

Photograph support a finding that the matter in question is what its proponent claims.").

## CONCLUSION

For the reasons stated herein, the government respectfully requests that this Court rule *in
limine* that the Senate Recording Studio evidence outlined in Section 3 is authentic and admissible
pursuant to Federal Rule of Evidence 902. For all other categories of evidence described herein,
the government respectfully requests that this Court rule *in limine* that this evidence may be
properly authenticated and admitted using the methods outlined herein, assuming sufficient
foundation is laid at trial regarding authenticity.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ William Dreher*
WILLIAM DREHER
Assistant United States Attorney
D.C. Bar No. 1033828
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov

ALEXIS J. LOEB
Assistant United States Attorney
Detailee
CA Bar No. 269895
450 Golden Gate Ave, 11th Floor
San Francisco, CA 94102
(415) 736-4168
alexis.loeb@usdoj.gov

J. HUTTON MARSHALL
Assistant United States Attorney
D.C. Bar No. 1721890601 D Street NW
Washington, D.C. 20005

(202) 252-6299
Joseph.hutton.marshall@usdoj.gov