IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Case No: 21-CR-292 RCL |
| | : | |
| CHRISTOPHER WORRELL, | : | |
| | : | |
| Defendant. | : | |

**OPPOSITION TO DEFENDANT WORRELL'S MOTION TO VACATE TRIAL DATE**

The United States opposes Defendant Christopher Worrell's motion to vacate the trial date. Dkt. 217 (filed under seal). Mr. Worrell's motion briefly describes a recent fainting episode and installation of a "loop monitor."  This motion, like his previous motions to continue the trial based on similar medical concerns, contains no medical records or documentation showing that he is physically incompetent to stand trial.  Instead, Mr. Worrell provides a letter, from a physician with no apparent involvement in Mr. Worrell's recent treatment, concluding only that it would not be in "Mr. Worrell's best interest" to stand trial. *See* Dkt. 217, Ex. 1.  Without intending to minimize Mr. Worrell's health concerns, as described below, the government's limited understanding is that the installation of a "loop monitor" is apparently a minor procedure, often done in a medical office, with no long-term effects or significant complications other than potential infection of the cut.

Mr. Worrell's motion thus falls far short of the significant showing of physical incompetence required to vacate a trial: a substantial danger to the defendant's life or health. Moving the trial would also be extremely disruptive to the more than 20 witnesses that have arranged to appear as witnesses for the government in just over a week's time—many of whom are traveling from out of state.  The Court should thus reject the present motion for the same reasons it has previously stated.

1

**DISCUSSION**

As the government detailed last year in two responses to similar requests to move the trial date in this case, courts have recognized that a significant showing is required from defendants to establish that they are physically incompetent to sit for trial. Dkt. 176 at 2-3; Dkt. 189 at 2-4. Namely, the Court is tasked with examining whether a defendant's health would "impair his participation in his defense" or whether the proceedings would worsen his condition or risk his health, then with balancing that against "the public interest in bringing those accused of criminal misconduct promptly to account." *United States v. Saltzman*, 153 F. Supp. 3d 245, 250 (D.D.C. 2016) (internal citations omitted). Trial must involve more than the "mere possibility" of harm to a defendant; it "must pose a substantial danger to a defendant's life or health." *Id.* Courts often consider five factors in undertaking this inquiry, including the "medical evidence," "usefulness of delay," and "the degree of loss or injury to the public interest deemed to result from delay or total preclusion of a trial." *United States v. Jones*, 876 F. Supp. 395, 397 (N.D.N.Y. 1995) (citing *United States v. Doran*, 328 F. Supp. 1261, 1263 (S.D.N.Y. 1971)); *see* Dkt. 176 at 3 (citing additional cases).

With respect to the medical evidence, this Court has, in this case, emphasized the importance of medical documentation or treating physicians' affidavits. Dkt. 197 at 1 (setting trial date because Mr. Worrell's most recent medical "status report" included no "adequate medical evidence" or, indeed, "medical documentation at all"). Once again, Mr. Worrell's filing includes no attached medical records. There are no affidavits or letters from doctors who have treated Mr. Worrell. There are no affidavits or letters from doctors who reviewed Mr. Worrell's medical records. And there are no affidavits or letters from doctors who specialize in the relevant area.

Instead, Mr. Worrell appends to his motion a one-page letter from Dr. G. Bino Rucker.

Dkt. 217-1. Dr. Rucker is, as far as the government is aware, not a cardiologist. He has filed letters in support of Mr. Worrell's various requests throughout this case, *see* Dkts. 22-2, 22-3, including a recent letter requesting that Mr. Worrell be permitted to smoke marijuana and socialize outside, *see* Dkt. 188. Dr. Rucker indicates that he had no involvement with Mr. Worrell's hospitalization or his treatment received there. *Id.* Instead, Dr. Rucker apparently held a video call with Mr. Worrell and looked at photos of the surgical site where the loop monitor was installed. *Id.* If Dr. Rucker examined any medical records or other information, it is not mentioned in his letter. (Dr. Rucker and Mr. Worrell's counsel have previously confirmed that Dr. Rucker himself keeps no medical records. *See* Dkt. 29 at 13-14, 44.) Regardless, Dr. Rucker's letter indicates no affirmative findings of head trauma, stroke, or cardiac infarction.

