IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No: 21-CR-292 RCL |
| : | |
| CHRISTOPHER WORRELL, : | |
| : | |
| Defendant. : | |

### STATUS REPORT AND REQUEST FOR TRIAL DATE

Having reviewed the medical records relating to Mr. Worrell's two previous hospital stays, the government requests a trial date as soon as possible. Mr. Worrell's records indicate that during his two recent stays, doctors conducted a battery of precautionary diagnostic tests and found nothing concrete wrong with Mr. Worrell. He is set for follow up with a cardiologist and his oncologist in several weeks' or months' time. There is no current medical emergency.[1]

As explained below, in other cases, courts have moved forward with trial over the defendant's request for a continuance even when, for example, a defendant suffered a "life-threatening medical condition" and then obtained a doctor's note requesting more than just six weeks to recover, *see United States v. Payne*, 17-cr-53, Dkt. 142 at 3 (C.D. Cal. Feb. 13, 2023); *id.*, Dkt. 154 (denying request for continuance of trial date six weeks after life-threatening emergency), or even when a defendant suffering from "congestive heart failure, hearing loss, possible stroke, possible Parkinson's disease, bipolar disorder, and memory loss," *United States v. Jones*, No. 13-CR-40, 2017 WL 7689752 (E.D. Ky. Aug. 8, 2017), had a doctor's note opining that "travel and a trial [created] a risk of exacerbating his existing conditions," because even that

---

[1] The government now submit this filing separately, as the parties did not confer regarding a joint submission prior to Mr. Worrell's filing earlier today.

1

did not show a "substantial risk" to the defendant's health or life, 2017 WL 7532580 (magistrate judge's report).

Here, Mr. Worrell has not suffered any identified, discrete medical events other than three episodes of fainting spread across seven months—and no doctor has opined he cannot withstand trial. Balanced against the continued dearth of any evidence of risk to Mr. Worrell from trial, the Court should consider the cost of further delay and the government's and the public interest in a speedy trial. The government has now on three occasions arranged to call more than 20 witnesses during trial, including 13 out-of-state witnesses. Among these witnesses are numerous law enforcement officers who have already disrupted their duties to travel from Florida, Tennessee, Michigan, and Seattle in anticipation of trial; a journalist who has arranged travel to appear voluntarily without a subpoena; and another civilian witness traveling from Michigan. Over the last week, the government has had to determine availability for its two dozen witnesses 3-4 times as a result of Mr. Worrell not appearing for the pretrial conference last Wednesday, March 8, and the ensuing, changing information as to his treatment and discharge date (explained in greater detail below). From the information the government has gathered from its witnesses, any future trial date will likely require the government to move forward without at least one, if not more, of its witnesses. And given the defendant's history with cancer—which is currently stable, all available records indicate—that the defendant's health could deteriorate further in the future also militates in favor of proceeding to trial now.

The government thus seeks a trial date as soon as possible, including any 2.5-day window on the Court's calendar, to avoid any new delays. If no 2.5-day window is available in the near future, the government is amenable to a staggered schedule, with the trial days set across multiple weeks, if necessary. The government has identified the following windows in the Court's public

calendar as possible trial dates. Based on the medical records received to date, any of them should work for Mr. Worrell:

- **Wednesday, March 22 – Friday, March 24.** The *Yoder* trial in front of this Court is now a bench trial, and is anticipated to last 2 or 2.5 days. The *Worrell* trial could start after lunch on Wednesday, March 22, and conclude before the weekend. This is the government's preferred date, and the government is not aware of any trial conflicts for the defense next week.
- **April 24-28**. The government's understanding is that defense counsel is available the week of April 24. [2]

Below, the government outlines the factual background of Mr. Worrell's various requests to delay his trial date for the last seven months, and explains why Mr. Worrell's recent hospital stays do not require any further delay in trial.

## BACKGROUND

### A. Moving the initial trial date to December 12, 2022.

In an August 2022 status hearing, following multiple violations of his bond conditions—and his far-fetched excuse that he went to a rally and met with other Proud Boys members because it was the only place and time he could meet with his attorney—this Court informed Mr. Worrell that it would have ordered him taken him into pretrial custody but for Mr. Worrell's medical issues. The Court then suggested that it would set the trial for September 2022, when the government was available, unless Mr. Worrell provided medical records documenting his September jaw surgery.

---

[2] The period of April 12-18 may also become available. The government's understanding is that the *Munchel* trial may be a stipulated-facts bench trial, and that the parties intend to try it on April 11 or 12, subject to the Court's availability, if so. (The government is aware of the Court's unavailability from April 7 through at least April 10, and potential unavailability through April 17.) In terms of defense counsel's availability the week of April 10, a request for a continuance was noticed yesterday in Mr. Shipley's trial in *United States v. Klein*, 21-cr-40, set in front of Judge McFadden that week.

Mr. Worrell filed a note from his treating dental surgeon, Dkt. 157 at 1-2, and this Court set trial for December 12, 2022, *see* Dkt. (August 19, 2022 minute entry).

**B.    Repeated attempts to move the December 12, 2022 trial date.**

As this Court will recall, on September 19, 2022, Mr. Worrell asserted that his jaw surgery "ha[d] rendered [him] unable to verbally communicate," and that the "length of time until [he] is able to speak is uncertain." Dkt. 161 at 3. Mr. Worrell claimed that his jaw surgery required a continuance of the trial date that was then nearly three months away. *Id.* Based on that representation, the government filed a motion on September 25, 2022, granted by this Court the next day, to relax his pretrial conditions to permit him to communicate electronically. Dkt. 164. But in fact, as was revealed in Mr. Worrell's medical records obtained weeks later, he was talking on September 22 and actively "yelling" at a nurse, berating her as "incompetent," on September 24. Dkt. 176 at 2-3. Mr. Worrell never informed the Court or government that he was actually fully capable of speaking during that period, even though the government and this Court acted on his contrary representation.

On October 31, 2022, Mr. Worrell filed a second request to continue the trial date. This time, he invoked two visits to the emergency room in September and October 2022 that resulted from episodes of fainting (syncope). Dkt. 175 at 1-4. He also adverted to his cancer. *Id.* But again, the medical records contradicted his claim of physical incompetency.

As far as the government is aware, every relevant test run on Mr. Worrell after his fainting episodes in September and October 2022 came back largely negative. An "extensive cardiac and neurological work-up" at his first emergency room visit "was negative," other than high blood pressure. Dkt. 176 at 7-8; *see also id.* Ex. B at 1, 6; Ex. A at 23-27. During his second visit, a chest x-ray, CT scan, EKG, and echocardiogram, along with other workups, appear to have

4

resulted in negative findings. Dkt. 176, Ex. B at 12-13; *id.* at 16; *id.* at 8 ("logic exam and cardiac exam unremarkable laboratory work is unremarkable"); *id.* at 9 ("everything came back negative including CT head negative, bilateral carotid artery negative, 2D echo showed no abnormality. . . .Lab work-up showed no acute findings including negative troponin. Chest x-ray shows no active disease. CT head shows no acute intracranial abnormality. Vital signs in ED within normal limits."); *id.* at 18-20. His "blood pressure [was] within normal limits" during his two days at the hospital. *Id.* at 9.  While the doctors did admit him both times to run these diagnostic tests, once they all came back negative, he was discharged with no follow-up appointments for weeks or months.

As to his cancer, the records showed that Mr. Worrell told doctors in September 2022 that he did not need further chemotherapy because he was "currently cancer free." Dkt. 176, Ex. A at 17. Records from October 2022 indicated that he was "[n]ot currently under any cancer treatment." Dkt. 176, Ex. B at 1; *id.* at 10 (same). And on October 27, 2022, his oncologist concluded that Mr. Worrell had "no clear evidence of active skin disease at this visit," that his itchy skin "seems to be present with or without active disease," and that the only follow-up was: "follow up next year," i.e., 2023. Dkt. 176, Ex. C at 3-4.  The government has received no other update on his cancer, aside from an oncology follow-up appointment set more than two months from now, on May 23.

**C.     Mr. Worrell's medical status from December 2022-February 2023.**

[redacted]

5

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

**C.      Mr. Worrell's recent hospitalizations.**

[Redacted]

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████

████████████████████████████████████

██████████████████████████████████████████████████████████

████████████ That would have conflicted with a trial date of March 15, and so the government ceased its plans (including travel plans for 13 out-of-state witnesses) for a trial start date of March 15. ████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████ █

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████

**ARGUMENT**

As the government recently reiterated, a defendant must clear a very high bar to show he is physically incompetent to sit through trial. Dkt. 176 at 2-3; Dkt. 189 at 2-4. A defendant's health must "impair his participation in his defense," or trial "must pose a substantial danger to a defendant's life or health," and the Court then balances either factor against "the public interest in bringing those accused of criminal misconduct promptly to account." *United States v. Saltzman*, 153 F. Supp. 3d 245, 250 (D.D.C. 2016) (internal citations omitted). Courts have therefore declined to continue trials even when the defendant was "an obese 76 year old male who suffer[ed]

7

from coronary artery disease and diabetes," including episodes of syncope, who had an opinion from his internist that he was "at substantial risk of developing a heart attack" due to "the exertion associated with a trial projected to last two weeks." *United States v. Jones*, 876 F. Supp. 395, 398 (N.D.N.Y. 1995).  They have declined to continue a trial when the defendant submitted materials from his physicians stated that "the stress of a trial would aggravate [his] hypertension, diabetes, and heart disease to a dangerous extent." *United States v. Brown*, 821 F.2d 986, 989 (4th Cir. 1987).[3]  And in a recent case, after the defendant's first trial date was vacated due to a life-threatening medical emergency on the first day of trial, the Court refused to move the trial again six weeks later, even though his treating psychologist stated it would not be in his best interest to proceed to trial.  *United States v. Payne*, 17-cr-53, Dkt. 154 (Feb. 13, 2023).  These cases make clear that even a note from a doctor stating that it is not in a defendant's best interest to sit through trial is not enough—the doctor must credibly explain why the defendant's health or life would be significantly at risk due to sitting through trial.

But here, Mr. Worrell has produced no medical opinion that he is currently unable to sit through what is now likely a 3-day trial with no jury.  He has been repeatedly evaluated by experts who have repeatedly found no evidence of discrete cardiac events, and that concluded just last week ███████████████████████████████████

---

[3] In *Jones* and *Brown*, given the defendant's doctors' recommendations, the Court sought and received information from independent evaluations of the defendant indicating that he was medically competent to stand trial.  If Mr. Worrell did obtain a treating physician's opinion that he cannot withstand trial—and it is unclear what that opinion would be based on, given the extensive negative work-ups described above—the government would request an independent evaluation.  *See Jones*, 876 F. Supp. at 397  (discussing appointed independent physician "to conduct an impartial evaluation of defendant"); *United States v. Musto*, 2012 WL 5258881, at *1 (M.D. Pa. Oct. 24, 2012) (discussing findings of appointed medical expert); *United States v. Korn*, 2018 WL 1947763, at *3 (W.D.N.Y. Apr. 25, 2018) (directing court-appointed Independent Medical Examiner to re-examine defendant's physical capacity to stand trial at government's request where parties were in "stark disagreement" about the severity of the defendant's medical condition).

██████████████████████████████████████. His fainting occurs only sporadically—three times since September 2022. Mr. Worrell could have stood trial in December 2022 or February 2023, but he moved to continue those trial dates. ██████████████████████████

██████████████████████████████

Mr. Worrell's filing today does not change this analysis. Worrell confirms he has no appointments other than ██████████████████████████████—suggesting that neither the cardiovascular nor the oncology referrals are so urgent as to require delaying trial further. Mr. Worrell's filing claims relays ██████████████████████████████

██████████████████████████████████████████████

██████████████████████  ████████████████████████

██████████████████████████████████████████████

██████████████████████████

Respectfully, this representation from Mr. Worrell, even if true, would be inadequate to delay trial further. As described above, Mr. Worrell's representations regarding his health have not always been supported by the underlying medical records. ██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

9

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Mr. Worrell has not come remotely close to establishing that he could not stand trial tomorrow—let alone on March 22, with another week of rest. The government and the Court have accommodated Mr. Worrell's requests for continuances or later trial dates for seven months despite the lack of any documented ongoing medical emergency. It is time for Mr. Worrell to stand trial. The government is prepared to proceed as soon as the Court has availability.

Respectfully submitted,

*/s/ William Dreher*
WILLIAM DREHER
D.C. Bar No. 1033828
Assistant United States Attorney (Detailed)
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov

ALEXIS J. LOEB
Assistant United States Attorney (Detailed)
CA Bar No. 269895
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-7168
alexis.loeb@usdoj.gov

J. HUTTON MARSHALL
Assistant U.S. Attorney
DC Bar No. 1721890
601 D Street, N.W.
Washington, D.C. 20579
(202) 809-2166
Joseph.hutton.marshall@usdoj.gov