UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER WORRELL,<br><br>*Defendant.* | Case No. 1:21-CR-292-1-RCL |

### Notes for Oral Ruling from the Bench under Rule 23(c)

The following are the notes that the Court used when delivering its oral verdict today:

These are the specific findings of fact under Federal Rule of Criminal Procedure 23(c) that explain my verdict in this nonjury case. As to the charges, I am adopting the instructions and definitions from the government's trial brief as modified by the supplemental trial brief.

I want to start by making two of my factual findings clear at the outset since they were the most serious points of contention.

First, I find that Mr. Worrell entered Capitol grounds on January 6 with the purpose of disrupting the Electoral College Certification. That purpose was clear throughout the evidence. His digital conversations leading up to January 6 and his attendance at the Roger Stone rally certainly suggest that was his intent. And then his statements and actions during January 6, at the very least, establish that he developed that purpose by the morning of January 6. For example, on that morning, before he even got to Capitol Grounds, Mr. Worrell was telling officers to honor their oaths and urging the officers not to force Mr. Worrell and his group to go against them. He and his group then traveled onto Capitol Grounds, joined the mob,

1

and faced off against law enforcement officers. After he sprayed pepper gel at officers, which I will get to in a moment, he verbally expressed how proud he was of his fellow Proud Boy Daniel Scott's assault of an officer and stated that they were taking the Capitol. His statements and actions demonstrate that Mr. Worrell wanted to impede or obstruct the Electoral College Certification and acted to do so. As he said, he wanted the mob to take the Capitol, even though he did not himself go inside.

That is not the product of guilt by association. I agree with the defense that I must focus on Mr. Worrell's intent, purpose, and belief, not those of his Proud Boy brothers. Much of the government's early evidence about what other people were saying is ultimately of little relevance. But even focusing on what Mr. Worrell said, did, and knew, this purpose to impede or obstruct the Electoral College Certification has been proven to me beyond a reasonable doubt.

Second, I find that Mr. Worrell did, in fact, spray his Sabre Red Maximum Strength Pepper Gel at a line of law enforcement officers protecting the Capitol. Of course, no one can doubt that he did actually spray that pepper gel. The photograph of the moment is clear as day, it is the same photo that was shown throughout the trial and can be seen on page two of Government's Exhibit 400. The eyewitness testimony is also clear. As are the other exhibits, like Government's Exhibit 166, showing him spraying his pepper gel at the line of law enforcement officers. He even said at the time that he deployed the full can of pepper gel.

The defense's preposterous contention is that Mr. Worrell sprayed the pepper gel at Antifa, or some other members of the crowd. That is completely incredible. The evidence demonstrates that Mr. Worrell traveled to Washington D.C. for the purpose of ensuring that the Electoral College Certification of President Biden failed. The evidence shows that he then furthered that goal, by both joining the mob and then by spraying the officers. And he did all of this within a restricted area setup

to protect the Vice-President as he performed his Constitutional duty. That conclusion is furthered not just by basic common sense, but by Mr. Worrell's own contemporaneous statement that he had "got those motherfuckers," clearly referring to the officers he had just sprayed, his description of officers protecting the Capitol as "commies with guns," his additional aggressive statement and attitude towards those officers, his celebration of his own attack at the time and around 2:00pm, and his subsequent celebration after Daniel Scott attacked a police officer. His suggestion that he was unaware that Mr. Scott had attacked a police officer, and that I should consider his celebration to be of something other than an attack on law enforcement, of the kind he had just himself done, is also incredible. Mr. Worrell's explanations of what happened on January 6 are further undermined by the contradictions and post-January 6 false statements identified by the government during Mr. Worrell's cross-examination and the government's rebuttal case. His unbelievable testimony only further supports the government's contention that he sprayed the law enforcement officers and did so to help impede or obstruct the Electoral College Certification.

I also find that Mr. Worrell's pepper gel affected at least three law enforcement officers as shown in the government's video Government's Exhibit 354. The overlap in time between that video and the timing of Mr. Worrell's pepper gel deployment, as well as the overlap in location, convince me that Mr. Worrell's pepper gel did not just threaten officers, but actually affected them.

I therefore find that he knowingly and purposefully sprayed his pepper gel at the line of law enforcement officers.

I will now proceed to the individual charges.

1. **<u>Count One Obstruction of an Official Proceeding</u>**

Count One of the Second Superseding Indictment charges the defendant with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c) and 2.

That charge requires the government to have proved each of the following elements beyond a reasonable doubt:

1. First, the defendant attempted to or did obstruct or impede an official proceeding;

2. Second, the defendant intended to obstruct or impede the official proceeding;

3. Third, the defendant acted knowingly;

4. Fourth, the defendant acted corruptly.

I conclude that the government has proved each of those elements beyond a reasonable doubt.

Mr. Worrell obstructed or impeded the Electoral College Certification by joining the mob on Capitol Grounds around 1:00pm, while the two houses of Congress were in session considering the certification. Then, around 30 minutes later, Mr. Worrell sprayed his pepper gel at the line of officers protecting the ongoing proceeding. These actions obstructed or impeded the proceeding by, together with the actions of others, forcing the evacuation of Congress and the end of the certification session. By joining the mob and pepper spraying the officers, he helped ensure that Congress was under a sufficient security threat requiring adjournment and then an inability to resume the official proceeding that his actions helped to disrupt. As the government's video showed, several officers had to move back and react to the pepper gel after he deployed it at them. And I find that his purpose in spraying was to ensure that the proceeding was in fact obstructed or impeded.

Not everyone on Capitol Grounds had that that kind of purpose. But the evidence demonstrates that Mr. Worrell did. And not everyone sprayed pepper gel at officers to further that purpose. But Mr. Worrell did.

When Mr. Worrell took these knowing actions, he was certainly aware of the official proceeding, or it was reasonably foreseeable to him. As his digital messages demonstrate, his purpose for traveling to Washington D.C. was to help "Stop the Steal" at the Electoral College Certification. The evidence regarding his attendance at the Roger Stone rally on January 3rd, and his messages afterward, including his statement aimed at the legislators voting, make clear that he knew his actions were directed at the official proceeding he wished to disrupt and those representatives he believed were going to certify the election for President Biden. As early as November, he was clearly aware that Congress would vote on who would be President. On January 2, he was posting on Facebook about going to the Capitol on January 6 for Trump. And on that day, he made clear that he was moving in on the Capitol where that proceeding was happening.

I find his statements in court to the contrary to be incredible. His actions and statements on January 6 and shortly before, demonstrate that he had the intent to obstruct or impede the certification that he knew, or reasonably foresaw, was occurring. He did not make a mistake, he took these actions knowingly.

Furthermore, I find that Mr. Worrell had the necessary mental state to meet the corruptly requirement. First, by pepper spraying the law enforcement officers, Mr. Worrell used an unlawful means, specifically the independently felonious means of spraying his pepper gel at law enforcement, and acted with an unlawful purpose when doing so. And pepper spraying a line of police officers almost definitionally involves consciousness of wrongdoing. Mr. Worrell's attempts to downplay his prior actions and create a false narrative about them are further evidence of his

consciousness of wrongdoing. And I will address unlawful benefit as well given Judge Walker's concurring opinion in *United States v. Fischer*, which agreed that obstruction was appropriate in very similar circumstances to this one. On that, I find that Mr. Worrell took these actions in order to provide an unlawful benefit to his preferred presidential candidate, then President Trump—by disrupting the Electoral College Certification that would have led to then-President Trump's loss of the presidency.

2. **Count Two Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**

Count Two of the Second Superseding Indictment charges the defendant with entering or remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A).

That requires the government to have proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so;

2. Second, that the defendant did so knowingly;

3. Third, that the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

I conclude that the government has proved each of those elements beyond a reasonable doubt.

The government established that, in preparation for the Electoral College Certification, the United States Secret Service and United States Capitol Police adopted a restricted area around the U.S. Capitol Grounds that was closed to

members of the public. That perimeter was delineated with bike racks and snow fencing with signage indicating that the area was closed and additional layers of barricades within the restricted area. That perimeter was established because the Vice-President was temporarily visiting the Capitol.

Mr. Worrell admitted on the stand that he at least saw the barricades up at different parts of the Capitol. And he admits that he saw what is depicted in Government's Exhibit 561, bike racks and snow fencing that clearly show that the area was restricted. He also saw what is depicted in that same exhibit, a black wrought iron fence that was torn down. The evidence, and his own testimony, establish that he also observed law enforcement officers attempting to push people back off of the restricted Capitol Grounds area, including using tear gas on the crowd within his observation.

In many ways, Mr. Worrell's testimony was the strongest testimony that he knew that he was in a restricted area and that he knew he lacked lawful authority. He testified that, at one point, he saw that the barriers were up with law enforcement manning the barricades. Later, I find that he went past those same barricades after they were overrun. What might have been a closer issue is certainly proved beyond a reasonable doubt after his testimony.

The evidence of the barriers that Mr. Worrell must have seen, and the signs of law enforcement struggle, establish that Mr. Worrell knowingly entered or remained within the restricted area on the Capitol Grounds. He knew the area was cordoned off, he knew it was restricted, yet he entered and remained anyway.

Finally, I find that the pepper gel spray carried by Mr. Worrell constitutes a deadly or dangerous weapon. Whether or not it is inherently or obviously dangerous or deadly, Mr. Worrell used it in a manner that was capable of causing serious bodily

injury and therefore he was carrying or using a deadly or dangerous weapon. Specifically, the evidence at trial shows that being sprayed with the pepper gel in the manner that Mr. Worrell used the weapon is capable of causing extreme physical pain and protracted impairment of the eyes including corneal damage, and sometimes requires medical intervention.

That evidence establishes that the pepper gel spray carried and used by Mr. Worrell during his time on the restricted grounds was a dangerous or deadly weapon.

### 3. Count Four Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon

Count Four of the Second Superseding Indictment charges the defendant with disorderly or disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A).

That requires the government to have proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in any restricted building or grounds;

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3. Third, that the defendant's conduct in fact impeded or disrupted the orderly conduct of Government business or official functions;

4. Fourth, that the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

I conclude that the government has proved each of those elements beyond a reasonable doubt.

Mr. Worrell's behavior as part of the mob on the Capitol Grounds and his spraying of the pepper gel at the police line constituted disruptive and disorderly conduct given that he disturbed the public peace and the normal peaceful condition of the Capitol grounds. He also actually impeded the ability for law enforcement to regain control of the area and otherwise disrupted the efforts of the officers. And for substantially the same reasons as I stated earlier for Count One, I find that Mr. Worrell took these actions knowingly and with the intent to impede and disrupt the orderly conduct of Government business and official functions. He did so while carrying and using the pepper gel spray, which I already explained was a deadly or dangerous weapon.

4. **Count Six Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**

Count Six of the Second Superseding Indictment charges the defendant with engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A).

That requires the government to have proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in any act of physical violence against any person in any restricted building or grounds;

2. Second, that the defendant did so knowingly; and

3. Third, that the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

I conclude that the government has proved each of those elements beyond a reasonable doubt.

Mr. Worrell's act of physical violence was his spraying of pepper gel at the law enforcement officers. He took that action knowingly, for the same reasons I explained earlier, and he knowingly used and carried that pepper gel spray during the offense and used it to engage in the act of physical violence. Finally, that action was taken within the restricted grounds of the Capitol as I previously explained.

## 5. **Count Eight Act of Physical Violence in the United States Capitol Grounds or Buildings**

Count Eight of the Second Superseding Indictment charges the defendant with an act of physical violence in the United States Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

That requires the government to have proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in an act of physical violence in the Capitol Grounds or any of the Capitol Buildings; and

2. Second, that the defendant did so willfully and knowingly.

I conclude that the government has proved each of those elements beyond a reasonable doubt. As I just explained, the defendant engaged in an act of physical violence on Capitol Grounds when he sprayed his pepper gel at the line of officers.

The evidence also shows that he took this action willfully and knowingly, in that he acted with the intent to disregard the law and attack the law enforcement officers guarding the Capitol. Mr. Worrell knowingly took his pepper gel and sprayed it at a line of officers protecting the United States Capitol while those officers faced down a mob. Even without the accompanying communications from Mr. Worrell, those circumstances alone demonstrate willfulness beyond a reasonable

doubt. But Mr. Worrell's accompanying statements, including his warning to officers earlier in the day that they should stand aside, or else Mr. Worrell and his companions would act against them, and his celebration that he "got those motherfuckers" make his willfulness even clearer.

### 6. Count Ten Civil Disorder

Count Ten of the Second Superseding Indictment charges the defendant with civil disorder, in violation of 18 U.S.C. § 231(a)(3).

That requires the government to have proved each of the following elements beyond a reasonable doubt:

1. First, the defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

2. Second, at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

3. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

The government proved the first element by establishing that Mr. Worrell knowingly sprayed his pepper gel at the line of law enforcement officers protecting the Capitol. Mr. Worrell's intent when doing so was to obstruct, impede, or interfere with the law enforcement officers guarding the Capitol, as I explained earlier.

Second, the evidence shows that the mob at the Capitol constituted a civil disorder to which the law enforcement officers were lawfully attempting to defend

the Capitol against. That mob of more than three people created a public disturbance involving acts of violence by causing an immediate danger of injury to those officers, to the property on Capitol Grounds and inside the Capitol Buildings, as well as actually resulting in injury to officers.

And third, the civil disorder obstructed, delayed, or adversely affected both commerce, as demonstrated by the parties' stipulation in Government's Exhibit 402, as well as obstructing the efforts of law enforcement officers to protect the Capitol and delaying Congress' session to certify the Electoral College Certification.

7. **Count Thirteen Assaulting, Resisting, or Impeding Certain Officers using a Dangerous Weapon**

Count Thirteen of the Second Superseding Indictment charges the defendant with forcibly assaulting, resisting, or impeding an officer or employee of the United States who was then engaged in the performance of his official duties or any person assisting an officer or employee of the United States who is engaged in the performance of his official duties, where such acts involve physical contact with the victim or the intent to commit another felony, in violation of 18 U.S.C. § 111(a)(1). Count Thirteen further alleges that the defendant used a dangerous weapon, in violation of 18 U.S.C. § 111(b).

I will take those one at a time.

Section 111(a)(1) requires the government to have proved each of the following elements beyond a reasonable doubt:

1. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer of the Metropolitan Police Department or the U.S. Capitol Police;

2. Second, the defendant did such act forcibly;

3. Third, the defendant did such act voluntarily and intentionally;

4. Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer or an employee of the United States who was then engaged in the performance of his official duties, or was assisting officers of the United States who were then engaged in the performance of that officer's duties;

5. Fifth, in doing such acts, the defendant acted with intent to commit another felony—in this case, Civil Disorder, as charged in Count Ten, or Obstruction of an Official Proceeding and Aiding and Abetting, as defined in Count One.

When Mr. Worrell sprayed pepper gel at the line of officers, he forcibly assaulted, opposed, impeded, and intimidated those law enforcement officers from U.S. Capitol Police. For the reasons I stated earlier, Mr. Worrell did so voluntarily and intentionally. Those law enforcement officers were engaged in the performance of their official duties, protecting the Capitol Grounds and Capitol Buildings. And finally, Mr. Worrell took this action with the intent to both obstruct the Electoral College Certification and to commit Civil Disorder.

**Section 111(b)** requires the same first four elements, which I have already found proved beyond a reasonable doubt. Then, the government must have proved a different fifth element, that, in doing such acts, the defendant used a deadly or dangerous weapon. For the reasons that I stated earlier, that pepper gel used was a deadly or dangerous weapon thereby satisfying the required elements of Section 111(b).

* * *

In sum, I find that the government has proved beyond a reasonable doubt each charge brought against Mr. Worrell in this trial.

Therefore, I **ADUJUDGE AND DECLARE** that the defendant is **GUILTY** of the following counts in the Second Superseding Indictment:

Count One: Guilty

Count Two: Guilty

Count Four: Guilty

Count Six: Guilty

Count Eight: Guilty

Count Ten: Guilty

Count Thirteen: Guilty

Date: May 12, 2023

Royce C. Lamberth
United States District Judge