# EXHIBIT K

1

```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,            )
                                     )
        Plaintiff,                   )
                                     )    CR No. 22-15
                                     )    Washington, D.C.
     vs.                             )    May 24, 2023
                                     )    9:30 a.m.
ELMER STEWART RHODES III, ET AL.,    )
                                     )
        Defendants.                  )
_____)


     TRANSCRIPT OF OMNIBUS MOTION HEARING PROCEEDINGS
        BEFORE THE HONORABLE AMIT P. MEHTA
           UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Government:          Kathryn L. Rakoczy
                             Jeffrey S. Nestler
                             Alexandra Hughes
                             Troy Edwards
                             Louis Manzo
                             U.S. ATTORNEY'S OFFICE
                             601 D Street, NW
                             Washington, D.C. 20579
                             (202) 252-7277
                             Email:
                             kathryn.rakoczy@usdoj.gov
                             Email:
                             jeffrey.nestler@usdoj.gov

1    not be.  And that, ultimately, a person is only responsible

2    for their conduct of co-conspirators that are reasonably

3    foreseeable in furtherance of -- and there's a third element

4    that I can't remember.

5            But in any event, I'm aware of it.  And it is

6    something I have to address at each individual sentencing

7    and will be happy to hear argument from counsel as to scope

8    of conspiracy or scope of liability for conduct at

9    individual sentencings.

10           Look, I spent a lot of time on this issue

11   because I think it's a challenging one.  And, ultimately,

12   where I came out is I think it applies legally, and let me

13   explain why.

14           And let me just note that there is already a

15   disagreement among the judges, at least in terms of written

16   opinions, about the application of this Guideline.  And

17   Judge Kollar-Kotelly in *United States versus White*,

18   213 Westlaw 23871 -- excuse me, -7816 addresses this very

19   issue.  She expresses disagreement with Judge McFadden's

20   decision in *Seefried*, and she explains why and I share in

21   her assessment.

22           But let me explain why and in a way that maybe

23   they'll get an opportunity to write down.  But let me just

24   begin with the text of the statute, and that is sort of --

25   I mean the Guideline, and that is the administration of

169

1 justice.

2         You know, Judge McFadden turned to Black's Law

3 Dictionary, which defines "administration of justice" as --

4 Mr. Woodward pointed out to mean the maintenance of right

5 within a political community by means of the physical force

6 of a state, the state's application of the sanction of force

7 to the rule of right.

8         I would say at the beginning that it is not at all

9 clear to me how useful it is to use Black's in these

10 circumstances, and the reason is as follows.  If you look at

11 the definition, it also includes a parenthetical about time.

12 And, for example, "administration of justice" is followed by

13 16th century.

14         And if you look at the sort of notes regarding

15 Black, they say that's the first, earliest time this term

16 appeared in the English language.

17         And so it isn't clear to me when Black's provides

18 this definition of "administration of justice."  It means

19 administration of justice in the 16th century?  Or it means

20 something that's more modern than that?  I don't know.

21 I don't think -- maybe I'm missing it, but I don't know that

22 the dictionary is exactly clear on that.

23         So I'm a little bit hesitant.  You can actually

24 see this.  If you go on to Black's and they'll get examples

25 of meanings of things based upon context from centuries

170

1    past.  And I don't know how useful it is when we are trying

2    to interpret a more modern text, and I'm supposed to use the

3    text at the time it is understood and adopted.

4              All right.  Let me just unpack the definition a

5    little bit.  Let me start with the phrase "maintenance of

6    right," which is actually used in the definition.  The

7    primary definition of "right" in Black's is "That which is

8    proper under law, morality, or ethics."

9              When one pairs that definition with the phrase "by

10   means of physical force of the state," it's not entirely

11   apparent why the term "administration of justice" is limited

12   to judicial or quasi-judicial proceedings, as Judge McFadden

13   concluded.

14             Take also Black's definition of "rule of right,"

15   which appears in the administration of justice.  Black's

16   traces that phrase to the 17th century to mean "The source

17   of a right.  The rule that gives rise to a right."

18             Again, it's not apparent to me why that

19   definition, when paired with the State's application of

20   sanction of force, excludes a proceeding before Congress.

21             As I've noted before, Black's actually includes as

22   a term of art obstructing the administration of justice and

23   equates that with the term "perverting the course of

24   justice," which in turn is defined to mean "The skewing of

25   the disposition of legal proceedings as by fabricating or

1   destroying evidence, witness tampering, or threatening, or

2   intimidating a judge."

3          It is perhaps notable, maybe or maybe not, that

4   the terms "legal proceedings" is used, and maybe that is

5   broader than "judicial proceedings."  And, you know, Black's

6   uses the term "as by," which is not signaling an exhaustive

7   list but, rather, a list of examples.

8          So, you know, even the term "perverting the course

9   of justice," arguably could be read in a way that includes

10  proceedings before Congress.

11         But let me tell you what I think really matters

12  here, and that's the history and context of this Guidelines

13  and the context in which it has evolved.

14         First and foremost, as I said, in 1982, the

15  Congress passed the Victim and Witness Protection Act of

16  1982 -- that's Public Law 97-291 -- which included the

17  pre-Sarbanes-Oxley Section 1512 and definition section in

18  1515.  What is important to note is that the 1982 act made

19  tampering with a witness or victim appearing before an

20  official proceeding unlawful, and that is in 1512.  And an

21  official proceeding when enacted, as it is today, included a

22  proceeding before Congress.

23         Five years later, in October of 1987, the

24  Sentencing Commission issued the first Guidelines Manual.

25  That manual included a Guideline, as it does today, for

172

1    obstruction of justice under 2J1.2.

2              The original Guideline contained the eight-level

3    enhancement for obstructing or attempting to obstruct the

4    administration of justice by causing or threatening to cause

5    physical injury to a person or property.  It also included

6    the three-level enhancement of substantial administration of

7    justice.

8              Also, when originally promulgated, the commentary,

9    as it does again today, provided that this section addresses

10   offenses involving the obstruction of justice generally

11   prosecuted under the above-referenced statutory provisions,

12   the statutory provisions identified in the original

13   Guideline with 1503 through 1513, which obviously includes

14   1512.

15             The Guideline as originally conceived also

16   included the definition of "substantial interference" with

17   "administration of justice" that is in the Guidelines today,

18   which includes as part of its definition "unnecessary

19   expenditure of substantial governmental or court resources."

20             So from that history, I sort of draw three

21   interpretive conclusions.  One is that, first, 2J1.2 as

22   originally promulgated clearly encompassed 1512, which

23   included obstructive conduct directed at a witness or victim

24   in connection with an official proceeding, which was not

25   limited to judicial proceedings but included a proceeding

1   before Congress as Congress had defined it.

2          Second, in 2J1.2, the commission was clearly

3   attempting to capture a broad range of conduct.  How do we

4   know that?  Because that's what they said.  They said in the

5   commentary that the conduct that gives rise to a violation

6   may, therefore, range from a mere threat to an act of

7   extreme violence.

8          Third, the enhancements -- that is, the

9   eight-level and three-level enhancements -- were included to

10  address the most serious conduct, including obstructive

11  conduct before an official proceeding, which, as I said,

12  would include a proceeding before Congress.

13          In other words, because this Guideline covered

14  obstruction before an official proceeding, an "official

15  proceeding" was clearly defined by Congress to include

16  "proceeding before Congress."  It would seem very odd to me

17  that the Guidelines would be promulgated in a way to carve

18  out a type of proceeding that Congress expressly held would

19  be subject to and the object of obstructive conduct before

20  it without -- not expressly saying so and not leaving us

21  with this jigsaw puzzle that we're presented with.

22          I think the much more natural reading of this is

23  that Congress intended essentially -- excuse me -- the

24  Sentencing Commission intended essentially for this original

25  Guideline to be coextensive with the conduct that is

174

1   captured in 1503 through 1513.  There's nothing in here to

2   suggest any other intent.

3           Some more history.  When Congress passed

4   Sarbanes-Oxley in 2002, which included what is now

5   1512(c)(2), it also directed the Sentencing Commission in

6   Section 805 of the act to "the Base Offense Level" --

7   I'm sorry -- "to ensure that the Base Offense Level and the

8   existing enhancements contained in U.S. Sentencing

9   Guidelines 2J1.2 relating to obstruction of justice are

10  sufficient to deter and punish that activity."

11          "Section 805 also directed the

12  Sentencing Commission to ensure that enhancements and

13  specific offense characteristics were adequate in cases

14  involving large amounts of evidence, a large number of

15  participants, or is otherwise extensive and involved more

16  than minimal planning."

17          The Sentencing Commission responded to Congress's

18  directive with Amendment 653, which, one, increased the Base

19  Offense Level from 12 to 14 and, two, added the two-level

20  enhancement under what is now (b)(3) for extensive in scope,

21  planning, or preparation.

22          There is nothing in either Section 805 of

23  Sarbanes-Oxley or the amendment of 653 to suggest that

24  either Congress or the Commission intended to narrow the

25  scope of the original eight-level and three-level

1    enhancement.  If anything, Congress's directive, certainly

2    in response to *Arthur Andersen*, was to tighten the penalties

3    for acts of obstruction that were covered by those

4    particular statutes, which, again, covers conduct before an

5    official proceeding.

6            So when you pull all that together, it seems

7    reasonably clear, or at least seems reasonable to me, that

8    the proper intent of the commission and meaning of 2J1.3 in

9    1987, as I said, was to create a Guideline that captured a

10   wide range of obstructive conduct, including before an

11   official proceeding.  Also, when promulgated, commentary

12   states -- again, as I said, identified the statutory

13   provisions and then went on to say this section addresses

14   offenses involving obstruction of justice generally

15   prosecuted under the above-referenced statutory provisions.

16           So the Commission clearly would have understood

17   that conduct subject to 1512, which would include

18   obstruction of an official proceeding before Congress, would

19   be subject to punishment under this Guideline.

20           Now, to be sure, as Mr. Peed points out, the

21   commentary provides a list of examples, none of which

22   include a proceeding before Congress.  But that isn't

23   dispositive, because it's not an exhaustive list.  The list

24   that's identified -- sorry.  Bear with me a moment.

25           Sorry, let me back up.

176

1               As Mr. Peed points out, there's a definition for

2      "substantial interference with administration of justice,"

3      and it includes definitions, among which are substantial

4      government or court resources.  And the other definitions

5      don't pertain to Congress.  Maybe government does.  But

6      what's important about that Guideline is the definition

7      begins with the word "includes," and the Guidelines

8      specifically define and state the word "includes" -- look at

9      1B1.1, Note 2 -- that "includes" means that the list is not

10     exhaustive.  It is "merely illustrative."

11              If you look at the sentencing opinion in *Yates* at

12     574 U.S. 528 and 563, Note 5, the dissent actually

13     recognizes this, that referring -- and, in fact, with

14     respect to 2J1.2's definition of "records, documents, or

15     intangible objects," that the term includes "it is meant to

16     be expansive and not -- an exhaustive list."

17              And so, again, if one is reading the word

18     "include" not to be limiting, it would -- it does not

19     restrict the possibility of a substantial interference with

20     the administration of justice before the congressional

21     proceeding.

22              So for all of those reasons, that is my view on

23     why it applies.  And, you know, I will leave it to the

24     government whether to communicate that to the Circuit while

25     this case is still pending, because if I'm wrong and they

177

1    haven't considered this sort of way of thinking about it,

2    it would be good to know.

3              MR. NESTLER:  Yes, Your Honor.

4              THE COURT:  In other words, I would -- given the

5    limited record the panel has, it would be -- I would like

6    for them to have the view of my view if that's appropriate.

7              In any event, there are a few other arguments that

8    have been made in connection with this Guideline.  One is

9    Mr. Meggs argues that the enhancement against -- the

10   enhancement for substantial interference -- excuse me -- for

11   the eight-level enhancement can't apply unless it's directed

12   to -- the conduct is directed at the person against whom

13   threat of injury is directed, and that person must be the

14   person who's administering justice; i.e., in this case,

15   Congress.  And in his view, the evidence is insufficient to

16   show a threat of physical injury to members of Congress.

17             I disagree with that reading.  That's not what the

18   Guidelines say.  The Guidelines say the offense involved

19   causing or threatening to cause physical injury to a person

20   or property damage in order to obstruct the administration

21   of justice.  It's not specific to the person who's

22   administering the justice or the group of people

23   administering the justice.  It is in order to obstruct, and

24   so I think the conduct can be directed at someone other than

25   the administrator of the justice.

178

1          Also argues that the enhancement doesn't apply

2    because the conduct of the mob cannot be attributed to these

3    defendants.  I agree with that.  At least for this

4    enhancement, the focus will need to be on the relevant

5    conduct of these defendants and what they are each

6    individually responsible for, including any foreseeable acts

7    of co-conspirators that can be attributed to a given

8    defendant.

9          Finally, Ms. Watkins in her brief cites to

10   *Montgomery* for the proposition that this wouldn't apply.

11   Judge Kollar-Kotelly's decision in *White* makes the same

12   point, that the reason *Montgomery* is not apt here is because

13   that case arose in the context of the argument that the

14   definition of "official proceeding" must involve some

15   administration of justice and was not an argument that was

16   in the context.  So, in other words, just because in

17   *Montgomery* the term "administration of justice" was defined

18   in a certain way, doesn't mean it is applicable here, given

19   the context in which it was raised.

20         All right.  So that is where I've come out after

21   much contemplation about the topic.

22         Let's then move on to the three-level enhancement

23   for offense resulting in substantial interference with the

24   administration of justice.

25         The main argument here is that the certification