UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER WORRELL,<br><br>Defendant. | Case No. 21-CR-292-RCL |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental sentencing memorandum in this case. Much has occurred since the government submitted its original sentencing memorandum. The defendant, Christopher Worrell, fled supervision prior to sentencing, triggering a manhunt. He apparently had no intention of ever turning himself in. Worrell was recaptured, however, when he attempted to covertly return to his residence. Worrell then faked a drug overdose prior to his arrest, and maintained that lie during a five-day hospital stay, wasting the time and money of both medical staff and the Collier County Sheriff's Office, which provided deputies to watch Worrell 24/7 in a non-secure hospital location and was left to foot the bill for Worrell's unnecessary medical care. The government submits this supplemental memorandum to put these new, aggravating facts before the Court for its consideration at sentencing. The Court should increase the sentence it was previously going to impose on Worrell to account for this new misconduct.

**I.     Worrell's Flight Demonstrates His Contempt for This Judicial Proceeding, Lack of Remorse, and Willingness to Strategically Misrepresent His Medical Condition.**

On August 14, 2023, four days prior to his sentencing before this Court, Worrell cut off his GPS ankle monitor in a Walmart parking lot and fled his residence. He did not notify his third-

1

party custodian. His third-party custodian found Worrell gone, and a note making clear he had fled, at around 4:50 PM ET. The government was not notified of Worrell's absconding until around 9-10 PM ET, and the Middle District of Florida's pretrial services office had not been notified until undersigned counsel was able to reach that office around 11 PM ET that night.

Worrell's flight triggered an FBI manhunt that culminated six weeks later in his arrest. On September 28, 2023, Worrell attempted to covertly return to his house for the first time. The FBI staked out and ultimately entered his residence. Inside, they found Worrell, seemingly unresponsive, with an opened bottle of opioid prescription medication in his hand. They performed what they thought were lifesaving procedures and transported Worrell to the hospital. This was, the government later learned, all a ruse—Worrell pretended to have a medical emergency as a "delay tactic" to stall the government's investigation. Ex. A at 2 (Worrell admitting as much to a friend who had heard about his purported overdose). And this was not some temporary lapse in judgment. Worrell was transported to the hospital, where he stayed for five days before he was medically cleared by doctors who believed he had overdosed on opioids. During that time, he was watched 24/7 by two Collier County Sheriff's Office deputies, who were unable to respond to other actual emergencies in the County. The Sheriff's Office paid $5,340 for their overtime labor and was billed for all of Worrell's medical expenses. The entire time, Worrell knew he was fine.

During his arrest at his residence, the FBI also found night-vision goggles, a wallet with approximately $4,000 in cash, and a bag with new camping gear inside. Worrell's third-party custodian confirmed none of that was hers. It is clear Worrell intended to never return to face sentencing before this Court, despite personally repeatedly promising this Court, when seeking pretrial release, that he was "not trying to not answer to [his] charges," Ex. B at 2 (Worrell's

comments at May 2021 hearing), and would abide by whatever conditions the Court imposed.

Worrell's flight is relevant for five reasons. First, it demonstrates contempt for this judicial proceeding and an attempt by Worrell to evade all consequences for his misconduct on January 6, 2021 and his perjury during trial. This Court has exhibited graciousness toward, and patience with, Worrell. Because of Worrell's medical conditions, this Court released Worrell in November 2021; opted in August 2022 not to take him back into custody despite his bond condition violations; and in May 2023 concluded that his medical condition was an "exceptional reason," 18 U.S.C. § 3145(c), not to remand Worrell pending sentencing, which would otherwise have been effectively mandatory because Worrell was convicted of a crime of violence, *see* 18 U.S.C. § 3143(a)(2). Yet Worrell repaid the Court's trust in him by becoming one of the few January 6 defendants to have fled before trial or sentencing. That is galling.

Second, Worrell's flight makes that clear that being convicted and sitting through this Court's refutation of his ridiculous trial testimony has not changed him; he remains as unremorseful as he was when he perjured himself during trial. The Court should thus ignore any belated attempts by him now to apologize. Worrell had many, many opportunities to admit his conduct or express remorse, even after conviction. He instead fled and had to be dragged, while faking a medical emergency, back into custody.

Third, Worrell triggered a manhunt and enormous waste of government resources. The FBI and the U.S. Attorney's Office spent six weeks tracking Worrell, obtaining multiple warrants, many subpoenas, and other legal process, all while sending leads throughout the country—from New York to South Carolina to Texas to California to Oregon—to track down tips about his location. Even after his arrest, Worrell's faked overdose ploy diverted law enforcement and

3

hospital resources and cost the local sheriff's office, at a minimum, thousands of dollars. It would be appropriate for the Court to both lengthen Worrell's sentence and increase his fine as "just punishment" and "deterrence" for the loss and waste his flight and faked overdose caused. *See* 18 U.S.C. § 3553(a)(2); *cf. id.* § 3572(a)(3) ("pecuniary loss inflicted upon others" supports higher fine).

Fourth, Worrell's flight and faked overdose suggest that he has deployed medical emergencies—whether real or not the government does not always know—for strategic reasons in this case. When his trial date was approaching, Worrell sought multiple continuances based on a months-long series of medical episodes that Worrell asserted made it unsafe for him to do sedentary things like drive or fly to D.C. or even sit through trial. *See, e.g.*, Dkts. 223 (asserting health conditions rendered him unable to travel), 220 (asserting Worrell needed to "avoid situations that cause stress or anxiety"), 217 (asserting Worrell "cannot safely travel by air, spend extended periods traveling by car, or sit through a courtroom trial"), 175. Yet once he had been convicted, Worrell felt healthy enough to flee in Florida's summer heat, cut off contact with his treating physicians, and live as a fugitive while carrying night-vision goggles and camping gear. And when caught, he faked a medical emergency, by pretending to have overdosed on painkillers, in an apparent attempt to strategically buy time or avoid questioning by law enforcement.

To be clear, nobody disputes that Worrell has had several bouts with cancer, though it is worth noting that last fall he told medical staff he was "currently cancer free" following chemotherapy, and his oncologist later found "no clear evidence of active skin disease."[1]

---

[1] Dkt. 176 at 9-10.

Similarly, nobody disputes that Worrell has, over the last three years, fainted multiple times, broken his finger, and required jaw surgery from years of radiation treatment. The Court should recommend Worrell's placement in a Bureau of Prisons facility appropriate to treat these conditions.

But Worrell has now admitted faking a drug overdose for strategic reasons. And as the government has documented at length elsewhere, some of Worrell's claims as to his medical treatment or conditions have been unsubstantiated by, or directly refuted by, medical records from at least a half-dozen different medical providers (as always, the government can only review his medical records, and cannot independently evaluate his medical conditions).[2] On top of that, Worrell has now repeatedly lied under oath to this Court at trial, after providing "the most ridiculous explanation" this Court had "ever heard in [its] life" in an attempt to excuse his 2022 bond violation.[3] Dkt. 281 at 36. At this point, Worrell's claims of past medical mistreatment while in custody should be viewed as suspect.

---

[2] *See, e.g.*, Dkt. 85 at 8-9 (explaining that Worrell refused multiple times to attend diagnostic biopsies for his cancer when in pretrial custody—a fact Worrell also admitted in his 2021 proffer to the government—but publicly tried to blame the government for the delays in treatment his refusals caused); Dkt. 60 at 4-5 (explaining how Worrell's claim that he had a fever with severe chills and sweats, and that for three days he was almost too weak to get out of bed, Dkt. 47-1 at 7, was undercut by records showing twice-daily temperature checks that never recorded a temperature of even 100 degrees and Worrell's admissions to medical staff he was symptom-free other than on one day); Dkt. 176 at 2 (explaining how Worrell's claim that he was unable to speak due to jaw surgery was undercut by a nurse's recitation of Worrell yelling at her); Dkt. 85 at 9 (documenting two other asserted medical problems that were undercut by medical records); Dkt. 281 at 37-38 (noting that records and affidavits undercutting Worrell's assertions in this case have come from his own doctors, a local hospital, two different jails, and outside specialists he saw while in custody).

[3] In its sentencing memorandum, the government catalogued twelve separate instances or groups of lies by Worrell. *See* Dkt. 281 at 34-37.

Fifth, Worrell's flight requires a sentence that deters others from also choosing to flee. Many other defendants—January 6 and otherwise—are in Worrell's position, released pending trial or sentencing, and facing hefty charges or sentences. A few, like Worrell, have also absconded, fled, or failed to appear, including as recently as a few weeks ago. *See, e.g., United States v. Bru,* 21-cr-352 (JEB), Dkt. 66, June 26-July 6, 2023 Minute Entries; *United States v. Burlew* (RDM), 21-cr-647 (RDM), Nov. 30, 2023, Dec. 8, 2023 Minute Entries; *United States v. Olivia Pollock,* 21-cr-447-5 (CJN), Dkt. 208, March 6, 2023 Minute Entry. Worrell's disappearance attracted national media attention. The Court should lengthen Worrell's sentence to ensure that other defendants do not think that fleeing prior to sentencing will lead to no consequences once they are caught.

Indeed, the Guidelines would ordinarily provide for a two-level obstruction enhancement here under U.S.S.G. § 3C1.1 due to Worrell's presentencing flight. *See* U.S.S.G. § 3C1.1, commentary n.4(E) ("escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding" constitutes obstruction). But if Worrell receives the enhancement under U.S.S.G. § 3C1.1 for his perjury at trial, he cannot receive it again for pre-sentencing flight. If Worrell's Guidelines range does not account for his flight (because he has already received the obstruction enhancement for perjury), the Court should increase his sentence under Section 3553(a) to account for this unquestionably aggravating factor.

## II.     Conclusion

For the reasons set forth above, the government recommends that this Court increase Worrell's sentence to account for his absconding prior to sentencing and his faked overdose upon arrest.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar Number 481052

By:   /s/ *William Dreher*
        WILLIAM DREHER
        Assistant United States Attorney (Detailed)
        D.C. Bar No. 1033828
        700 Stewart Street, Suite 5220
        Seattle, WA 98101
        (206) 553-4579
        william.dreher@usdoj.gov

        ALEXIS J. LOEB
        Assistant United States Attorney (Detailed)
        CA Bar No. 269895
        450 Golden Gate Ave., 11th Floor
        San Francisco, CA 94102
        (415) 436-7168
        alexis.loeb@usdoj.gov