Thus, even if the Court were to credit the statements in Dr. Rucker's letter, they provide no basis to conclude that Mr. Worrell's life or health would be put in substantial danger by sitting for trial. Dr. Rucker states that Mr. Worrell "has no clear cardiac diagnosis and is in significant pain" due to the surgical placement of the loop monitor, Dkt. 217-1, but he does not state how sitting for trial might exacerbate this pain to the extent that Mr. Worrell's health could be put at risk (let alone any substantial danger). Dr. Rucker writes that Mr. Worrell is "not a good candidate" to safely travel outside his immediate neighborhood, drive a vehicle safely, travel long distances or fly in a plane," *id.*, but he provides no details as to what complications might be risked from such activities, particularly those that only require Mr. Worrell to sit upright in a seat.

Dr. Rucker does state his desire that Mr. Worrell not stand for trial until the "root cause of his syncope" is discovered. *Id.* But Mr. Worrell has had unexplained fainting episodes in 2019, 2021, 2022, and now in 2023. *See, e.g.*, Dkt. 189 at 3-4 (describing older episode). It

3

could be years before their root cause is discovered, and they occur only sporadically, a few times a year.  Between these episodes, it appears that Mr. Worrell would have had no trouble standing trial; between his 2019 and 2021 episodes, for example, Mr. Worrell saw fit to twice come to D.C., in December 2020 and January 2021, outfitted with a stab vest. The Court cannot reasonably delay the trial indefinitely to wait for a definitive diagnosis of an issue that only intermittently affects Mr. Worrell—especially if the progression of that issue may only get worse over time.

While Dr. Rucker and Mr. Worrell provide no information about what a "loop monitor" is or what its implantation entails, a Google search indicates it should not require continuing the trial.  The Mayo Clinic describes it as a "minor surgery" that is "usually done in a medical office or medical center," involves a "tiny cut" to insert the device, and for which "complications . . . are uncommon" and would be limited to "infection" at the wound site.  *See* Mayo Clinic, *Implantable loop recorder: A heart monitoring device* (accessed Mar. 5, 2023), https://www.mayoclinic.org/tests-procedures/implantable-loop-recorder/pyc-20384986.  The Cleveland Clinic says the "cut may be as small as one quarter of an inch," and that "[m]ost people go home right away and can return to their normal routine" after this "low-risk procedure," with any soreness or bruising likely to "go away in several days."  Cleveland Clinic, *Loop Recorder* (accessed Mar. 5, 2023), https://my.clevelandclinic.org/health/diagnostics/24543-loop-recorder.  Here, the trial will occur nearly two weeks after the procedure.

Balanced against the dearth of any evidence of risk to Mr. Worrell from trial, the Court should consider the cost of further delay. The government has arranged to call more than 20 witnesses during trial, depending on what, if anything, the defense stipulates to. Among these witnesses are numerous law enforcement officers who have already disrupted their duties to

travel from Florida, Tennessee, Michigan, and Seattle in anticipation of trial; a journalist who has arranged travel to appear voluntarily without a subpoena; and another civilian witness traveling from Michigan. Attempting to find another date when all such witnesses would be available may cause a significant delay in the trial.

Respectfully submitted,

*/s/ William Dreher*
WILLIAM DREHER
D.C. Bar No. 1033828
Assistant United States Attorney (Detailed)
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov

ALEXIS J. LOEB
Assistant United States Attorney (Detailed)
CA Bar No. 269895
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-7168
alexis.loeb@usdoj.gov

J. HUTTON MARSHALL
Assistant U.S. Attorney
DC Bar No. 1721890
601 D Street, N.W.
Washington, D.C. 20579
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov